UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ALEXIS MARQUEZ,                                    :
                                                   :
                             Plaintiff,            :
                                                   :
             -v.-                                  :         18-cv-07315 (ALC)(GWG)
                                                   :
DOUGLAS HOFFMAN, *et al.*,                         :
                                                   :
                             Defendants.           :
                                                   :
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF THE STATE DEFENDANTS'
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**



                              LETITIA JAMES
                              Attorney General of the
                              State Of New York

                              *Attorney for the State Defendants
                              and the State of New York*

                              28 Liberty Street
                              New York, New York 10005
                              Tel.: (212) 416-8227
                              Tel.: (212) 416-8567

MONICA HANNA
SHARI M. GOODSTEIN
Assistant Attorneys General
   of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

    A.    Alleged Harassment, Discrimination, and Retaliation Pertaining to Plaintiff ........ 2

    B.    The Alleged Retaliatory Revision of the Sexual Harassment Policy ..................... 8

    C.    The Alleged Systemic Issues Pertaining to the UCS Handling of
        Sexual Harassment Complaints ............................................................................ 8

    D.    The Alleged Systemic Issues Pertaining to the UCS Hiring Practices .................. 9

    E.    Procedural Posture .............................................................................................. 9

STANDARD OF REVIEW ................................................................................................. 10

ARGUMENT ...................................................................................................................... 10

I.    LACK OF PERSONAL INVOLVEMENT PRECLUDES ANY CLAIM
    AGAINST THE COURT OF APPEALS JUDGES (CLAIMS 1-2, 4, 11-15) ........... 11

    A.    The Court of Appeals Judges Were Not Supervisors ........................................... 12

    B.    The Court of Appeals Judges Did Not Participate in Any Alleged
        Discrimination, Harassment, or Retaliation ........................................................ 13

II.    PLAINTIFF HAS NO TITLE VII CLAIM AGAINST THE STATE OF NEW YORK
    (CLAIMS 9 & 10) .................................................................................................... 15

III.    EACH OF PLAINTIFF'S CLAIMS AGAINST CHIEF JUDGE DIFIORE IN HER
    OFFICIAL CAPACITY FAIL (CLAIMS 6-8) ......................................................... 16

    A.    Plaintiff Fails to State an Equal Protection Claim (Claims 6-8) ........................... 16

    B.    Plaintiff Lacks Standing to Challenge the Alleged
        Systemic Issues (Claims 6-8) ............................................................................. 18

        1.    Plaintiff Cannot Challenge the Sexual Harassment Policy (Claim 8) ........... 18
        2.    Plaintiff Cannot Challenge UCS's Hiring Practices (Claim 7) ...................... 19
        3.    Plaintiff Cannot Challenge UCS's Complaint Procedure (Claim 6) .............. 19

i

IV.   PLAINTIFF'S DISCRIMINATION AND HARASSMENT CLAIMS FAIL
      (CLAIMS 2 & 13).................................................................................................. 20

V.    PLAINTIFF FAILS TO STATE THE SUBSTANTIVE ELEMENTS
      OF EACH REMAINING CLAIM AGAINST THE STATE
      DEFENDANTS ..................................................................................................... 23

      A.    Plaintiff's Claims of a Retaliatory Termination Fail (Claims 1, 4-5, & 12)......... 23

            1.   The § 1983 and NYSHRL Retaliation Claims Fail (Claims 1 & 12) ............ 23
            2.   Plaintiff's First Amendment Retaliation Claim Fails (Claim 5)..................... 25
            3.   Plaintiff's NYCHRL Claim Fails (Claim 12) ................................................ 26
            4.   State Defendant Desole, Judges Marks and Silver, and Counsel McConnell
                 and Evans are Entitled to Qualified Immunity (Claims 1, 4, and 5).............. 28

      B.    Plaintiff's Conspiracy Claim Fails (Claim 3) ...................................................... 29

      C.    Plaintiff's Due Process Claim Fails (Claim 4)...................................................... 30

            1.   Plaintiff Fails to Identify a Protectable Property Interest ............................... 31
            2.   Plaintiff Did Not Suffer a Procedural Due Process Violation ....................... 32
            3.   Plaintiff Fails to State the Deprivation of a Liberty Interest.......................... 33

      D.    Plaintiff's Article VI § 28 Claim Fails (Claim 11) .............................................. 34

      E.    Plaintiff's Negligence and Negligent Supervision Claims Fail (Claim 14).......... 35

      F.    Plaintiff's Intentional Infliction of Emotional Distress
            Claim Fails (Claim 15).......................................................................................... 36

      G.    Plaintiff's Claims Sounding in Fraud Fail (Claims 16 & 17) .............................. 36

      H.    Plaintiff's Unjust Enrichment Claim Against Justice Scarpulla
            Fails (Claim 22) .................................................................................................... 38

      I.    Plaintiff's Defamation Claim Against State Defendant Chalfen
            Fails (Claim 23) .................................................................................................... 39

VI.   THE COMPLAINT REMAINS IN VIOLATION OF FED. R. CIV.
      PROC. 8 ................................................................................................................. 40

CONCLUSION.................................................................................................................... 40

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abdul-Malik v. Office of Court Admin.*,
    No. 18 Civ. 7361, 2019 WL 359985 (E.D.N.Y. Jan. 29, 2019)..............................................40

*Accurate Grading Quality Assur., Inc. v. Thorpe*,
    No. 12 Civ. 1343 (ALC), 2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013).........................10, 35

*Ali v. Ramos*,
    No. 16 Civ. 01994 (ALC), 2018 WL 1353210 (S.D.N.Y. Mar. 14, 2018).............................30

*Allen v. Antal*,
    No. 12 Civ. 8024, 2014 WL 2526977 (S.D.N.Y. Mar. 13, 2014),
    *aff'd,* 665 F. App'x 9 (2d Cir. 2016).......................................................................................35

*Almontaser v. N.Y.C. Dep't of Educ.*,
    No. 07 Civ. 10444, 2009 WL 2762699 (S.D.N.Y. Sept. 1, 2009)....................................32, 34

*An v. City of New York*,
    230 F. Supp. 3d 224 (S.D.N.Y. 2017)........................................................................ 16, 18-20

*Anemone v. Metro. Transp. Auth.*,
    419 F.Supp.2d 602 (S.D.N.Y. 2006).........................................................................30, 33

*Anghel v. New York State Dep't of Health*,
    947 F. Supp. 2d 284 (E.D.N.Y. 2013), *aff'd,* 589 F. App'x 28 (2d Cir. 2015)......................16

*Appel v. Spiridon*,
    531 F.3d 138 (2d Cir. 2008).....................................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................10, 21

*Baez v. New York*,
    629 F. App'x 116 (2d Cir. 2015) ............................................................................................21

*Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972).................................................................................................................31

*Bermudez v. City of New York*,
    783 F. Supp. 2d 560 (S.D.N.Y. 2011).............................................................................. 24-25

*Bogart v. New York City Law Dep't*,
    No. 00 Civ. 7417, 2001 WL 1631986 (S.D.N.Y. Dec. 20, 2001)...........................14-15, 25-26

*Bracci v. Becker*,
   No. 11 Civ. 1473, 2013 WL 123810 (N.D.N.Y. Jan. 9, 2013),
   *aff'd,* 568 F. App'x 13 (2d Cir. 2014)............................................................................ passim

*Brevil v. Cty. of Rockland*,
   No. 15 Civ. 5103, 2017 WL 4863205 (S.D.N.Y. Oct. 26, 2017) .....................................22, 36

*Brumfield v. Trader Joe's Co.*,
   No. 17 Civ. 3239, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ...........................................38

*Butts v. New York City Dep't of Educ.*,
   No. 16 Civ. 5504, 2018 WL 4725263 (E.D.N.Y. Sept. 28, 2018)....................................21, 23

*Carr v. State of New York*,
   No. 15 Civ. 9012, 2016 WL 3636675 (S.D.N.Y. June 29, 2016)..................................... 14-15

*Cater v. New York*,
   316 F. Supp. 3d 660 (S.D.N.Y. 2018) ........................................................................... 14-15

*Chamberlain v. City of White Plains*,
   986 F.Supp.2d 363 (S.D.N.Y. 2013).......................................................................................30

*Ciambriello v. Cty. of Nassau*,
   292 F.3d 307 (2d Cir. 2002)................................................................................... 29-30, 32

*Conigland v. Rosenblatt*,
   171 A.D.2d 864 (2d Dep't 1991) .................................................................................... 32-33

*Conyers v. Rossides*,
   558 F.3d 137 (2d Cir. 2009)..................................................................................................17

*Cruz v. New York State Unified Court Sys.*,
   120 A.D.3d 494 (2d Dep't 2014).............................................................................................33

*Curley v. Vill. of Suffern*,
   268 F.3d 65 (2d Cir. 2001)............................................................................................. 25-26

*Diego Beekman Mut. Hous. Ass'n Hous. Dev. Fund Corp. Hdfc v. Dish Network, LLC*,
   No. 15 Civ. 1094, 2016 WL 1060328 (S.D.N.Y. Mar. 15, 2016) ...........................................35

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)....................................................................................................2

*Doall v. Plumadore*,
   No. 07 Civ. 617, 2007 WL 9711199 (E.D.N.Y. Sept. 10, 2007).................................... passim

*Dowd v. DeMarco*,
   314 F. Supp. 3d 576 (S.D.N.Y. 2018)....................................................................... 30-31, 33

iv

*Durante v. Evans*,
  94 A.D.2d 141 (3d Dep't 1983), *aff'd,* 62 N.Y.2d 719 (1984) ................................12

*Engquist v. Or. Dep't of Agric.*,
  553 U.S. 591 (2008) ...........................................................................................17, 29

*Evans v. Ottimo*,
  469 F.3d 278 (2d Cir. 2006) ...................................................................................37

*Feingold v. New York*,
  366 F.3d 138 (2d Cir. 2004) ...................................................................................27

*Frascatore v. Blake*,
  344 F. Supp. 3d 481 (S.D.N.Y. 2018) .................................................................34, 39

*Golden Archer Investments, LLC v. Skynet Fin. Sys.*,
  No. 11 Civ. 3673, 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) .................................38

*Grant v. New York State Office for People with Developmental Disabilities*,
  No. 12 Civ. 4729, 2013 WL 3973168 (E.D.N.Y. July 30, 2013) ............................23

*Gulino v. New York State Educ. Dep't*,
  460 F.3d 361 (2d Cir. 2006) ...................................................................................15

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) .....................................................................................33

*Henry v. NYC Health & Hosp. Corp.*,
  18 F. Supp. 3d 396 (S.D.N.Y. 2014) ................................................................. 22-24

*Howell v. New York Post Co.*,
  81 N.Y.2d 115 (1993) ..............................................................................................36

*Huminski v. Corsones*,
  396 F.3d 53 (2d Cir. 2005) .....................................................................................16

*Ifill v. New York State Court Officers Ass'n*,
  655 F. Supp. 2d 382 (S.D.N.Y. 2009) .....................................................................31

*Jattan v. Queens Coll. of City Univ. of N.Y.*,
  64 A.D.3d 540 (2d Dep't 2009) ..............................................................................27

*Kamdem-Ouaffo v. Balchem Corp.*,
  13-CV-2140, 2018 WL 4386092 (S.D.N.Y. Dec. 17, 2018) ...............................36, 39

*Kaufman v. Kaye*,
  466 F.3d 83 (2d Cir. 2006) .................................................................................16, 19

*Khalil v. State of New York*,
  17 Misc. 3d 777 (Sup. Ct. N.Y. Cnty. 2007) .......................................................27

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991)...............................................................................2

*La Martina v. Fischer*,
  No. 12 Civ. 308A, 2013 WL 1682603 (W.D.N.Y. Mar. 19, 2013), *report and
  recommendation adopted*, No. 12 Civ. 308A, 2013 WL 1681492 (W.D.N.Y. Apr. 17,
  2013) ....................................................................................................................15

*Leon v. Rockland Psychiatric Ctr.*,
  232 F. Supp. 3d 420 (S.D.N.Y. 2017)....................................................... 16-17, 31

*Lewis v. Roosevelt Island Operating Corp.*,
  246 F. Supp. 3d 979 (S.D.N.Y. 2017) (Carter, J.) .......................................... passim

*Lippman v. Pub. Employment Relations Bd.*,
  263 A.D.2d 891 (3d Dep't 1999)........................................................................32

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015)........................................................................11, 23

*Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*,
  No. 15 Civ. 4779, 2016 WL 1717218 (S.D.N.Y. Apr. 28, 2016)..................... 39-40

*Lynch v. Ackley*,
  811 F.3d 569 (2d Cir. 2016)..................................................................25-26, 28-29

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006)................................................................................2

*Marino v. City Univ. of New York*,
  18 F. Supp. 3d 320 (E.D.N.Y. 2014) ...................................................................34

