Anthony Vassilev, Esq.

November 13, 2019

**By ECF**
The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re:   *Marquez v. Hoffman, et al.*, 18-cv-07315 (ALC) (GWG) – Pending Motion to Withdraw as Counsel

Dear Judge Carter,

    I represent the plaintiff in the above-captioned matter.  I write to address a few issues that have recently arisen in this litigation.

I.   **Plaintiff's Contact Information**

    On Friday, November 1, 2019, I moved to withdraw as Plaintiff's counsel in this case.  Plaintiff consents to my withdrawal and intends to proceed *pro se*.

    My motion to withdraw was directed to Judge Carter.  On Monday, November 4, Magistrate Judge Gorenstein, citing the possibility "at times" of "telephonic conferences" with the Court, intervened to order the plaintiff to provide a telephone number and email address before the motion could be considered.  I informed the magistrate that the Plaintiff intended to obtain a phone number and email address that she could make public, and that she could provide such information in her notice of appearance.  Magistrate Judge Gorenstein issued a follow-up order on Thursday, November 7.  Dkt. 178.

    I am not exactly sure what the issue is at this stage, but I do know that a potential, as-of-yet unscheduled telephonic conference is not it.  I believe there may be some serious issues here, particularly in light of the nature of the case, the course of this litigation so far, the magistrate's record of not articulating clear bases for his orders, and the magistrate's connections to the defendants and defense counsel.  To a large extent, I believe the record in this case speaks for itself.  The same magistrate who did not issue a written order on the parties' substantive discovery obligations (*see* Minute Entry dated August 12, 2019) has now issued multiple orders on a motion to withdraw addressed to the district judge.

    To my understanding, a *pro se* plaintiff is not required to provide a telephone number or email address in order to bring suit or represent herself.  Furthermore, the SDNY makes a form available for *pro se* litigants to make appearances in their own case, which provides fields for

such information.[1]  I have already indicated that the plaintiff intends to provide that information when the motion to withdraw is granted.

I write to inform the Court that I am no longer in a position to respond to orders from the magistrate that do not reference a specific legal rule and do not contain any articulated reasoning. Furthermore, I reiterate my request to withdraw from this case with the plaintiff's consent.

## II.     **Litigation by Attrition**

I moved to withdraw as Plaintiff's counsel on the consent of my client.  Now that my withdrawal is opposed by defendant Hoffman and has become the subject of two orders by the magistrate, I would like to make the reasons for my withdrawal clear for the record.

I believe that it is clear to both the Court and the parties that Plaintiff is at an extraordinary resource disadvantage.  So far, this case has been litigated solely through attrition and procedural maneuvering.  The New York Attorney General's Office has divided representation of the defendants into three separate sets of attorneys.  By my count, in this "single plaintiff case," the State of New York has involved approximately nine different state-funded attorneys to represent the defendants in some capacity, including two former presidents of the New York City Bar, one of whom is New York City's longest serving Corporation Counsel.

At the same time, the defendants have repeatedly engaged in the same procedural strategy, delaying resolution of issues as long as possible and then making sudden filings (or multiple simultaneous filings) and attempting to deprive Plaintiff of time and opportunity to prepare or respond.  So far, this strategy has been deployed in connection with (a) motions to dismiss, (b) a Rule 26(f) conference and discovery plan, and (c) most recently, a confidentiality stipulation.  *See* Dkt. 183 at 1.

I have done everything I can to call the Court's attention to some of the procedural issues that have quickly pushed me out of the case.  However, the Court has declined to address these arguments directly.  In a case of this complexity, with this number of attorneys, Plaintiff has been unable to obtain a scheduling order as required by Rule 16(b).  Without any legal or factual analysis, discovery and the case schedule have been structured so as to require Plaintiff to litigate on a staggered schedule, in an inefficient manner, with less time, on multiple fronts, simultaneously.  The magistrate judge who stated that he is not sympathetic to Plaintiff's resource limitations because of the length of her complaint (Dkt. 89, May 16, 2019, Tr. 29:19-30:4) appears to be quickly and diligently creating a record of Plaintiff's perceived uncooperativeness, failures to comply, and failures to participate.  There are many more examples, many of which I have raised.  Having already been involved in this process for the past two years, I cannot continue representing a family member under such circumstances.

Litigation by attrition is not only a common strategy of employment discrimination defendants.  It is a recurring strategy on the part of this specific employer, the judicial branch of the State of New York.  For the Court's reference, I have attached an April 2016 letter by a

---

[1] The form is available at https://nysd.uscourts.gov/node/826.

another former UCS employee seeking to end her sexual harassment and retaliation lawsuit, filed in *Corrado v. New York State Unified Court System*, No. 12 Civ. 1748 (E.D.N.Y). The letter summarizes some of the factors and circumstances that a resource-poor plaintiff must consider and overcome in order to try to obtain relief for this type of harm. As long as the federal court treats issues related to scheduling, litigation resources, the efficiency of the structure of discovery, the existence of a functioning meet-and-confer process, conduct by counsel, and other similar issues as "non-dispositive" matters that are afforded great deference and are not worth examining closely, these factors will continue determining the outcomes of many such cases, often before they are filed.

Such litigation outcomes will also continue driving incentives outside the courtroom. The same attorney who represented UCS in the *Corrado* case from 2012 to 2016 handled and refused to respond to Plaintiff's internal harassment complaints in 2017. When Plaintiff was fired after receiving no response to any of her internal harassment complaints from anyone in the entire New York State judiciary, the head of UCS's Office of Counsel informed her, on behalf of the Chief Judge of New York, that UCS would not respond until the case was in court.

This case concerns the deletion of half of the New York State judiciary's state-wide sexual harassment policy, apparently in violation of the state's constitution and under the personal direction of the state's Chief Judge. Now that I have seen the process of resolving this specific dispute in court, I can certainly understand why UCS, with its access to taxpayer subsidized litigation resources, prefers this venue. If these claims face such tremendous procedural obstacles, it should surprise no one that a public employer like UCS has no incentives to adopt and administer any functioning process for handling harassment complaints, and that it can simply fire employees who make internal complaints and invite them to sue.

Respectfully submitted,


By:     /s/ Anthony Vassilev

       Anthony Vassilev, Esq.
       43 West 43rd Street, Suite 54
       New York, NY 10036
       (646) 755-7636
       tony@vassilev.cc

       *Attorney for Plaintiff*


cc: All counsel of record (by ECF)