*Marom v. City of New York*,
  No. 15 Civ. 2017, 2016 WL 916424 (S.D.N.Y. Mar. 7, 2016), *on reconsideration in
  part*, No. 15 Civ. 2017, 2016 WL 5900217 (S.D.N.Y. July 29, 2016)....................18

*Martinez v. City of Schenectady*,
  97 N.Y.2d 78 (2001) .........................................................................................35

*Mateo v. Fischer*,
  682 F. Supp. 2d 423 (S.D.N.Y. 2010)........................................................... 14-15

*McMenemy v. City of Rochester*,
  241 F.3d 279 (2d Cir. 2001)........................................................................31, 33

*Monreal v. N.Y. State Dep't of Health*,
　　38 A.D.3d 1118 (3d Dep't 2007) ...........................................................27

*Morell v. Batasubramanian*,
　　70 N.Y.2d 297 (1987) ................................................................... 26-27

*Nollah v. New York City*,
　　No. 17 Civ. 634, 2018 WL 4636847 (S.D.N.Y. Sept. 27, 2018) ...........................30

*Parenti v. Pfau*,
　　110 A.D.3d 650 (1st Dep't 2013) ...........................................................33

*Patane v. Clark*,
　　508 F.3d 106 (2d Cir. 2007) ...............................................................22

*Penz v. Washer*,
　　No. 18 Civ. 4964, 2019 WL 1922040 (S.D.N.Y. Apr. 30, 2019) ...........................15

*People v. Correa*,
　　15 N.Y.3d 213 (2010) .....................................................................12

*Prezzi v. Schelter*,
　　469 F.2d 691 (2d Cir. 1972) ..............................................................40

*Raspardo v. Carlone*,
　　770 F.3d 97 (2d Cir. 2014) ...............................................................21

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*,
　　75 F.3d 801 (2d Cir. 1996) ............................................................ 37-38

*Schwartz v. Mayor's Comm. on Judiciary of City of New York*,
　　816 F.2d 54 (2d Cir. 1987) ...............................................................34

*Semper v. New York Methodist Hosp.*,
　　786 F. Supp. 2d 566 (E.D.N.Y. 2011) ......................................................36

*Soloviev v. Goldstein*,
　　104 F. Supp. 3d 232 (E.D.N.Y. 2015) ................................................. passim

*Sw. Inv'rs Grp., LLC v. JH Portfolio Debt Equities, LLC*,
　　169 A.D.3d 1510 (4th Dep't 2019) ..................................................... 37-38

*Thomas v. Tarpley*,
　　268 A.D.2d 258 (1st Dep't 2000) ..........................................................27

*Tooly v. Schwaller*,
　　919 F.3d 165 (2d Cir. 2019) ...................................................... 19, 28-29, 33

*Torres v. Pisano*,
116 F.3d 625 (2d Cir. 1997)........................................................................ 21-22, 36

*Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.*,
65 N.Y.2d 300 (1985) ........................................................................22

*Vaher v. Town of Orangetown, N.Y.*,
916 F. Supp. 2d 404 (S.D.N.Y. 2013)........................................................................17

*Wahad v. F.B.I.*,
994 F. Supp. 237 (S.D.N.Y. 1998)........................................................................35

*Walker v. Tormey*,
178 F. Supp. 3d 53 (N.D.N.Y. 2016) ........................................................................ 30-31

*Wilson v. New York*,
No. 15 Civ. 23, 2017 WL 9674497 (E.D.N.Y. Jan. 24, 2017), *report and
recommendation adopted*, No. 15 Civ. 23, 2018 WL 1466770 (E.D.N.Y. Mar. 26,
2018) ........................................................................ passim

*Zakrzewska v. New Sch.*,
14 N.Y.3d 469 (2010) ........................................................................23

**CONSTITUTIONS**

New York State Constitution
Article VI § 3 ........................................................................12
Article VI § 26 ........................................................................19
Article VI § 28 ........................................................................ 12-13, 34

**FEDERAL STATUTES**

28 U.S.C.
§ 1367........................................................................35

**STATE STATUTES**

N.Y. Civ. Serv. Law
§ 201........................................................................32

N.Y. EXEC. L.
§ 296........................................................................11, 23

N.Y. JUDICIARY LAW
§ 36........................................................................12, 16, 19
§ 37........................................................................32

§ 57........................................................................................................................12
§ 58..............................................................................................................12, 16, 19
§ 210......................................................................................................................12
§ 211......................................................................................................................12
§ 212......................................................................................................................12

N.Y. Workers' Comp. Law
§ 29........................................................................................................................36

**Rules**

Fed. R. Civ. P. 8....................................................................................................40
Fed. R. Civ. P. 9.................................................................................................37-38
Fed. R. Civ. P. 12.....................................................................................................1
N.Y. Ct. R. 5.1...............................................................................................12, 16, 19

**State Regulations**

N.Y. Comp. Codes R. & Regs. tit. 22
§ 1.1......................................................................................................................12
§ 80.3....................................................................................................................12

**Miscellaneous Authorities**

1 Carmody-Wait 2d § 2:48....................................................................................13

N.Y.C. Admin. Code § 8–107...........................................................................11, 23

Defendants Hon. Saliann Scarpulla, Hon. George Silver, Hon. Lawrence Marks, John McConnell, Lauren Desole, Kay-Ann Porter, Lisa Evans, Hon. Lori Sattler, Denis Reo, Lucian Chalfen, Hon. Eugene Fahey, Hon. Paul Feinman, Hon. Michael Garcia, Hon. Jenny Rivera, Hon. Leslie Stein, Hon. Rowan Wilson, Chief Judge Janet DiFiore (collectively, the "State Defendants"), and the State of New York respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Alexis Marquez's ("Plaintiff") Third Amended Complaint, dated May 21, 2019, ECF No. 86 ("Complaint"), in its entirety as against each of them and with prejudice, pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6).

### PRELIMINARY STATEMENT

Plaintiff brings this employment discrimination action asserting a variety of claims under 42 U.S.C. § 1983 ("§ 1983"), 42 U.S.C. §§2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. L. § 291, *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL"), and common law tort.  Plaintiff alleges that the State Defendants refused to transfer her after she unilaterally absented herself from the chambers of Defendant Justice Douglas Hoffman, an acting Justice of the New York State Supreme Court, Civil Division ("Justice Hoffman"), who allegedly harassed her, then demoted her, and terminated her employment.  Plaintiff alleges that each of the 17 State Defendants contributed to her damages by playing a presumed and undescribed supervisory and/or administrative role with the New York State Unified Court System ("UCS"), and that the State of New York was possibly her employer. Plaintiff attempts to state claims far beyond her individual discrimination and retaliation claims by theorizing that the State Defendants' alleged failure to accede to her attorney's demands, both during the investigation of her employment with Justice Hoffman and post-employment, supports a vast, entirely speculative culture and policy of illicit suppression and retaliation within UCS.

Plaintiff has no viable claim against the State Defendants or the State of New York because

1

Plaintiff: (i) fails to allege that the judges of the Court of Appeals were either supervisors or personally involved in any alleged misconduct; (ii) does not allege that the State of New York was her employer; (iii) does not state a cognizable equal protection claim that merits prospective injunctive relief against Chief Judge DiFiore in her official capacity; (iv) admits that the State Defendants did not have knowledge of any alleged harassment or discrimination until the alleged misconduct ceased, and does not claim that they participated in it; (v) fails to state adequately the substantive elements of her claims; and (vi) declined to remedy the Complaint's Rule 8 deficiencies.  Accordingly, this Court should dismiss the Complaint as against the State Defendants and the State of New York.

## STATEMENT OF FACTS

The 130-page, 716-paragraph Third Amended Complaint is comprised of three categories of factual allegations: (i) each defendant's alleged participation in discrimination and retaliation concerning Plaintiff, (ii) the alleged revision of the UCS sexual harassment policy, and (iii) alleged broad systemic deficiencies in UCS's hiring policies and culture.  The State Defendants recite the alleged facts below including facts reflected in documents expressly incorporated or integral to the Complaint.[1]  *See* Declaration of Monica Hanna in Support of the State Defendants' Motion to Dismiss, dated July 31, 2019 ("Hanna Decl."), ¶¶ 3-8; *see also, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

### A.  Alleged Harassment, Discrimination, and Retaliation Pertaining to Plaintiff

From August 2012 through September 2017, Plaintiff was a law clerk to State Defendant Justice Saliann Scarpulla, a Justice of the New York State Supreme Court, Commercial Division

---

[1] As required, the State Defendants assume, without conceding, the truth of Plaintiff's factual allegations, but not the legal conclusions asserted.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010).

("Justice Scarpulla").  ¶¶ 1, 40, 181-182.[2]  In August and September 2017, Justice Scarpulla and State Defendant Justice Lori Sattler, a Justice of the New York State Supreme Court, Matrimonial Division ("Justice Sattler"), allegedly directly or indirectly suggested that Plaintiff apply for and accept a position as principal court attorney to Justice Hoffman.[3]  *See* ¶¶ 46-47, 465.

On September 13, 2017, Plaintiff commenced five weeks of employment in Justice Hoffman's chambers.  ¶¶ 11, 43, 47.  Plaintiff alleges that, during her first three weeks, Justice Hoffman made her "acutely uncomfortable," including by discussing personal or inappropriate matters, ¶¶ 12, 48-50, 52, 54, 57-63, 75, 81-82, 90, 164-167, 174-175, making audacious requests of Plaintiff, ¶¶ 51, 53, 55-56, 66-71, 76-80, 84-85, 88, 168, and providing condescending and paternalistic comments on Plaintiff's work product or personally.  ¶¶ 12, 66, 70-76, 83.

On October 8, 2017, Plaintiff responded to an email from Justice Hoffman, wherein he complimented her work on an assignment, by telling him to refrain from emailing her at her personal email address or during the weekend, unless an emergency required such contact.  ¶¶ 13, 92-93.  On October 10, 2017, Justice Hoffman told Plaintiff he found her email "extremely rude." ¶ 97; *see also* Answer to Amended Complaint, dated February 19, 2019, ECF No. 62, at ¶ 97.

On October 18, 2017, Justice Hoffman allegedly "threatened" Plaintiff and told her that State Defendant Judge George Silver, Deputy Chief Administrative Judge for all New York City Courts in the UCS ("Judge Silver")[4] wanted to hire her, but made the alleged transfer contingent on her silence concerning Justice Hoffman's misconduct.  ¶¶ 14, 129-147, 190-191, 221-222, 467.

---

[2] All citations to the Complaint herein appear by direct citation to the applicable paragraph, preceded by "¶".

[3] Justice Hoffman is a named defendant in this matter, but is represented by separate counsel.  *See* ECF Nos. 55-57. Accordingly, this motion does not address the viability of Plaintiff's claims asserted against Justice Hoffman.

[4] Plaintiff alleges that Judge Silver is "formally tasked with supervising the day-to-day conduct of judicial and non-judicial employees in New York City trial-level courts … and interven[ing] on behalf of a law clerk who is being harassed and threatened by a judge."  ¶ 251.

On October 20, 2017, Plaintiff allegedly called in sick from work but later hand delivered a letter to Justice Scarpulla.  ¶¶ 159, 204; *see also* Hanna Decl., Ex. A (the "Scarpulla Letter"). Plaintiff's counsel, Anthony Vassilev ("Mr. Vassilev"), drafted and executed the Scarpulla Letter in his capacity as Plaintiff's "close friend."  Hanna Decl., Ex. A at 1, 3.

The Scarpulla Letter vaguely referenced harassment and discrimination, but represented that, while Plaintiff had not related her account to anyone, her allegations "can be corroborated by existing documentation and by her co-workers."  Scarpulla Letter at 2.  Following receipt of the Scarpulla Letter, Justice Scarpulla allegedly informed Plaintiff that she could complain to Judge Silver and encouraged Plaintiff to pursue the position in Judge Silver's chambers.  ¶¶ 205-211.

From October 20, 2017, to November 25, 2017, Plaintiff did not report to work in any UCS location. *See, e.g.*, ¶¶ 47, 160, 212, 447; *see also* Scarpulla Letter at 2.

On October 31, 2017, Judge Silver and State Defendant Reo interviewed Plaintiff for the then-open principal law clerk position in Judge Silver's chambers.  ¶¶ 229-231.  Though Plaintiff alleges that the interview was a "sham," ¶¶ 17, 229-231, 233, 249, she simultaneously states that the interview went well, and that Judge Silver asked her substantive questions about her experience. *See* Hanna Decl., Ex. B at 7 n.2, 11.  In addition, at that time, Plaintiff understood that her interview with Judge Silver was an interview for a job, and not concerning a "transfer request," nor related to her complaint concerning Justice Hoffman. *Id.* at 11; *but see* ¶¶ 17, 138, 145, 152-154, 160, 178, 191-192, 197, 199-200, 207, 215-216, 222-266, 333, 352, 361, 385, 405, 450, 605.

Between November 2 and 8, 2017, Plaintiff and State Defendant Reo exchanged emails concerning Plaintiff's job application and her complaint against Justice Hoffman.  ¶¶ 232-239; Hanna Decl., Ex. C.  Plaintiff acknowledged that her application was subject to Judge Silver's discretion and was unrelated to her complaint. *See* Hanna Decl., Ex. C at 2-4.  State Defendant

Reo also informed Plaintiff that, based on the Scarpulla Letter and Plaintiff's emails, Judge Silver determined that the matter should be referred to the Inspector General for investigation.  *Id.* at 2.

On November 8, 2017, State Defendant Kay-Ann Porter, Managing Inspector General for Bias Matters at UCS ("State Defendant Porter"),[5] contacted Plaintiff and requested an "immediate interview."  ¶¶ 240, 274-276.  Plaintiff refused to be interviewed, and although State Defendant Porter repeatedly invited Plaintiff to schedule an interview, Plaintiff repeatedly responded that Plaintiff was not pursuing her complaint through the Inspector General.  ¶¶ 278-297.

Plaintiff allegedly refused to cooperate with State Defendant Porter, as she erroneously believed that State Defendant Porter had no jurisdiction to investigate sexual harassment complaints against judges. *See* ¶¶ 17, 243, 253, 267-272, 306-320, 381, 532; *but see* Hanna Decl., ¶ 7, Ex. F (administrative order assigning the UCS Special Inspector General for Bias Matters, now referred to as the Managing Inspector General for Bias Matters, the "general responsibility for conducting … investigations in connection with allegations of bias involving any judge").

On November 9, 2017, State Defendant Lauren Desole, then UCS Director of Human Resources ("State Defendant Desole"), contacted Plaintiff.  ¶¶ 321-324, 327.  On November 10, 2017, Plaintiff demanded, *inter alia*, that all copies of the Scarpulla Letter be destroyed.  ¶ 326.

On November 13, 2017, Plaintiff informed State Defendant Desole that Plaintiff preferred to pursue her sex and race-based discrimination claims against Justice Hoffman with the EEOC. ¶ 329.  On November 15, 2017, Plaintiff, State Defendant Desole, and Plaintiff's union representative met to discuss Plaintiff's complaints.  ¶¶ 328, 331-336.  Plaintiff simultaneously alleges that State Defendant Desole encouraged Plaintiff to resign and discouraged Plaintiff from pursuing a complaint against Justice Hoffman, but also required Plaintiff to provide information

---

[5] Allegedly, State Defendant Porter "is responsible for investigating bias complaints within the court system." ¶ 267.

supporting her claims against Justice Hoffman, which Plaintiff agreed to do.  ¶¶ 333-337.

On November 22, 2017, Plaintiff submitted a statement to State Defendant Desole concerning Justice Hoffman's alleged misconduct.  ¶¶ 338, 393; *see also* Hanna Decl., Ex. B (failing to attach corroborating documentation or identify witnesses); *but see* Scarpulla Letter at 2. Plaintiff again expressly stated that she preferred to pursue her complaint against Justice Hoffman "with an external agency."  Hanna Decl., Ex. B at 1.  In her statement, Plaintiff extensively criticized Justice Hoffman in his role as a jurist.  *Id.* at 3, 5, 7; *see also* ¶¶ 169, 180.  Plaintiff did not recite most of the allegations of misconduct that now appear in the Complaint.  *Compare, e.g.*, ¶¶ 53, 84, 88, *with* Hanna Decl., Ex. B at 3-7.

On November 24, 2017, Plaintiff was allegedly assigned to a position in the Brooklyn Law Department, with the alleged approval of UCS Chief Administrative Judge Lawrence Marks ("Judge Marks").[6]  ¶¶ 294, 340, 409.  On Saturday, November 25, 2017, Mr. Vassilev, then acting as counsel to Plaintiff, objected to Plaintiff's assignment as "retaliatory."  ¶¶ 294, 341.  Thereafter, Mr. Vassilev allegedly took over interactions with UCS as Plaintiff's counsel.  ¶¶ 294, 341.

Given Mr. Vassilev's then announced representation of Plaintiff, on November 29, 2017, State Defendant Lisa Evans, UCS Assistant Deputy Counsel ("Counsel Evans"), directed communications concerning Plaintiff's complaints and employment to her attention.  ¶¶ 362, 364.

On December 13, 2017, Mr. Vassilev first contacted Judge Marks and State Defendant John McConnell, UCS Counsel ("Counsel McConnell"), concerning Plaintiff's complaints.  ¶¶ 7, 300, 346, 374, 386, 401, 406.  In response, Counsel Evans allegedly informed Plaintiff that her

---

[6] Plaintiff alleges that Judge Marks is responsible for a wide array of administrative functions, including "supervis[ing] the administration and operation of [UCS]," ¶ 402, "enforcing the state-wide policies and standards of the New York State court system, … operating the Office of Court Administration and supervising its personnel, … supervising [Judge] Silver … removing various non-judicial personnel, … and approving transfers of non-judicial employees," ¶ 403.  By Plaintiff's allegations, none of the other State Defendants generally "have the authority to transfer or fire Plaintiff without Marks's approval."  ¶ 408(d).

allegations were under investigation by the Inspector General. ¶¶ 300, 374. On December 14, 2017, Mr. Vassilev demanded, *inter alia*, the appointment of an outside investigator. ¶¶ 301, 370.

On December 15, 2017, Plaintiff was informed that the Inspector General concluded its investigation and Plaintiff was terminated. ¶¶ 8, 302, 347, 375, 387, 407, 410.

Subsequently, Mr. Vassilev emailed Counsel McConnell and Judge Marks approximately 20 times. ¶¶ 390, 411. Mr. Vassilev also emailed Chief Judge of the Court of Appeals and the State of New York Janet DiFiore ("Chief Judge DiFiore") "at least 11" times. ¶¶ 391, 421, 426. On December 21, 2017, Counsel McConnell requested that Plaintiff cease communicating directly with Chief Judge DiFiore in light of Plaintiff's stated "intention to litigate." ¶¶ 391, 436. Notwithstanding, Mr. Vassilev continued to email Chief Judge DiFiore. ¶¶ 391, 421, 426.

Beginning on January 22, 2018, Mr. Vassilev repeatedly emailed Hon. Eugene Fahey, Hon. Paul Feinman, Hon. Michael Garcia, Hon. Jenny Rivera, Hon. Leslie Stein, and Hon. Rowan Wilson (together, the "Court of Appeals Judges").[7] On February 13, 2018, the Chief Clerk to the Court of Appeals informed Mr. Vassilev that emailing the Court of Appeals Judges is improper, citing Rule 500.1[n] of the Court of Appeals' Rules of Practice. ¶¶ 438, 457. Nonetheless, Mr. Vassilev emailed the Court of Appeals Judges through March 7, 2018. ¶ 448.

On August 15, 2018, Plaintiff filed a Charge of Discrimination before the New York State Division of Human Rights and the EEOC, naming UCS as her employer. Hanna Decl., Ex. D.

On August 17, 2017, August 21, 2017 and November 6, 2018, State Defendant Lucian Chalfen, UCS Director of Public Information ("State Defendant Chalfen"), allegedly publicly commented on the merits of Plaintiff's action. ¶¶ 304, 690-695.

---

[7] Plaintiff alleges that the Court of Appeals Judges "exercise administrative, supervisory, and oversight functions within [UCS]," citing Article VI § 28(c) of the New York State Constitution. ¶ 446.

### B.  The Alleged Retaliatory Revision of the Sexual Harassment Policy

On December 1, 2017, Judge Marks allegedly promulgated a revision to the UCS sexual harassment policy "unilaterally … without further oversight or approval," but Plaintiff also contradictorily alleges that Chief Judge DiFiore ordered and/or ratified the revision. ¶¶ 6, 416, 434-435, 443, 447, 471, 493-494.  Plaintiff alleges that Counsel McConnell was chiefly responsible for drafting the revision.  ¶ 398.  On December 1, 2017, Judge Silver allegedly circulated the revised policy in a system-wide memorandum, despite the alleged fact that these State Defendants also intended that the revisions be done "in secret."  ¶¶ 6, 287, 398, 417-418, 472, 474, 493, 498-499; *see also* ECF No. 86-2 at 1 (dating November 2017 revision).

By the December 2017 revisions, Plaintiff repeatedly alleges that UCS effectively deleted half of the UCS sexual harassment policy.  ¶¶ 6, 22, 416, 420, 425, 434-435, 443, 447, 456, 473, 510(a), 576.  However, in substance, Plaintiff takes issue with inconsequential stylistic edits to the policy, such as the deletion of the phrase, "On behalf of the court system" in Judge Mark's introductory preface to the policy, or the word "outlaw."  *See, e.g.*, ¶¶ 476, 492.  While Plaintiff grossly mischaracterizes the alleged revisions, there is no meaningful divergence between the original UCS sexual harassment policy and the revised version.  *See* ¶¶ 475-492; Hanna Decl., ¶ 8.  Plaintiff does not allege how any revision impacted her employment, confused her ability to file a complaint, or otherwise constituted discrimination or retaliation.  *See* ¶¶ 6, 417, 472, 577.

### C.  The Alleged Systemic Issues Pertaining to the UCS Handling of Sexual Harassment Complaints

Plaintiff alleges that UCS, through the individually named State Defendants, has failed to correct generations of undefined complaints of gender-based discrimination and harassment and has fostered a culture of suppression and retaliation against those who wish to come forward with sexual harassment complaints.  ¶¶ 29, 502-540, 565-585.  Plaintiff offers no specific factual allegations in support of these assertions.  Indeed, without identifying a single supporting example,

Plaintiff alleges that UCS "has a policy and custom of ignoring, suppressing, and retaliating against employees who oppose unlawful discrimination, harassment, and retaliation by judges and other highly placed or politically connected personnel." ¶ 518; *see also* ¶¶ 519-537, 574-585.

### D.  The Alleged Systemic Issues Pertaining to the UCS Hiring Practices

Though failing to specify either the time period or titles and positions at issue during the alleged events, Plaintiff alleges that UCS "engaged in widespread patronage, cronyism, and nepotism in its employment practices." ¶ 541; *see also* ¶¶ 542-564.  Plaintiff alleges that non-competitive UCS job openings are not publicly posted, but rather announced through "informal whisper networks," effectively targeting a small set of favored politically connected candidates for interview opportunities. ¶ 546; *see also* ¶¶ 545-549.  Plaintiff alleges that the UCS "noncompetitive hiring practices have caused, and continue to cause, systemic damage to the court system, its employees, and the State of New York, and the public." ¶ 555.  Plaintiff further alleges that the secrecy around open positions deters individuals from reporting harassment or discrimination, because these individuals fear falling out of favor and not learning of openings. ¶¶ 556-561.  Plaintiff's allegations concerning UCS's hiring practices are not limited to the positions of principal law clerk, principal court attorney, or any other title for which she is alleged to have held or was qualified to hold during the relevant time period. ¶¶ 541-564.

### E.  Procedural Posture

Plaintiff filed her complaint on August 14, 2018, and amended prior to service. ECF No. 21; ECF No. 43; ECF No. 51.  On April 1, 2019, the State Defendants previewed their anticipated grounds for dismissal during a pre-motion conference, and the Court granted Plaintiff leave to cure those asserted defects. *See* 4/1/19 Tr. at 5-9, 14-15, 21.  On April 22, 2019, Plaintiff filed a further amended complaint. ECF No. 72.  On May 21, 2019, Plaintiff filed the operative Third Amended Complaint with leave from Magistrate Judge Gorenstein, naming UCS a defendant. ECF No. 86.

**STANDARD OF REVIEW**

A claim survives dismissal only if it includes "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  "[T]he Court need not credit legal conclusions in a claim or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 243 (E.D.N.Y. 2015) (internal quotations omitted); *see also Accurate Grading Quality Assur., Inc. v. Thorpe*, No. 12 Civ. 1343 (ALC), 2013 WL 1234836, at *8 (S.D.N.Y. Mar. 26, 2013) ("A court need not feel constrained to accept as truth conflicting pleadings … that are contradicted … by statements in the complaint itself[.]").

**ARGUMENT**

Despite the length and repetition of the Complaint, Plaintiff's allegations of the State Defendants' alleged misconduct are conclusory and wholly unsupported, such that they do not support a single claim against the State Defendants.  Plaintiff alleges decades of conspiracies, surreptitious policy revisions, and corrupt hiring practices against 17 UCS officials, including all of the Court of Appeals Judges, simply because they did not respond to improper and unfounded demands from Plaintiff's counsel in a manner that satisfied him.  *See, e.g.*, ¶¶ 294, 341, 366-367, 370, 393-459.  Indeed, by her own allegations, Plaintiff repeatedly refused to cooperate in the investigation into her claims against Justice Hoffman, absented herself from work for over a month, and objected through counsel to any and all efforts to assist her.  ¶¶ 17, 47, 160, 212, 240, 243, 253, 267-272, 274-276, 278-297, 301, 307-311, 314-320, 327, 329, 341-343, 363, 370, 381, 385, 405, 425, 447, 532; Hanna Decl., Ex. B at 1.

For example, Plaintiff baselessly denigrates the work of several State Defendants by claiming that, during the first five years of her legal career, "Plaintiff completed more, higher quality, and more complex legal work than" the two Supreme Court justices for whom she clerked

(Justices Hoffman and Scarpulla), the Chief Administrative Judge (Judge Marks), the Deputy Chief Administrative Judge for New York City Courts (Judge Silver), and Chief Judge DiFiore, "*combined*." ¶ 42 (emphasis added).  Plaintiff likewise baselessly alleges that the State Defendants "suppressed evidence," "attempted to bribe Plaintiff," "attempted to prevent Plaintiff from pursuing other complaint avenues," and that no one at UCS responded to her complaints.  ¶¶ 178, 215, 248, 252-254, 306-315, 372, 388, 397.  Plaintiff makes these conclusory and unsupported allegations all while admitting that she was in constant communication with multiple UCS officials, and that no one but Plaintiff demanded the destruction of the Scarpulla Letter or otherwise acted to impede any investigation. ¶¶ 278-297, 326.  As demonstrated below, Plaintiff's failure to allege facts to support any of these serious accusations, coupled with her repeated failure to cure her fatal pleading deficiencies, warrant outright dismissal of the Complaint.

## I.   LACK OF PERSONAL INVOLVEMENT PRECLUDES ANY CLAIM AGAINST THE COURT OF APPEALS JUDGES (CLAIMS 1-2, 4, 11-15)

"An individual may be held liable under … [§] 1983 only if that individual is personally involved in the alleged deprivation."  *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (internal quotations omitted); *see, e.g.*, *Doall v. Plumadore*, No. 07 Civ. 617, 2007 WL 9711199, at *6 (E.D.N.Y. Sept. 10, 2007) (dismissing § 1983 claims against multiple UCS employees who were not involved in the challenged employment decision).  A plaintiff must also allege each defendant's personal involvement in order to have a viable claim under NYSHRL or NYCHRL.  *See* N.Y. Exec. L. § 296(6), (7); N.Y.C. Admin. Code § 8–107(6), (7); *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 992 (S.D.N.Y. 2017) (Carter, J.).

In *Lewis*, this Court recognized that the defendants who were not the plaintiff's supervisors could only be held liable under § 1983 "to the extent their own conduct violated Plaintiff's … rights."  246 F. Supp. 3d at 992.  There, the plaintiff summarily alleged that the defendants "acted

in concert" with the primary wrongdoer to undermine and discriminate against Plaintiff without any alleged facts demonstrating the defendants' personal actions to do so. *Id*. Moreover, the complaint did not include any factual allegations regarding the non-supervisors' role in plaintiff's termination. *Id*. For that reason, this court dismissed the gender and race-based discrimination and retaliation claims as against the nonparticipating defendants. *Id*.[8]

Here, as in *Lewis*, Plaintiff does not plausibly allege that the Court of Appeals Judges were either Plaintiff's supervisors or personally engaged in any harassing, discriminatory, or retaliatory conduct, such that her claims fail as a matter of law. *See, e.g.*, ¶¶ 251, 408(d), 421-461.

## A. __The Court of Appeals Judges Were Not Supervisors__

Plaintiff alleges that the Court of Appeals Judges "exercise administrative, supervisory, and oversight functions" across UCS's entire system without any legal basis or factual support. ¶ 446; *see* N.Y. Const. art. VI, § 28 (b) ("The chief administrator, on behalf of the chief judge, shall supervise the administration and operation of the unified court system."); N.Y. Const. art. VI, § 3 (stating the jurisdiction of the Court of Appeals); N.Y. JUDICIARY LAW §§ 36, 57, 58, 210, 211 (d)-(e), 212; N.Y. CT. R. 5.1(a); *see also, e.g.*, N.Y. COMP. CODES R. & REGS. tit. 22, §§ 1.1, 80.3 (Chief Judge delegating to the Chief Administrator "exercise of all powers and performing all duties as a public employer" under the Taylor Law with respect to the appellate divisions and terms); *People v. Correa*, 15 N.Y.3d 213, 223 (2010) ("When administrative authority is exercised in conformity with the consultation and approval requirements, UCS administrators possess broad express and implied powers to take whatever actions are necessary for the proper discharge of their responsibilities."); *Durante v. Evans*, 94 A.D.2d 141, 143 (3d Dep't 1983) (holding that

---

[8] In contrast, the Court upheld the hostile work environment claim because the non-supervisory defendants allegedly made offensive comments and directly acted to make plaintiff's job more difficult. *Lewis*, 246 F. Supp. 3d at 993.

administrative power delegated by the Chief Judge to the Chief Administrative Judge is exclusive), *aff'd*, 62 N.Y.2d 719 (1984); 1 CARMODY-WAIT 2D § 2:48 ("The responsibility for administration of the unified court system is divided among the Chief Judge of the Court of Appeals, the Chief Administrator of the Courts, and the Administrative Board of the Courts.").

The Court of Appeals Judges' only limited role in UCS administrative functions is approving new standards and administrative policies before they are promulgated.[9] N.Y. Const. art. VI, § 28 (c). There is no constitutional authority (or any other) that gives the Court of Appeals Judges administrative responsibility over the implementation of standards and policies after approval. *See* ¶ 446; *see also* N.Y. Const. art. VI, § 28 (b) (chief administrator is expressly tasked with "supervis[ing] the administration and operation of [UCS]," not the Court of Appeals Judges).

Accordingly, Plaintiff has failed to properly allege that the Court of Appeals Judges are subject to liability under § 1983, NYSHRL, or NYCHRL as supervisors.

## B. The Court of Appeals Judges Did Not Participate in Any Alleged Discrimination, Harassment, or Retaliation

There is no factual allegation concerning any affirmative act by any Court of Appeals Judge. ¶¶ 421-461. Instead, Plaintiff bases her claims against the Court of Appeals Judges solely on their alleged receipt of emails from Mr. Vassilev after Plaintiff's termination, in which he complained about Plaintiff's alleged mistreatment. *See* ¶¶ 448-461.

To create a claim where there is none, Plaintiff asserts that the Court of Appeals Judges' failure to respond to Mr. Vassilev's emails constituted the approval and ratification of the alleged discrimination and retaliation of the other State Defendants and Justice Hoffman. *See* ¶¶ 460, 589. However, Plaintiff has failed to plausibly allege that the Court of Appeals Judges had any authority

---

[9] To the extent Plaintiff attempts to assert a claim based on the allegation that the Court of Appeals Judges failed to approve the allegedly revised UCS sexual harassment policy prior to its promulgation, Plaintiff has no cognizable claim for the reasons discussed below. *See infra* Part III.B.1.

to assist Plaintiff after she was terminated or otherwise intervene in the manner Mr. Vassilev demanded by email on her behalf. *See supra* Part I.A; *see, e.g.*, *Bogart v. New York City Law Dep't*, No. 00 Civ. 7417, 2001 WL 1631986, at *4 (S.D.N.Y. Dec. 20, 2001) (dismissing claim because general assertion that defendant bore responsibility in all aspects of "cover-up and retaliation … for failing to promulgate effective procedures to prevent … misconduct, and for the improper promotion, retention, supervision and training of [the primary wrongdoer] with respect to discrimination issues" did not amount to personal involvement (internal quotations omitted)).

Moreover, "the receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (listing cases); *accord Cater v. New York*, 316 F. Supp. 3d 660, 666 (S.D.N.Y. 2018) (dismissing § 1983 claims because plaintiff alleged only that she transmitted complaints to state officials and "was dissatisfied with their responses"); *Bogart*, 2001 WL 1631986 at *4 (dismissing claim that defendants participated in alleged discrimination and retaliation by failing to address emails regarding alleged issues); *Carr v. State of New York*, No. 15 Civ. 9012, 2016 WL 3636675, at *5 (S.D.N.Y. June 29, 2016) (dismissing conspiracy claim against the New York State Attorney General when the only fact alleged in support was that the plaintiff complained to the Attorney General and the office responded that it would forward the plaintiff's correspondence to one of its bureaus).

By December 21, 2017, Plaintiff announced her intent to litigate her dispute. *See* ¶¶ 391, 436. One month later, Mr. Vassilev attempted to contrive the Court of Appeals Judges' personal involvement and liability in this matter by unilaterally sending them unsolicited and improper emails, to which they had no duty to read or respond. ¶¶ 448-461. Indeed, Mr. Vassilev ignored the response from the Chief Clerk to the Court of Appeals informing him that his communications violated Rule 500.1[n] of the Court of Appeals' Rules of Practice, and persisted in his emailing

14

through March 7, 2018.  ¶¶ 438, 457.  Mr. Vassilev cannot create personal involvement on behalf of the Court of Appeals Judges simply by sending them unsolicited emails.  There is plainly no basis upon which to find the Court of Appeals Judges participated in any alleged harassment, discrimination, or retaliation, nor that they were aware of any alleged misconduct.   Accordingly, all claims asserted against the Court of Appeals Judges stemming in § 1983, NYHRL, and NYCHRL should be dismissed.[10]  *See Mateo*, 682 F. Supp. 2d at 430; *Cater*, 316 F. Supp. 3d at 666; *Bogart*, 2001 WL 1631986 at *4; *Carr*, 2016 WL 3636675 at *5.

## II.    PLAINTIFF HAS NO TITLE VII CLAIM AGAINST THE STATE OF NEW YORK (CLAIMS 9 & 10)

A state agency employee cannot bring a Title VII claim against the State of New York.  *See Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) ("[T]he existence of an employer-employee relationship is a primary element of Title VII claims.")*; see also, e.g., Penz v. Washer*, No. 18 Civ. 4964, 2019 WL 1922040, at *2 (S.D.N.Y. Apr. 30, 2019); *La Martina v. Fischer*, No. 12 Civ. 308A, 2013 WL 1682603, at *5 (W.D.N.Y. Mar. 19, 2013), *report and recommendation adopted*, No. 12 Civ. 308A, 2013 WL 1681492 (W.D.N.Y. Apr. 17, 2013).

Plaintiff does not allege any non-conclusory facts that suggest the State of New York was her employer at any time.  *See* ¶ 45.  In contrast, Plaintiff's allegations demonstrate a direct employment relationship with UCS or a particular UCS justice.  *See, e.g.*, ¶¶ 1, 7-8, 11, 14, 17, 40, 43, 47, 129-147, 149-158, 160, 178, 181-182, 190-192, 197, 199-200, 207, 215-216, 220-266, 294, 467, 300, 302, 321-323, 331-338, 340-341, 346-347, 352, 361, 374-375, 383, 386-387, 388, 385, 401, 405-410, 425, 428, 447, 450, 605 (allegations relating to Justice Hoffman, Justice Scarpulla, or UCS's control over plaintiff's day-to-day activities, hiring, and firing); *see also* Hanna Decl.,

---

[10] The remaining claims asserted against the Court of Appeals Judges should additionally be dismissed for the reasons discussed below.  *See infra* Parts IV, V, and VI; *see also* Hanna Decl., ¶ 9.

Ex. E (CBA demonstrating UCS's collective bargaining with Plaintiff's union), Ex. D (EEOC Charge naming UCS as Plaintiff's employer). Accordingly, this Court should dismiss Plaintiff's claims asserted against the State of New York. *See* ¶¶ 630-635; *see also* Hanna Decl., ¶ 9.

## III.  EACH OF PLAINTIFF'S CLAIMS AGAINST CHIEF JUDGE DIFIORE IN HER OFFICIAL CAPACITY FAIL (CLAIMS 6-8)

Plaintiff asserts three equal protection claims against Chief Judge DiFiore in her official capacity, seeking certain prospective injunctive relief, including the installation of a monitor over UCS,[11] and to remedy alleged discrimination and retaliation in UCS's (i) complaint procedures, ¶¶ 617-621, (ii) hiring practices, ¶¶ 622-625, and (iii) sexual harassment policy, ¶¶ 469-501, 700-711. Each claim fails because Plaintiff does not state a viable equal protection claim and Plaintiff lacks standing to challenge each of these purported systemic issues. *See Anghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 298–99 (E.D.N.Y. 2013) (holding that a plaintiff must state a cognizable cause of action in order to seek injunctive relief), *aff'd*, 589 F. App'x 28 (2d Cir. 2015); *An v. City of New York*, 230 F. Supp. 3d 224, 228 (S.D.N.Y. 2017) (holding plaintiff lacked standing to seek injunctive relief from alleged widespread improper policy).

### A.  <u>Plaintiff Fails to State an Equal Protection Claim (Claims 6-8)</u>

Because Plaintiff's equal protection claims are not premised on her inclusion in a protected class, her claims lie "pursuant to one of two theories: class of one or selective enforcement." *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 431 (S.D.N.Y. 2017) (internal quotations

---

[11] Apart from Plaintiff's demand for prospective injunctive relief, any claim against Chief Judge DiFiore in her official capacity is barred by the Eleventh Amendment. *See Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005); *Bracci v. Becker*, No. 11 Civ. 1473, 2013 WL 123810, at *9 (N.D.N.Y. Jan. 9, 2013), *aff'd*, 568 F. App'x 13 (2d Cir. 2014). Moreover, the broad and invasive prospective injunctive relief sought by Plaintiff is improper because it would subject UCS to impermissible federal court surveillance and it would impact the hiring policies of every individual chamber in the state—the intrusion of which is prohibited by laws that Plaintiff does not challenge as unconstitutional. *See, e.g.*, *Bracci*, 2013 WL 123810 at *9-10, 12 (denying injunctive relief relating to judicial recusal, disqualification, and discipline because it "require[d] equitable intervention that is both intrusive and unworkable" and it went to "the very core of [UCS] functioning"); *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) (abstaining from granting relief that was "intrusive in [UCS] administration"); *see also* N.Y. JUDICIARY LAW §§ 36, 58; N.Y. CT. R. 5.1(a).

omitted).  Plaintiff cannot assert a claim under either theory.

Plaintiff may not bring a class-of-one claim because such a claim "has no application in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605–09 (2008); *accord Appel v. Spiridon*, 531 F.3d 138, 141 (2d Cir. 2008) (applying *Enquist* to deny plaintiff a preliminary injunction on submitting to a psychological examination in order to maintain a teaching position); *Conyers v. Rossides*, 558 F.3d 137, 152 (2d Cir. 2009) (affirming dismissal of plaintiff's general claim that government "agency treated a prospective employee differently from others for a bad reason, or for no reason at all" (internal quotations and alterations omitted)).

Accordingly, Plaintiff is left only with a selective enforcement theory, which requires a showing that: "(1) [Plaintiff], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate … or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff." *Leon*, 232 F. Supp. 3d at 431–32; *see also Doall*, 2007 WL 9711199 at *8 (dismissing equal protection claim against UCS officials because the plaintiff failed to allege membership in any protected class or that she was treated differently than other similarly situated individuals).

Plaintiff does not adequately plead the first element because she does not allege that she was treated any differently from "*any* identified individuals, let alone individuals who [s]he claims were similarly situated to [her] in any respect," in the context of UCS's implementation of its hiring, complaint, or sexual harassment policies. *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (dismissing equal protection claim because the plaintiff alleged only that the defendants "singled out plaintiff, in part, because of his exercise of constitutional rights … without ever explaining from whom Plaintiff believes his treatment was allegedly different" and citing cases where "[s]uch a naked assertion [was] found to be patently insufficient to survive

a motion to dismiss in other cases" (internal quotations omitted)); *see also, e.g.*, *Marom v. City of New York*, No. 15 Civ. 2017, 2016 WL 916424, at *13 (S.D.N.Y. Mar. 7, 2016) (dismissing equal protection claim where plaintiffs failed to allege "that they were in fact treated differently than other similarly situated persons"), *on reconsideration in part*, No. 15 Civ. 2017, 2016 WL 5900217 (S.D.N.Y. July 29, 2016).  Accordingly, Plaintiff fails to state an equal protection claim.

**B.  Plaintiff Lacks Standing to Challenge the Alleged Systemic Issues (Claims 6-8)**

To establish standing, "a plaintiff must have suffered an injury in fact that is distinct and palpable; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision."  *Bracci*, 2013 WL 123810 at *10 (internal quotations omitted); *accord An*, 230 F. Supp. 3d at 228.  Here, Plaintiff does not have standing to challenge the alleged systemic policies because she does not identify a cognizable injury in fact.

*1.  Plaintiff Cannot Challenge the Sexual Harassment Policy (Claim 8)*

Plaintiff alleges that certain of the State Defendants secretly deleted segments of the UCS sexual harassment policy in retaliation for her complaint against Justice Hoffman.  ¶¶ 6, 22, 416, 420, 425, 434-435, 443, 447, 456, 473, 510(a), 576.  However, Plaintiff does not allege how any revision confused her ability to effectively file a complaint with any authority or otherwise caused her any injury.[12]  *See* ¶¶ 6, 417, 472, 577; *see also Bracci*, 2013 WL 123810 at *10 (injuries "must be 'concrete and particularized and actual or imminent, not conjectural or hypothetical.'" (quoting *Coal. of Watershed Towns v. United States Envtl. Prot. Agency*, 552 F.3d 216, 217 (2d Cir. 2008))).  Furthermore, Plaintiff is not currently a UCS employee, such that this Court cannot grant her relevant prospective relief.  *See Bracci*, 2013 WL 123810 at *10; *An*, 230 F. Supp. 3d at 228.

Finally, Plaintiff cannot base her claim on the assertion that the revised UCS sexual

---

[12] To that end, Plaintiff fails to identify a single substantive difference between the alleged original UCS sexual harassment policy and the revised version.  *See* ¶¶ 475-492; Hanna Decl., ¶ 8.

harassment policy is in violation of NEW YORK LABOR LAW § 201-g.  *See* ¶ 501.  There is no private cause of action under that statute, and it was not effective until October 9, 2018, nearly 10 months after Plaintiff was terminated.  ¶¶ 8, 302, 347, 375, 387, 407, 410.  Accordingly, Plaintiff has no standing to challenge the alleged revision of the UCS sexual harassment policy.  *See also Tooly v. Schwaller*, 919 F.3d 165, 168 (2d Cir. 2019) (holding that official was entitled to qualified immunity when the alleged failure to comply was with state law); *see also infra* Part V.A.4.

### 2.  *Plaintiff Cannot Challenge UCS's Hiring Practices (Claim 7)*

As a matter of law, individual New York State justices and judges are entitled to hire and remove personal assistants at their pleasure.  *See, e.g.*, N.Y. JUDICIARY LAW §§ 36, 58; N.Y. CT. R. 5.1(a); *see also* N.Y. Const. art. VI, § 26(k) (conferring on all acting justices "the powers, duties and jurisdiction of a … justice of the court to which assigned").  Plaintiff does not challenge the constitutionality of these applicable laws, but rather improperly seeks prospective injunctive relief against Chief Judge DiFiore that would effectively dictate each individual state judge and justice's hiring practices in contravention of those laws and without regard to the fact that Plaintiff alleges no factual connection, let alone cognizable injury, to those multitudes of individual practices.  *See* ¶¶ 541-564; *see also Bracci*, 2013 WL 123810 at *9-10, 12; *Kaufman*, 466 F.3d at 86.  Indeed, Plaintiff not only challenges the hiring practices in chambers that have no relation to her personal claims, but also *all* UCS non-competitive job openings, reaching far beyond any alleged "injury in fact that is distinct[,] palpable[,] fairly traceable to the challenged action[,] and … redressable by a favorable decision."  *Bracci*, 2013 WL 123810 at *10; *accord An*, 230 F. Supp. 3d at 228.

### 3.  *Plaintiff Cannot Challenge UCS's Complaint Procedure (Claim 6)*

Not only does Plaintiff fail to allege any facts that support the existence of a widespread alleged policy and custom of suppression and retaliation throughout the UCS structure—but the facts supporting her own narrow discrimination and retaliation claims lend no support to Plaintiff's

hypothesized theories.  *See* ¶¶ 569-585.  Indeed, Plaintiff contradicts her own unsupported assertions that the State Defendants collectively acted to bury Plaintiff's complaints, ¶¶ 569, 572, denied that sex-based harassment and retaliation is illegal, ¶ 578, and refused to complete an objective and meaningful investigation into her complaint against Justice Hoffman, ¶¶ 253-254.

Rather, Plaintiff alleges that she (i) unilaterally absented herself from her position in Justice Hoffman's chambers, ¶¶ 47, 160, 212, 343, 363, 385, 405, 425, 447, (ii) repeatedly refused to schedule an in person interview with State Defendant Porter, ¶¶ 240, 275-297, (iii) insisted that the Scarpulla Letter was not intended to constitute a complaint against Justice Hoffman, ¶¶ 204, 243, 258, 318, 326, (iv) demanded that the Scarpulla Letter and any copies be destroyed, ¶ 326, (v) repeatedly informed various of the State Defendants that she preferred to pursue a complaint with an outside agency, ¶¶ 278-297, 301, 329, 370; Hanna Decl., Ex. B at 1, and (vi) represented that she had corroborating documents and witnesses to support her complaint, but repeatedly failed to identify them, despite many opportunities, *see* Scarpulla Letter at 2; Hanna Decl., Ex. B.  Based on these allegations, Plaintiff fails to allege she participated in the complaint process she seeks to challenge, and she cannot plausibly allege she suffered the requisite injury from any alleged defect in that process.  Accordingly, Plaintiff lacks standing to bring such a challenge. *Bracci*, 2013 WL 123810 at *10; *An*, 230 F. Supp. 3d at 228.

For all these reasons, Plaintiff has no claim against Judge DiFiore in her official capacity.

## IV.   PLAINTIFF'S DISCRIMINATION AND HARASSMENT CLAIMS FAIL (CLAIMS 2 & 13)

Plaintiff asserts discrimination and harassment claims under § 1983, NYSHRL, and NYCHRL against each of the State Defendants.  *See* ¶¶ 592-597, 643-646; *see also* Hanna Decl., ¶ 9.  Each claim fails.  To state a federal discrimination claim, Plaintiff "must plausibly allege that (1) the employer took adverse action … , and (2) [her] race, color, religion, sex, or national origin

was a motivating factor in the employment decision." *Butts v. New York City Dep't of Educ.*, No. 16 Civ. 5504, 2018 WL 4725263, at \*10 (E.D.N.Y. Sept. 28, 2018) (internal quotations omitted) (recognizing that the standard for a claim brought pursuant to equal protection via § 1983 and Title VII are generally the same).  A plaintiff must allege facts "sufficient to plausibly suggest [a defendant's] discriminatory state of mind" and conclusory allegations are not entitled to the presumption of truth.  *Iqbal*, 556 U.S. at 683; *accord Soloviev*, 104 F. Supp. 3d at 249.

With respect to supervisory liability, "in the § 1983 context, a plaintiff must establish that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic."  *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *accord Lewis*, 246 F. Supp. 3d at 992; *see also, e.g.*, *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (summary order) (dismissing claim when no alleged facts "directly evidenced discriminatory animus").

Here, Plaintiff does not allege that any State Defendant directly engaged in any discriminatory or harassing conduct based on Plaintiff's race or gender.  Rather, Plaintiff appears to assert her claims based on the bare allegation that the State Defendants stood by and allowed her to be subjected racial and sexual harassment by Justice Hoffman.  *Torres v. Pisano*, 116 F.3d 625, 636 (2d Cir. 1997) ("[O]nce an employer has knowledge of the harassment, the law imposes upon the employer a duty to take reasonable steps to eliminate it." (internal quotations omitted)).

Plaintiff's allegations of discrimination and harassment are limited to the five weeks she was employed in Justice Hoffman's chambers (September 13, 2017 through October 19, 2017); Plaintiff does not allege that any discrimination or harassment occurred during the ensuing time that the investigation into her complaints was ongoing through her termination (October 20, 2017 through December 15, 2017).  *See* ¶¶ 10-15.  Plaintiff alleges that none of the State Defendants had any knowledge of Justice Hoffman's alleged misconduct and that the alleged misconduct

ceased when Plaintiff left her employment in his chambers on October 19, 2017. *See* Scarpulla Letter at 2; ¶¶ 47, 159-160, 212, 343, 363, 385, 405, 425, 447. Thus, even assuming that any State Defendant had the authority and duty to intervene in any alleged ongoing discrimination or harassment, this duty did not arise because the State Defendants concededly had no knowledge of the alleged misconduct. *See Torres*, 116 F.3d at 636, 639 (holding that when a plaintiff complains of ongoing harassment, but seeks to keep the complaint confidential, no duty to act arises).

Moreover, during the time period that corresponds to the State Defendants' alleged involvement, Plaintiff does not allege that any State Defendant's conduct was intentionally based on Plaintiff's race or gender, which is also fatal to her claim. *See, e.g.*, *Wilson v. New York*, No. 15 Civ. 23, 2017 WL 9674497, at *12 (E.D.N.Y. Jan. 24, 2017), *report and recommendation adopted*, No. 15 Civ. 23, 2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018) (dismissing claim because there was no "connection between the disciplinary proceeding leading to [the plaintiff's] termination and his race, even as [there are] alleged infirmities in the proceeding itself").

Plaintiff's claims fail under the NYSHRL and NYCHRL for the same reasons. *See Patane v. Clark*, 508 F.3d 106, 112–13 (2d Cir. 2007) (dismissing claim under each pertinent statute because the plaintiff did not allege that any of the defendants "made any remarks that could be viewed as reflecting discriminatory animus[,] [n]or … allege that any male employees were given preferential treatment when compared to Plaintiff"); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014); *Soloviev*, 104 F. Supp. 3d at 247 (dismissing NYSHRL and NYCHRL discriminatory discharge claims when plaintiff failed to show any connection between his termination and his gender, race, or national origin, and instead stated an alternative basis for termination); *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.*, 65 N.Y.2d 300, 302 (1985); *Brevil v. Cty. of Rockland*, No. 15 Civ. 5103, 2017 WL 4863205, at *4 (S.D.N.Y. Oct. 26,

2017); *Butts*, 2018 WL 4725263 at *12; *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010).

Accordingly, Plaintiff's claims are barred because she failed to plead any allegations of intentional

discrimination on the basis of her race or gender by any State Defendant.

## V.   PLAINTIFF FAILS TO STATE THE SUBSTANTIVE ELEMENTS OF EACH REMAINING CLAIM AGAINST THE STATE DEFENDANTS

### A.   Plaintiff's Claims of a Retaliatory Termination Fail (Claims 1, 4-5, & 12)

Plaintiff asserts a variety of claims based in retaliation against each of the State Defendants,

each of which fails.  As a threshold matter, Plaintiff does not plausibly allege that the Court of

Appeals Judges, Justices Scarpulla or Sattler, or State Defendants Porter, Reo, or Chalfen had the

authority to terminate Plaintiff, let alone were personally involved in that decision.[13]  *See* ¶¶ 181,

219, 267, 462, 690.  Accordingly, Plaintiff's retaliation claims against these State Defendants fail

for lack of personal involvement.  *See Littlejohn*, 795 F.3d at 314; *Doall*, 2007 WL 9711199 at *6;

*Wilson*, 2017 WL 9674497 at *19; *see also* N.Y. EXEC. L. § 296(6), (7); N.Y.C. Admin. Code §

8–107(6), (7); *Lewis*, 246 F. Supp. 3d at 992; *see also supra* Part I.  Plaintiff's retaliation-based

claims also substantively fail because she does not plead the requisite causal connection, her claim

under NYCHRL is barred by sovereign immunity, and any State Defendants who are alleged to

have had the authority and in fact terminated Plaintiff are entitled to qualified immunity.

#### 1.   The § 1983 and NYSHRL Retaliation Claims Fail (Claims 1 & 12)

To state a viable retaliation claim under either § 1983 or NYSHRL, Plaintiff must

adequately allege "(1) that plaintiff was engaged in a protected activity, (2) that defendants knew

of the protected activity, (3) that defendants took adverse employment actions against plaintiff,

---

[13] Other than her termination, Plaintiff fails to allege any adverse employment action, including her alleged demotion by transfer.  ¶¶ 294, 340, 409; *see Henry*, 18 F. Supp. 3d at 404, 406 ("The receipt of undesirable assignments, without more, amounts to nothing more than a mere inconvenience, not a materially adverse change in the terms and conditions of employment." (internal quotations omitted)); *Grant v. New York State Office for People with Developmental Disabilities*, No. 12 Civ. 4729, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (citing cases).

and (4) a causal connection between the protected activity and the adverse action." *Soloviev*, 104 F. Supp. 3d at 250; *see also Bermudez v. City of New York*, 783 F. Supp. 2d 560, 587 (S.D.N.Y. 2011) (dismissing § 1983 and NYSHRL retaliation claims together because they are "treated the same"). Plaintiff must state such a claim "according to traditional principles of but-for causation, which require[s] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Soloviev*, 104 F. Supp. 3d at 252 (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir.2013)).

To the extent any State Defendant is adequately alleged to have had the authority to terminate Plaintiff and was allegedly involved in the decision, the requisite causation to state a retaliation claim must be plead "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Henry*, 18 F. Supp. 3d at 411-12. When a plaintiff admits alternative grounds for termination in his pleading, the plaintiff has not met this causation burden. *See, e.g.*, *Soloviev*, 104 F. Supp. 3d at 252 (dismissing retaliation claim because the plaintiff conceded that he was under investigation for violations of NCAA bylaws at the time of his firing); *Wilson*, 2017 WL 9674497 at *12 (recognizing that plaintiff was accused of stealing and there was no "connection between the disciplinary proceeding leading to his termination and his race, even as he … alleged infirmities in the proceeding itself").

Here, Plaintiff concedes that she unilaterally absented herself from work for over a month. *See* ¶¶ 47, 160, 212, 343, 363, 385, 405, 425, 447; *see also* Scarpulla Letter at 2. Plaintiff also admits that she (i) was critical of Justice Hoffman as a jurist, and told him to refrain from sending her work-related emails on the weekend, ¶¶ 13, 92-93, 97; Hanna Decl., Ex. B at 3-8, (ii) refused

to submit to an in person interview in connection with the Inspector General's investigation, ¶¶ 278-297; *see also* Hanna Decl., Ex. F at § 3(c) (requiring nonjudicial employees to "cooperate fully" with bias investigations), and (iii) summarily objected to her assignment in the Brooklyn Law Department through counsel before she arrived to her first day of work or learned what her duties entailed, and she does not allege she suffered any loss in compensation by way of that assignment, ¶¶ 294, 341. Each of these admissions vitiates Plaintiff's baseless assertion that but for her alleged informal and incomplete complaint against Justice Hoffman, she would not have been terminated, and her retaliation claims under § 1983 and NYSHRL fail as a matter of law. *See Soloviev*, 104 F. Supp. 3d at 252; *Bermudez*, 783 F. Supp. 2d at 587.

      2.  *Plaintiff's First Amendment Retaliation Claim Fails (Claim 5)*

To successfully state a First Amendment retaliation claim,[14] Plaintiff must plead that "(1) [s]he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [her] First Amendment right." *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001); *accord Lynch v. Ackley*, 811 F.3d 569, 578 (2d Cir. 2016). "To be actionable, … a claim of illegal retaliation requires a plaintiff to establish that what he said or did constituted speech on a matter of public concern," and if the speech largely relates to Plaintiff's own situation, her claim fails. *Bogart*, 2001 WL 1631986 at *6 (internal quotations omitted); *see also Lynch*, 811 F.3d at 578. Moreover, the Court's analysis over Plaintiff's allegedly protected speech, as a public employee, requires the additional element of "weigh[ing] the employee's speech interests against the government's interest in effective and efficient fulfillment of its responsibilities to the public."

---

[14] Plaintiff asserts this claim against Chief Judge DiFiore, Judges Silver and Marks, Counsel McConnell and Evans, and State Defendants Desole and Porter. *See* Hanna Decl., ¶ 9.

*Lynch*, 811 F.3d at 577 (internal quotations and alterations omitted).

Here, Plaintiff alleges that she complained of Justice Hoffman's alleged harassment and the integrity of the Inspector General's resulting investigation prior to her termination.[15] *See, e.g.*, ¶ 301. Such complaints, however, cannot form the basis of a First Amendment retaliation claim because they relate only to Plaintiff's own situation. *See Bogart*, 2001 WL 1631986 at *6; *Lynch*, 811 F.3d at 582. Plaintiff also fails to state a claim arising out of her alleged criticisms of Justice Hoffman's competence as a jurist, *see* Hanna Decl., Ex. B at 3, because such speech constitutes a statement pursuant to her official duties and is not protected. *Lynch*, 811 F.3d at 577-78.

Furthermore, even if Plaintiff has adequately alleged any protected speech, which she has not, her claim is barred because her speech interests are outweighed by the State's interests in promoting the efficiency of its public services. *Lynch*, 811 F.3d at 578, 583; *Curley,* 268 F.3d at 73. In addition, Plaintiff's many admissions concerning her own conduct belie her conclusory and unsupported allegation that the State Defendants' alleged retaliation was motivated or substantially caused by her speech. *See also supra* Part V.A.1; *Curley,* 268 F.3d at 73; *Lynch*, 811 F.3d at 578.

### 3. *Plaintiff's NYCHRL Retaliation Claim Fails (Claim 12)*

This Court lacks subject matter jurisdiction over Plaintiff's NYCHRL retaliation claim because, even though Plaintiff purports to assert her claim against the State Defendants in their individual capacities, the claims are properly regarded as claims against the State and are thereby barred by sovereign immunity. *See Morell v. Batasubramanian*, 70 N.Y.2d 297, 301 (1987) ("A suit against a State officer will be held to be one which is really asserted against the State when it arises from actions or determinations of the officer made in his or her official role and involves

---

[15] The remainder of Plaintiff's protected speech, *i.e.* her objections to the alleged bias within UCS hiring policies, the alleged revisions of the UCS sexual harassment policy, and UCS's alleged culture of retaliation, *see* ¶ 614, are not alleged to have occurred until after she was terminated and therefore cannot serve as a basis for a retaliation claim. *See* ¶¶ 450-456 (summarizing email complaints to the Court of Appeals Judges after her termination).

rights asserted, not against the officer individually, but solely against the State."); *see also Khalil v. State of New York*, 17 Misc. 3d 777, 786, (Sup. Ct. N.Y. Cnty. 2007) ("[A] state instrumentality cannot be liable under municipal laws … such as the NYCHRL without the State's consent.").

New York City, as a subdivision of the State, "does not have the power to waive the State's sovereign immunity by passing an antidiscrimination code provision applicable to instrumentalities of the State;" such instrumentalities are therefore not subject to the provisions of the NYCHRL. *Jattan v. Queens Coll. of City Univ. of N.Y.*, 64 A.D.3d 540, 542 (2d Dep't 2009) (citing *Khalil*, 17 Misc. 3d at 786); *accord Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004).

Although Plaintiff purports to assert her NYCHRL claim against the Individual Defendants instead of the State or its agency, the claim is properly regarded as a claim against the State because it is based upon the Individual Defendants' actions and/or determinations made in the course of their official roles.[16] *See Morell*, 70 N.Y.2d at 301; *see also Monreal v. N.Y. State Dep't of Health*, 38 A.D.3d 1118, 1119 (3d Dep't 2007) (dismissing claim where alleged conduct was undertaken in individual's official capacity); *Thomas v. Tarpley*, 268 A.D.2d 258, 258 (1st Dep't 2000) (recognizing the State as "the real party … in interest" defending claim for money damages against State employees who acted in their official capacities). The State cannot act but through its officials, and the State's fundamental sovereign immunity would be meaningless if, through creative pleading, its officials could be sued for carrying out its governmental functions.

Furthermore, Plaintiff's NYCHRL retaliation claim fails on substantive grounds because she fails to sufficiently allege a causal connection between her protected activity and her termination. *See supra* Part V.A.1; *see also, e.g., Wilson*, 2017 WL 9674497 at *18 (dismissing NYCHRL retaliation claim because plaintiff failed to allege the required causal link).

---

[16] This argument applies with equal force to Plaintiff's NYCHRL discrimination claim. *See* ¶¶ 643-646 (Claim 13).

Accordingly, Plaintiff's NYCHRL retaliation claim should be dismissed.

### 4. *State Defendant Desole, Judges Marks and Silver, and Counsel McConnell and Evans are Entitled to Qualified Immunity (Claims 1, 4, and 5)*

To the extent any State Defendant is adequately alleged to have had the authority to terminate Plaintiff and allegedly participated in that decision—and none are because Plaintiff's employment was subject to Justice Hoffman's exclusive discretion as a matter of law—they are entitled to qualified immunity from any claim arising from that alleged termination. *See Tooly*, 919 F.3d at 168; *Lynch*, 811 F.3d at 576 ("[D]efendant's entitlement to qualified immunity should be resolved at the earliest possible stage in litigation." (internal quotations omitted)).[17] Specifically, Plaintiff alleges that State Defendant Desole, Judges Silver and Marks, and Counsel McConnell and Evans (together, the "Alleged Retaliating Defendants") directly acted with alleged authority to terminate her from her Brooklyn Law Department assignment, but Plaintiff does not allege that her termination clearly violated established federal law or that it was objectively unreasonable for the Alleged Retaliating Defendants to believe that Plaintiff's termination was lawful. *See* ¶¶ 217, 251, 321-348, 362-376, 384, 388-389, 401-403, 408-410.

Rather, Plaintiff admits she unilaterally absented herself from Justice Hoffman's chambers prior to making any complaint, and then repeatedly refused to appear for an interview in connection with State Defendant Porter's investigation and repeatedly refused to identify any allegedly existing documentary or witness information supporting her complaints against Justice Hoffman. *See* ¶¶ 47, 160, 212, 343, 363, 385, 405, 425, 447; *see also* Scarpulla Letter at 2; ¶¶ 292, 334, 337; *see also* Hanna Decl., Exs. B, F at § 3(c).  Based on her own allegations, Plaintiff had many

---

[17] Qualified immunity applies when "the defendant's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or [] it was objectively reasonable for the defendant to believe that his actions were lawful at the time of the challenged act." *Tooly*, 919 F.3d at 172 (internal quotations and alterations omitted).

opportunities to sufficiently explain her unilateral absence but repeatedly refused, and she was not entitled to alternative procedures prior to her termination as a matter of law, *see infra* Part V.C.2, such that the resulting decision to terminate her did not violate clearly established federal law and the Alleged Retaliating Defendants had ample grounds to reasonably believe that her termination was lawful. *See Tooly*, 919 F.3d at 173, 175 (dismissing claim against public employer's president on qualified immunity grounds when the plaintiff unilaterally refused to appear to required medical examinations and disciplinary interrogation meeting because "[n]o case, in this Circuit or elsewhere … has held that, where the defendant provides an opportunity for the plaintiff to receive due process at a meeting and the plaintiff, even for potentially valid reasons, fails to appear, the defendant must provide alternative procedures"); *see also, e.g.*, *Lynch*, 811 F.3d at 580 (dismissing first amendment retaliation claim on qualified immunity grounds); *Engquist*, 553 U.S. at 600 ("[F]ederal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." (internal quotations omitted)).  Thus, the Alleged Retaliating Defendants are entitled to qualified immunity.

## B.  Plaintiff's Conspiracy Claim Fails (Claim 3)

Plaintiff asserts a conspiracy claim under § 1983 as against all of the State Defendants, except the Court of Appeals Judges, State Defendant Chalfen, and Justice Sattler.  *See* Hanna Decl., ¶ 9.  "To prove conspiracy under § 1983, a plaintiff must show: (1) an agreement between two or more state actors …; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Ali v. Ramos*, No. 16 Civ. 01994 (ALC), 2018 WL 1353210, at *6 (S.D.N.Y. Mar. 14, 2018) (internal quotations omitted). Vague or conclusory allegations cannot sufficiently state the requisite "'meeting of the minds' to show a conspiracy."  *Id.*; *accord Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (holding that the plaintiff did not sufficiently allege a conspiracy under § 1983 because "diffuse and

expansive allegations are insufficient, unless amplified by specific instances of misconduct").

Plaintiff's cursory and unsupported allegations that certain State Defendants had a meeting of the minds to retaliate against her are legally insufficient.  *See* ¶¶ 598-601; Hanna Decl., ¶ 9; s*ee also Ali*, 2018 WL 1353210 at *6; *Ciambriello*, 292 F.3d at 325; *Bracci*, 2013 WL 123810 at *28.

Moreover, the intracorporate conspiracy doctrine provides that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 388 (S.D.N.Y. 2013) (internal quotations omitted). Courts in this district routinely apply the doctrine to bar conspiracy claims asserted under §1983. *See id.* (collecting cases); *see also, e.g.*, *Nollah v. New York City*, No. 17 Civ. 634, 2018 WL 4636847, at *4-5 (S.D.N.Y. Sept. 27, 2018); *Anemone v. Metro. Transp. Auth.*, 419 F.Supp.2d 602, 604 (S.D.N.Y. 2006).  Here, each of the State Defendants is expressly alleged to be an UCS official and to have acted within the scope of his/her official duties.  *See* ¶¶ 44-45, 181-468.  Accordingly, the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claim.  *See Dowd v. DeMarco*, 314 F. Supp. 3d 576, 587 (S.D.N.Y. 2018); *Chamberlain*, 986 F.Supp.2d at 388.

Finally, Plaintiff's conspiracy claim also fails by virtue of the fact that Plaintiff has not adequately pled any underlying claim for the violation of her constitutional rights.  *See Dowd*, 314 F. Supp. 3d at 587; *Walker v. Tormey*, 178 F. Supp. 3d 53, 66 (N.D.N.Y. 2016); *see also supra* Parts I, III, IV, V.A; *infra* Part V.C.

### C.  Plaintiff's Due Process Claim Fails (Claim 4)

Plaintiff asserts a due process claim under § 1983 as against all of the State Defendants, except Justices Scarpulla and Sattler and State Defendants Reo and Chalfen.  *See* Hanna Decl., ¶ 9. There are "two threshold questions in any § 1983 claim for denial of procedural due process[:] whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be

deprived of that interest." *Dowd*, 314 F. Supp. 3d at 586.  Plaintiff's due process claim fails because she does not state a cognizable property interest and she was afforded sufficient process.

### 1.   *Plaintiff Fails to Identify a Protectable Property Interest*

"To have a property interest …, a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), *overruled in part on other grounds by Paul v. Davis*, 424 U.S. 693 (1976).  Here, Plaintiff alleges a protected property interest in: (i) continued public employment in a new role, (ii) a discretionary transfer, pursuant to her CBA, and (iii) a "discrimination-, harassment-, and retaliation-free workplace."[18] ¶ 603.

Plaintiff does not identify a constitutionally protected property interest because, "an employee does not have a property interest in a particular work assignment," and there is no legitimate claim of entitlement to a discretionary position.  *Walker*, 178 F. Supp. 3d at 61 (finding no property interest in a particular court assignment); *McMenemy v. City of Rochester*, 241 F.3d 279, 288 (2d Cir. 2001) (holding that there is "no property interest in fair consideration for [discretionary] promotion … without being discriminated against in retaliation for an investigation of a sexual harassment complaint"); *Ifill v. New York State Court Officers Ass'n*, 655 F. Supp. 2d 382, 391 (S.D.N.Y. 2009) (finding no property interest when "the decision whether to reinstate [the plaintiff] is discretionary"); *Leon*, 232 F. Supp. 3d at 434 ("[T]here is no constitutionally protected property interest in prospective government employment." (internal quotations

---

[18] Plaintiff also alleges a liberty interest in a "discrimination-, harassment-, and retaliation-free workplace." ¶ 603. This claim is redundant to Plaintiff's equal protection claims, and therefore fails for the same reasons stated above, including that Plaintiff does not plausibly allege that she was deprived of a lawful workplace by any State Defendant once the alleged discrimination and harassment was discovered.  *See supra* Part IV.  Plaintiff also asserts a liberty interest in practicing law without stigma, which fails as discussed below.  *See infra* Part V.C.3.

omitted)); *Almontaser v. N.Y.C. Dep't of Educ.*, No. 07 Civ. 10444, 2009 WL 2762699, at *4 (S.D.N.Y. Sept. 1, 2009) ("[A] job applicant … has no property interest in the position for which she applies." (internal quotation marks omitted)); *Conigland v. Rosenblatt*, 171 A.D.2d 864, 865 (2d Dep't 1991) (holding that dismissed Associate Law Assistant employed by New York State Court had no "property right to continued employment").

Plaintiff cites New York Civil Service Law § 75 as the source of her alleged property interest in continued employment as a principal law clerk.   ¶¶ 603-604.   However, the Second Circuit has repeatedly recognized that "Section 75 rights … may be modified or replaced by a collective bargaining agreement." *Ciambriello*, 292 F.3d at 314 (citing N.Y. CIV. SERV. LAW § 76(4)); *see also* N.Y. JUDICIARY LAW § 37; N.Y. CIV. SERV. LAW § 201(7)(a).   Thus, Plaintiff's alleged property interest in continued employment must therefore arise from the terms of her CBA.

In relevant part, § 9.15 of Plaintiff's CBA sets forth that requested reassignments or transfers "can be accommodated," but by no means guarantees that right.   Hanna Decl., Ex. E at § 9.15.   Moreover, Article 13 sets forth that only certain employees fitting into three narrow categories are subject to removal or discipline only for incompetency or misconduct shown after a hearing.   Hanna Decl., Ex. E at § 13.1.   Plaintiff does not allege that she meets the requirements of any of these categories, and as such was not subject to that process.[19]   *Id.*; *see also* Hanna Decl., Ex. E at Art. 5 (UCS reserving various management rights).   Accordingly, Plaintiff's CBA does not establish a legitimate entitlement to reassignment, transfer, or continued UCS employment.

2.   *Plaintiff Did Not Suffer a Procedural Due Process Violation*

Even assuming a property interest, Plaintiff's procedural due process claim fails because,

---

[19] Plaintiff admits that she is designated a confidential employee, but asserts that *Lippman v. Pub. Employment Relations Bd.*, 263 A.D.2d 891, 891–92 (3d Dep't 1999), invalidates that designation. ¶ 678.  Plaintiff plainly misapplies *Lippman* because the Appellate Division's holding was limited to the expressly listed set of job titles, none of which apply to Plaintiff.  *Id.*

the availability of a special proceeding pursuant to N.Y.C.P.L.R. Article 78 provided Plaintiff with an adequate post-deprivation remedy, "such that no procedural due process violation occurred[.]" *Doall*, 2007 WL 9711199 at *7; *accord McMenemy*, 241 F.3d at 289 ("[T]he availability of an Article 78 proceeding under New York law provided [the plaintiff] with an adequate post-deprivation remedy such that no procedural due process violation occurred."); *Anemone*, 629 F.3d at 121 ("An Article 78 proceeding provides the requisite post-deprivation process—even if [the plaintiff] failed to pursue it."); *Harris v. Mills*, 572 F.3d 66, 75 (2d Cir. 2009) (same); *Soloviev*, 104 F. Supp. 3d at 254 (same); *see also, e.g., Cruz v. New York State Unified Court Sys.*, 120 A.D.3d 494, 494 (2d Dep't 2014) (reviewing adverse employment determinations made in accordance with the Rules of the Chief Judge of the State of New York pursuant to Article 78); *Parenti v. Pfau*, 110 A.D.3d 650, 650 (1st Dep't 2013) (Article 78 proceeding brought by former UCS senior law librarian challenging her termination); *Conigland*, 171 A.D.2d 864 (reviewing former New York State County Supreme Court Associate Law Assistant's claim that he was improperly dismissed from his position without a hearing pursuant to the Rules of the Chief Judge pursuant to Article 78).  Indeed, Plaintiff's belated demand for a "name-clearing hearing," ¶ 710, improperly seeks to remedy Plaintiff's own failure to bring a timely Article 78 proceeding and is an implicit admission that Plaintiff had access to an adequate post-deprivation remedy.

Moreover, Plaintiff repeatedly refused to participate in any process afforded to her, eviscerating any due process claim she may now seek to raise.  *See supra* Part III.B.3; *see also Dowd*, 314 F. Supp. 3d at 586; *Tooly*, 919 F.3d at 173, 175.

### 3.  *Plaintiff Fails to State the Deprivation of a Liberty Interest*

To the extent Plaintiff asserts a stigma plus claim against State Defendant Chalfen based

on his alleged statements concerning the merits of Plaintiff's case,[20] *see* ¶ 603 (d), such a claim

fails because the statements alleged are not derogatory to Plaintiff's reputation and Plaintiff does

not allege that the alleged statements were made "concurrently with, or in close temporal

relationship to the relevant adverse employment action." *Frascatore*, 344 F. Supp. 3d at 490-491

(internal quotations omitted); *see also Almontaser*, 2009 WL 2762699 at *5, n.4.  Rather, State

Defendant Chalfen allegedly made the statements between eight to eleven months after Plaintiff

was terminated, and she does not, as she must, allege factual allegations supporting her conclusory

assertion that suffered a loss of reputation based on those statements.[21]  *See* ¶¶ 8, 302, 347, 375,

387, 407, 410; *see also* ¶¶ 304, 691-695; *see also Marino v. City Univ. of New York*, 18 F. Supp.

3d 320, 339 (E.D.N.Y. 2014) ("[C]ourts in the Second Circuit have consistently held one must

have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty

interest." (internal quotations omitted)); *Schwartz*, 816 F.2d at 57.  Accordingly, Plaintiff's due

process claims fail as a matter of law.

### D.  Plaintiff's Article VI § 28(c) Claim Fails (Claim 11)

Plaintiff asserts a constitutional tort claim, alleging that Judge Marks, Chief Judge DiFiore,

and the Court of Appeals Judges promulgated the revised sexual harassment policy in violation of

N.Y. Const. art. VI, § 28(c).  ¶¶ 636-638.  Plaintiff's claim fails on two primary grounds.

First, the Court of Appeals Judges and Chief Judge DiFiore are not factually alleged to

have participated in the "secret" revision of the sexual harassment policy, but only to have failed

---

[20] "To bring a 'stigma plus' claim [pursuant to § 1983], a plaintiff must allege (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Frascatore v. Blake*, 344 F. Supp. 3d 481, 490 (S.D.N.Y. 2018) (internal quotations omitted).

[21] Plaintiff fails to state a stigma plus claim against any other State Defendant because no other publication is alleged. *See Schwartz v. Mayor's Comm. on Judiciary of City of New York*, 816 F.2d 54, 57 (2d Cir. 1987) ("Without publication, the Supreme Court has stated that an individual's liberty claim is doomed." (internal quotations omitted)).

to respond to Mr. Vassilev's emails concerning the alleged revision after Plaintiff's termination. *See* ¶¶ 469-501 (alleging that "[Judge] Marks promulgated a revised sexual harassment policy," and "the policy was revised by [Judge] Marks and [Counsel] McConnell in secret …"). Therefore, Plaintiff's claim fails as to Court of Appeals Judges and Chief Judge DiFiore because her conclusory and contradictory allegation that they participated in the alleged promulgation need not be accepted as truth. ¶ 637; *see Accurate Grading Quality Assur., Inc.*, 2013 WL 1234836 at *8.

Second, Plaintiff cannot avail herself of this "narrow remedy" because Plaintiff pursues alternative means for redress, including under § 1983. *See Martinez v. City of Schenectady*, 97 N.Y.2d 78, 83 (dismissing claim when it "is neither necessary to effectuate the purposes of the State constitutional protections plaintiff invokes, nor appropriate to ensure full realization of her rights"); *Allen v. Antal*, No. 12 Civ. 8024, 2014 WL 2526977, at *11 (S.D.N.Y. Mar. 13, 2014), *aff'd*, 665 F. App'x 9 (2d Cir. 2016); *Wahad v. F.B.I.*, 994 F. Supp. 237, 240 (S.D.N.Y. 1998).[22]

### E. **Plaintiff's Negligence and Negligent Supervision Claims Fail (Claim 14)**

A plaintiff asserting a negligence claim under New York law must state "[i] the existence of a duty on defendant's part as to plaintiff; [ii] a breach of this duty; and [iii] injury to the plaintiff as a result thereof." *Diego Beekman Mut. Hous. Ass'n Hous. Dev. Fund Corp. Hdfc v. Dish Network, LLC*, No. 15 Civ. 1094, 2016 WL 1060328, at *4 (S.D.N.Y. Mar. 15, 2016). Plaintiff fails to state a cognizable duty or breach thereof on any State Defendant's part,[23] especially because the alleged discrimination and harassment ceased before any of the State Defendants became aware of it. *See* ¶¶ 647-650; Scarpulla Letter at 2. In addition, Plaintiff is barred as a matter of law from maintaining a common-law action to recover damages arising out of her alleged employer's

---

[22] This Court may also properly decline to exercise supplemental jurisdiction over each of Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367. *See, e.g.*, *Doall*, 2007 WL 9711199 at *9.

[23] Plaintiff does not assert this claim against State Defendant Chalfen.

alleged negligence. *See* N.Y. WORKERS' COMP. LAW § 29(6); *Torres*, 116 F.3d at 640; *Kamdem-Ouaffo*, 2018 WL 4386092 at *17 (citing cases); *Soloviev*, 104 F. Supp. 3d at 255.

### F.  Plaintiff's Intentional Infliction of Emotional Distress Claim Fails (Claim 15)

In New York, a claim for intentional infliction of emotional distress must state "'(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the outrageous conduct and injury; and (iv) severe emotional distress.'"  *Kamdem-Ouaffo*, 2018 WL 4386092 at *15 (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)).  Liability is only appropriate "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 81 N.Y.2d at 122; *accord Brevil*, 2017 WL 4863205 at *9.  "The bar is extremely high, and this highly disfavored cause of action is almost never successful."  *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 586 (E.D.N.Y. 2011) (internal quotations omitted).

Here, the conduct that Plaintiff alleges on behalf of each of the State Defendants simply "do[es] not rise to level of outrageousness necessary to constitute a valid claim."  *Semper*, 786 F. Supp. 2d at 587; *see also, e.g.*, *Kamdem-Ouaffo*, 2018 WL 4386092 at *16 (recognizing that "[e]ven a sluggish or incompetent response to two, three, or four complaints might not rise to clear the high bar set for this tort in this State" (internal quotations omitted)).  Furthermore, Plaintiff cannot recast what is fundamentally a prohibited improper discharge claim as an intentional infliction of emotion distress claim.  *See, e.g.*, *Kamdem-Ouaffo*, 2018 WL 4386092 at *17; *see also Semper*, 786 F. Supp. 2d at 587.

### G.  Plaintiff's Claims Sounding in Fraud Fail (Claims 16 & 17)

"The elements of fraud in New York include: a false representation of material fact, knowledge by the party who made the representation that it was false when made, justifiable

reliance by the plaintiff, and resulting injury." *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006); *accord Sw. Inv'rs Grp., LLC v. JH Portfolio Debt Equities, LLC*, 169 A.D.3d 1510, 1511 (4th Dep't 2019); *see also* Fed. R. Civ. P. 9; *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 812 (2d Cir. 1996) (requiring plaintiffs to "allege in what respects the statements at issue were false and also allege facts that give rise to a strong inference of fraudulent intent"). Plaintiff must establish scienter to support her fraud claims, by "either (1) identify[ing] circumstances indicating conscious or reckless behavior by the defendants, or (2) alleg[ing] facts showing a motive for committing fraud and a clear opportunity for doing so." *San Leandro*, 75 F.3d at 812. In addition, under New York law, a fraud claim is subject to dismissal when it does not state compensable damages resulting from the alleged fraud. *Sw. Inv'rs Grp., LLC*, 169 A.D.3d at 1511 ("Damages are to be calculated to compensate plaintiff[] for what [was] lost because of the fraud, not to compensate … for what might have [been] gained[.]").

Here, Plaintiff alleges that Justice Scarpulla, Judge Silver, State Defendants Porter, Reo and Desole, and Counsel Evans made multiple fraudulent misrepresentations, upon which Plaintiff reasonably relied to her detriment.[24] *See* ¶¶ 216, 257, 317, 360, 381. The alleged fraudulent statements include trivial statements, like "Judge Silver was either on vacation or unavailable," general statements of encouragement that Plaintiff interview for the then-open position in Judge Silver's chambers, and various informational statements concerning the process and progress of the Inspector General's investigation. *Id.*

None of these alleged statements plausibly give rise to a fraud claim because Plaintiff fails to allege the requisite scienter or redressable harm. *See San Leandro*, 75 F.3d at 812; *Sw. Inv'rs*

---

[24] There is no paragraph in the complaint that states State Defendant Reo's specific alleged misrepresentations. *See* ¶ 655-658. Accordingly, Plaintiff fails to state such a claim against him. *See* Fed. R. Civ. P. 9(b).

*Grp., LLC*, 169 A.D.3d at 1511.  For example, Plaintiff has no fraud claim against Justice Scarpulla based on Justice Scarpulla's alleged promise to follow-up with Plaintiff or her representation that Judge Silver intended to hire Plaintiff.  ¶ 216.  Justice Scarpulla gained nothing from these alleged statements and Plaintiff is not alleged to have suffered any discernable resulting harm.  Indeed, Plaintiff actively sought Justice Scarpulla's informal advice, but now summarily alleges that Justice Scarpulla's responses and encouragement constitute fraud.  *See* Scarpulla Letter; ¶ 216.

Similarly, Plaintiff asserts a fraudulent inducement claim against Justice Sattler, but does not adequately allege that Justice Sattler made a representation of material fact to Plaintiff that was false, which she knew to be false, and "that the representation was made for the purpose of inducing [Plaintiff] to rely upon it, [] that [Plaintiff] rightfully did so rely [] in ignorance of its falsity [] to her injury."  *Golden Archer Investments, LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673, 2012 WL 123989, at *6 (S.D.N.Y. Jan. 3, 2012); *see also* ¶¶ 659-662.  Rather, Plaintiff alleges that Justice Sattler urged Plaintiff to accept the position in Justice Hoffman's chambers "[t]hrough other judges," and "another court system employee."  ¶¶ 465-466.  Plaintiff's assertion of such a claim based on alleged remarks to third parties about a work arrangement outside of Justice Sattler's chambers is frivolous under every element of that claim.  *See* Fed. R. Civ. P. 9(b); *Golden Archer Investments, LLC*, 2012 WL 123989 at *6.  Accordingly, Plaintiff's fraud based claims fail.

### H.  Plaintiff's Unjust Enrichment Claim Against Justice Scarpulla Fails (Claim 22)

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Brumfield v. Trader Joe's Co.*, No. 17 Civ. 3239, 2018 WL 4168956, at *4 (S.D.N.Y. Aug. 30, 2018).  Here, Plaintiff asserts an unjust enrichment claim against Justice Scarpulla, alleging that Justice Scarpulla "advanced her judicial career on the strength of Plaintiff's work," and that Justice "Scarpulla's

38

judicial career and reputation benefitted substantially as a result of Plaintiff's work and at Plaintiff's expense." ¶¶ 682, 686.  Plaintiff alleges that it is against equity and good conscience to permit Justice Scarpulla to retain those benefits without compensating Plaintiff with the undefined "implicitly expected [or] expressly promised benefits of a judicial clerkship." ¶¶ 685, 687.  Thus, Plaintiff's claim is based on the wholly conclusory and unsupported premise that a Justice of the Supreme Court of New York, Commercial Division, who has been on the bench for 18 years, unjustly built her reputation as a distinguished jurist based on the paid work of a single law clerk directly out of law school.  *See* ¶¶ 1, 40, 181-182.  Plaintiff has not identified the alleged benefit that Justice Scarpulla received.  Indeed, the public and the parties that appeared before Justice Scarpulla are the actual beneficiaries for receiving justice absent simply favorable rulings.

Aside from the fact that the equities simply cannot lie in Plaintiff's favor based on the facts alleged, "the law is clear that a plaintiff may not allege that his former employer was unjustly enriched at his expense when the employer compensated the plaintiff by paying him a salary." *Kamdem-Ouaffo*, 2018 WL 4386092 at *21, n.31 (citing cases).  Thus, Plaintiff's claim fails.

## I.   Plaintiff's Defamation Claim Against State Defendant Chalfen Fails (Claim 23)

A plaintiff states a defamation claim under New York law, if she alleges "(1) a defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party, (4) that is false, (5) made with the applicable level of fault, (6) causing injury, and (7) not protected by privilege." *Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, No. 15 Civ. 4779, 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016) (internal quotations omitted); *accord Kamdem-Ouaffo*, 2018 WL 4386092 at *19.  A defamation claim does not arise when the alleged statement is an opinion concerning the merits of a plaintiff's litigation.  *Live Face on Web, LLC*, 2016 WL 1717218 at *2 ("Courts have consistently found that statements calling into question the legitimacy of litigation are non-actionable statements of opinion."); *see also Frascatore*, 344 F. Supp. 3d at 494

(recognizing that an inactionable statement of opinion may be accompanied by a recitation of facts upon which it is based). Accordingly, Plaintiff's defamation claims against State Defendant Chalfen for describing Plaintiff's lawsuit as "frivolous" and criticizing the merits of her lawsuit should be dismissed. *See* ¶¶ 304, 691-695; *Live Face on Web, LLC*, 2016 WL 1717218 at *2-3.

## VI.    THE COMPLAINT REMAINS IN VIOLATION OF FED. R. CIV. PROC. 8

This Court previously recognized that Plaintiff's pleading violated Rule 8, and the current iteration is no better. *See* 4/1/19 Tr. at 9-13, 16-21; Fed. R. Civ. P. 8; *see also Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972); *Abdul-Malik v. Office of Court Admin.*, No. 18 Civ. 7361, 2019 WL 359985, at *2 (E.D.N.Y. Jan. 29, 2019) (dismissing claims against UCS officials for violating Rule 8 and for failure to state a claim). Despite the opportunity to do so, Plaintiff failed to eliminate unnecessary rambling, scattered facts, and repetition, and the Complaint remains prolix. *See, e.g.*, ¶¶ 8, 302, 347, 375, 387, 407, 410 (each paragraph repeatedly alleging the simple fact that Plaintiff was terminated on December 15, 2017). Plaintiff's persistent Rule 8 deficiencies are an independent basis for dismissal. *See, e.g.*, *Abdul-Malik*, 2019 WL 359985 at *2.

## CONCLUSION

As set forth above, Plaintiff cannot sustain her legally and factually implausible claims against any State Defendant—all of which are based on both her and Mr. Vassilev's repeated and baseless attempts to contrive personal involvement and liability where there is none. Plaintiff also has no viable claim against Chief Judge DiFiore in her official capacity based on conclusory, unsupported, and unspecific allegations of decades of conspiracies, surreptitious policy revisions, and corrupt hiring practices that have no relation to Plaintiff herself.

For the foregoing reasons, the State Defendants and the State of New York respectfully request that this Court dismiss Plaintiff's Third Amended Complaint with prejudice as against each of them, together with such other and further relief as it deems just and proper.

Dated: New York, New York
       August 7, 2019

                                                Respectfully submitted,

                                                LETITIA JAMES
                                                Attorney General of the State of New York

                                                By:

                                                     /s/ Monica Hanna
                                              MONICA HANNA
                                              SHARI M. GOODSTEIN
                                              Assistant Attorneys General
                                              28 Liberty Street
                                              New York, New York 10005
                                              Tel: (212) 416-8227
                                              monica.hanna@ag.ny.gov
                                              Tel: (212) 416-8567
                                              shari.goodstein@ag.ny.gov

                                              *Attorneys for the State Defendants*
                                              *and the State of New York*