USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:   03/31/2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x
ALEXIS MARQUEZ,                                    :
                                                   :
                                   Plaintiff,      :
                                                   :     **18-CV-7315 (ALC)**
                   -against-                       :
                                                   :     **OPINION & ORDER**
DOUGLAS HOFFMAN, ET AL.,                           :
                                                   :
                                                   :
                                                   :
                                   Defendants.     :
-------------------------------------------------------------------- x

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Alexis Marquez (hereinafter, "Plaintiff" or "Ms. Marquez") brings this action against Hons. Saliann Scarpulla, George Silver, Lawrence Marks and Lori Sattler in their individual capacities; John McConnell, Lauren DeSole, Kay-Ann Porter, Lisa Evans, Denis Reo and Lucian Chalfen in their individual capacities; Hons. Eugene Fahey, Paul Feinman, Michael Garcia, Jenny Rivera, Leslie Stein, and Rowan Wilson (collectively, "Court of Appeals Judges") in their individual capacities; Chief Judge Janet DiFiore, in her individual capacity and in her capacity as Chief Judge of New York State; and the State of New York (collectively, "Defendants")[1] for discriminatory treatment, harassment, retaliation, and due process and equal protection violations pursuant to 42 U.S.C. § 1983 ("§ 1983"), the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.

---

[1] Plaintiff initially asserted claims against Hon. Douglas Hoffman. *See generally* TAC. On December 23, 2019, Plaintiff filed a motion to dismiss claims against Hon. Hoffman, ECF No. 203, which this court granted on February 13, 2020, ECF No. 227. Plaintiff also amended her Complaint to assert claims against the New York State Unified Court System ("UCS"), *see generally* TAC, when she was granted leave to amend her Complaint to "allege that a new entity or entities are the plaintiff's employer and to add such entity or entities as defendants," Minute Entry, May 16, 2019. Plaintiff filed a notice of voluntary dismissal as to UCS on June 5, 2020, which this Court so ordered on June 12, 2020. ECF Nos. 246, 248. Consequently, claims against Hon. Hoffman and UCS are not the subject of the instant opinion.

City Admin. Code §§ 8-101 *et seq.* ("NYCHRL"), 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), Article VI § 28(c) of the New York Constitution ("Article VI § 28(c)"), and the 14th Amendment of the United States Constitution. Plaintiff also asserts claims for fraud, fraudulent inducement, defamation, promissory estoppel, quantum meruit, and unjust enrichment.

## PROCEDURAL HISTORY

Plaintiff commenced this action on August 13, 2018. ECF No. 1. Plaintiff filed an Amended Complaint on November 5, 2018. ECF No. 43. Defendants filed a request for a pre-motion conference, ECF No. 64, which was granted, ECF No. 67. As a result of the pre-motion conference held on April 1, 2019, Plaintiff was granted leave to amend her Complaint and the case was referred to Magistrate Judge Gorenstein. ECF No. 68. Plaintiff filed a Second Amended Complaint on April 22, 2019. ECF No. 72. Defendants then filed a letter motion seeking leave to file a motion to dismiss Plaintiff's Second Amended Complaint, ECF No. 76, which was granted, ECF No. 78. Magistrate Judge Gorenstein held an initial pretrial conference on May 16, 2019 and granted Plaintiff leave to file a Third Amended Complaint to "allege that a new entity or entities are the plaintiff's employer and to add such entity or entities as defendants." Minute Entry, May 16, 2019. Plaintiff filed a Third Amended Complaint ("TAC") on May 21, 2019. ECF No. 86. On August 7, 2019, Defendants filed a motion to dismiss Plaintiff's TAC. ECF No. 121. The Court denied Defendants' pending motion to dismiss to provide Defendants with an opportunity to account for Hon. Hoffman's dismissal from the case. ECF No. 228. Defendants refiled their motion to dismiss the TAC and supporting memorandum of law on March 6, 2020 ("Defs.' Mot."). ECF Nos. 236, 238. Plaintiff filed her opposition on June 5, 2020 ("Pl. Opp."). ECF No. 247. Defendants replied to Plaintiff's opposition on August 13, 2020. ECF No. 255.

Defendants' motion is deemed fully briefed. After careful consideration, Defendants' motion to dismiss is hereby **GRANTED** in part and **DENIED** in part.

BACKGROUND[2]

**A.  Prior To Working for Hon. Hoffman**

From August 2012 through September 2017, Ms. Marquez served as a law clerk to Hon. Scarpulla, a New York State Supreme Court Justice. TAC ¶¶ 1, 182. In August 2017, Plaintiff and Hon. Scarpulla were informed that her term as a law clerk would come to an end in approximately four months. Hanna Decl. Ex. B at 1.[3] The first position presented to Ms. Marquez was as Hon. Hoffman's principal court attorney. *Id.* Hon. Hoffman is a New York State Acting Supreme Court Justice serving in the Matrimonial Division. TAC ¶¶ 2, 46. Hon. Hoffman interviewed her on August 16, 2017 and called to offer her the position approximately two weeks later. Hanna Decl. Ex. B at 1-2. Ms. Marquez accepted.

**B.  Working for Hon. Hoffman**

On September 13, 2017, Ms. Marquez began working for Hon. Hoffman as his principal court attorney. TAC ¶¶ 43, 47. According to Plaintiff, from the outset of her employment with

---

[2] Given the lengthy pleadings in this case, the Court has focused on the facts relevant to decide the instant motion to dismiss. When determining whether to dismiss a case, the court accepts as true all factual allegations in the Complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Furthermore, "[a] complaint is deemed to include any written instrument attached to it as an exhibit." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted); Fed. R. Civ. P. 10(c). Pursuant to that standard, this recitation of facts is based on Plaintiff's Third Amended Complaint and accompanying exhibits. *See* ECF No. 86.

[3] While exhibits A-C attached to the Hanna Declaration (ECF Nos. 122, 237) were not included or attached to Plaintiff's Complaint, "[a] complaint is deemed to include… materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira*, 380 F.3d at 67 (citations omitted) (quoting *Chambers v. Time Warner, Inc.* 282 F.3d 147, 153 (2d Cir. 2002)). Plaintiff references these exhibits in her Complaint several times. *See, e.g.*, TAC ¶¶ 204-206, 226, 234, 243-44, 276, 295-96, 326 (referencing the Scarpulla Letter [Ex. A]); *id.* ¶¶ 338, 348, 360, 363, 368, 376 (referencing an 11-page complaint alleging discrimination, harassment and retaliation [Ex. B]); *id.* ¶¶ 232-239 (referencing emails between her and Mr. Reo [Ex. C]). While Plaintiff does not cite to or attach these exhibits to her Complaint, these exhibits are "integral" to the Complaint because Plaintiff's basis for discrimination, harassment and retaliation claims is that "court system officials refused to respond to Plaintiff's communications," including these. *See, e.g., id.* ¶ 5.

3

Hon. Hoffman, he engaged in behaviors that made her "acutely uncomfortable." *Id.* ¶ 48. This included relentlessly engaging Plaintiff in "personal inquiries and conversation beyond any ordinary or reasonable degree," *id.* ¶ 57, repeatedly subjecting Plaintiff to "bizarre, off-color, stereotypical, or offensive comments, jokes and non-sequiturs," *id.* ¶ 61, and repeatedly making "negative or insulting remarks about the professional capabilities of female staff and employees," *id.* ¶¶ 62-63.

On Sunday, October 8, 2017, Hon. Hoffman sent Plaintiff an email to Plaintiff's personal email address, which Ms. Marquez responded to by requesting that he please not email her at her personal email address, or on the weekend generally unless it was an emergency. *Id.* ¶¶ 92-93; *see also* Hanna Decl. Ex. B at 8. When Hon. Hoffman and Ms. Marquez were next in the office together on October 10, 2017, Hon. Hoffman brought up Plaintiff's email and told her that it was "extremely rude" and "very disrespectful" and that "he could not believe Plaintiff would send him an email like that" and that she should have talked to him about the issue in person instead of putting it in writing. TAC ¶¶ 95, 97-99. Hon. Hoffman told her she should have thanked him for his email and that he was "personally offended." *Id.* ¶¶ 100-101. He complained that he was not allowed to contact Plaintiff outside of work except in a "life or death emergency." *Id.* ¶ 104. Plaintiff told Hon. Hoffman that she had sent him the email in order to "communicate a personal boundary" and that she had not intended to offend him. *Id.* ¶ 106. Hon. Hoffman said that he would "just have to get used to the reality that . . . this [was] going to be a strictly professional relationship. This may not work out." *Id.* ¶ 108. After this conversation between Plaintiff and Hon. Hoffman, Hon. Hoffman avoided Plaintiff almost entirely. *Id.* ¶ 117.

On October 16, 2017, Hon. Scarpulla summoned Ms. Marquez to her chambers and asked her what had happened with Hon. Hoffman. *Id.* ¶ 183. Plaintiff told Hon. Scarpulla that Hon.

4

Hoffman was very bothered by the fact that he could only have a professional relationship with her and that he had made her feel uncomfortable. *Id.* ¶¶ 184-85. As part of this conversation, Hon. Scarpulla told Ms. Marquez that she had two principal court attorney positions in mind for her but would not disclose what they were except to say that they were "real" positions. *Id.* ¶ 188.

On October 18, 2017, at approximately 4:30 P.M., Hon. Hoffman spoke to Plaintiff and told her that "[s]ometimes it doesn't work out between a judge and a law clerk, even if they both want it to." *Id.* ¶¶ 125, 128-29. Hon. Hoffman told Plaintiff he had spoken to Deputy Chief Administrative Judge Silver, who had told him that "what happens in this situation—whenever there is a professional mismatch between a judge and a law clerk—is that they don't fire the law clerk immediately, but they give them a few weeks to find a transfer." *Id.* ¶¶ 134-35. He told Ms. Marquez that Hon. Silver wanted to hire her as his own principal court attorney and that Hon. Silver wanted her to call him to "arrange the transfer." *Id.* ¶¶ 136, 138. Hon. Hoffman also told her that "he had the right to fire her immediately and to have a court officer escort her out of the building but that he would not do that if Plaintiff agreed not to say anything about him" and instead would "allow her to continue working for a couple of weeks and arrange a transfer." *Id.* ¶¶ 139-40. Hon. Hoffman asked for Plaintiff's word not to say anything about him and told her he would not say anything about her if she would not say anything about him. *Id.* ¶¶ 141-42. Ms. Marquez told Hon. Hoffman that she wanted a transfer and that she would call Hon. Silver in the morning. *Id.* ¶ 145.

That evening at approximately 8:30 P.M., Ms. Marquez spoke with Hon. Scarpulla and told her what had transpired earlier that day with Hon. Hoffman and stated that "her job was on the line." *Id.* ¶¶ 191-92. Hon. Scarpulla responded that her job was not on the line and not to worry because Hon. Silver would soon hire her and that everything would be much better then. *Id.* ¶ 192.

She instructed Ms. Marquez to call Hon. Silver's chambers in the morning to arrange the transfer. *Id.* ¶ 192. Approximately an hour later at 9:30 P.M., Ms. Marquez and Hon. Scarpulla spoke on the phone again and Hon. Scarpulla expressed displeasure with her October 8 email to Hon. Hoffman. *Id.* ¶ 194. Hon. Scarpulla told Ms. Marquez that Hon. Silver now wanted to interview her, instead of having her transfer directly, to make sure that Plaintiff was a "team player." *Id.* ¶ 197.

On October 19, 2017 at approximately 9:15 A.M., Ms. Marquez called Hon. Silver's chambers and spoke to Denis Reo, Hon. Silver's law clerk, who told her that Hon. Silver was on vacation, and that he wanted to interview her once he returned. *Id.* ¶¶ 149, 199, 225. On Friday, October 20, 2017, Ms. Marquez emailed Hon. Hoffman to let him know that she would be out sick for the day and on Monday, October 23, 2017, she emailed him to let him know that she would be taking leave until her transfer was finalized. *Id.* ¶¶ 159-60. Hon. Hoffman did not respond. *Id.* ¶ 161.

### C.  After Working for Hon. Hoffman

On Friday, October 20, 2017, Plaintiff hand delivered a letter to Hon. Scarpulla. *Id.* ¶ 204; Hanna Decl. Ex. A ("Scarpulla Letter"). This letter recounted the events of October 18, 2017 with Hon. Hoffman and sought advice from Hon. Scarpulla on how to resolve the situation. TAC ¶ 204. The letter described Plaintiff as "fearful" of Hon. Hoffman's physical presence. *Id.* It also stated that Plaintiff was unable to return to work, was feeling isolated and was concerned about reprisal to her career. *Id.* Hon. Silver also learned of this letter and its contents. *Id.* ¶ 226. At approximately 6:00 P.M. that same day, Hon. Scarpulla spoke with Ms. Marquez on the phone and told her that she had received her letter, and that as a Title VII reporter she was required to respond with a letter containing instructions for Plaintiff. *Id.* ¶ 205. She told her that in the meantime, Plaintiff could

report sexual harassment to Hon. Silver. *Id.* Ms. Marquez told her that she was concerned Hon. Hoffman was trying to interfere with her transfer to Hon. Silver, to which Hon. Scarpulla responded that Plaintiff's transfer was not in jeopardy, and that she should attend her interview. *Id.* ¶ 207. Plaintiff never received a letter from Hon. Scarpulla. *Id.* ¶ 211.

On October 31, 2017, Hon. Silver and Mr. Reo interviewed Ms. Marquez for Hon. Silver's principal court attorney position. *Id.* ¶¶ 229-30. On November 2, 2017, Mr. Reo informed Plaintiff that he could not give her a firm date when Hon. Silver would make his hiring decision to which Ms. Marquez responded that "her situation was urgent." *Id.* ¶¶ 232-33. She explained her situation with Hon. Hoffman, including that she had been unable to return to work for over two weeks. *Id.*; *see also* Hanna Decl. Ex. C at 3. The next day, Mr. Reo responded to Plaintiff's email and told her that "Judge Silver's hiring process . . . [was] not in any way related to any other matter" and that Hon. Silver determined that the complaints contained in the Scarpulla Letter "should be referred to the Inspector General of the Unified Court System for investigation." TAC ¶¶ 234-37; *see also* Hanna Decl. Ex. C at 2.

On November 6, 2017, Ms. Marquez followed up with Mr. Reo and stated that "the Inspector General of UCS . . . appears to be primarily responsible for investigating the misconduct of nonjudicial employees" and asked him to "clarify that aspect of [his] email." *Id.*; TAC ¶ 238. Two days later, after receiving no response, Ms. Marquez followed up with Mr. Reo again and told him that she had learned that on the week of October 23, Hon. Hoffman had improperly attempted to fire another court attorney and also restated her situation with Hon. Hoffman. TAC ¶ 239; Hanna Decl. Ex. C at 1. She also requested to be informed of the basis of any investigation with the Inspector General and to be provided with a copy of any written complaint filed. TAC ¶ 239; Hanna Decl. Ex. C at 1. Furthermore, Ms. Marquez clarified "several factual inaccuracies"

stated by Mr. Reo, including that she had "followed the only procedure that ha[d] been communicated to [her] in respect to seeking a transfer" including by calling Hon. Silver's chambers on October 19, and that the "only other instruction" she had received from Hon. Scarpulla was that she had "the option to file a sexual harassment complaint with Judge Silver, which [she] ha[d] not filed." Hanna Decl. Ex. C at 1. She asked several questions regarding the status of her transfer and employment and ended her email by stating that she would

> not accept a transfer that appears to be a demotion . . . unless the basis is clearly stated in writing and appropriately adjudicated. If my current or future career and advancement in the court system is adversely affected as a result of a legitimate complaint, I will pursue the remedies available to me.

TAC ¶ 239; Hanna Decl. Ex. C at 1-2. Mr. Reo did not respond.

Shortly after she sent her follow-up email to Mr. Reo, Kay-Ann Porter, the Managing Inspector General for Bias Matters of the New York State court system left a voicemail on Plaintiff's cellphone asking for a call back. TAC ¶¶ 240, 267, 274. In a series of emails between Plaintiff and Ms. Porter, Ms. Porter identified herself as the Managing Inspector General for Bias Matters and told her that she was in possession of the Scarpulla Letter. *Id.* ¶ 276. She asked Plaintiff to come in for an immediate interview as part of a "potential investigation." *Id.* ¶ 276. Instead of going in for an immediate interview, Plaintiff requested "to document her communications with Porter in writing" to which Ms. Porter responded by offering to interview Plaintiff in person. *Id.* ¶¶ 278-281. Ms. Porter asked Plaintiff to confirm that she was not interested in pursuing a complaint against Hon. Hoffman, which Plaintiff stated she could not do and that she opposed the manner in which Ms. Porter's investigation was being initiated. *Id.* ¶¶ 283-84. This pattern of conduct continued for a six-week period, during which Plaintiff told Ms. Porter that she was communicating with and pursuing complaints through Lauren DeSole, the court system's Director of Human Resources. *Id.* ¶¶ 286-289, 321. She repeatedly expressed concerns about Ms.

Porter's office and objected to how her office was being used. *Id.* ¶ 288. On information and belief, Ms. Porter "took no investigative action that could verify or corroborate any of Plaintiff's numerous, documented statements." *Id.* ¶ 313.[4]

On November 9, 2017, Ms. DeSole contacted Ms. Marquez for the first time by leaving a voicemail on Plaintiff's cell phone. *Id.* ¶ 323. Plaintiff emailed Ms. DeSole and told her she wanted to document her interactions with the court system and asked to communicate over email. *Id.* ¶ 324. Ms. DeSole insisted on a phone call or an in-person meeting. *Id.* ¶ 325. The next day, Plaintiff emailed Ms. DeSole asking her to clarify Plaintiff's employment status and requesting copies of the Scarpulla Letter be destroyed. *Id.* ¶ 326. She also asked that a litigation hold be placed on Mr. Reo's phone. *Id.* In response, Ms. DeSole told her that she was still employed by the court system. *Id.* ¶ 327. Further, she stated that while an in-person meeting was not mandatory, "written communication was not sufficiently interactive and not a productive way to communicate." *Id.* She described the purpose of an in-person meeting as "providing [her] with options so [she] may return to work and set a path forward." *Id.*

On November 13, 2017, Ms. Marquez informed Ms. DeSole that she believed that she had a sex- and race-based discrimination claim against Hon. Hoffman and that she preferred to pursue that claim with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 329. She stated she remained "eager" to meet in person with Ms. DeSole to find a path forward within the court system. *Id.* Ms. DeSole responded that she was not in a position to give Plaintiff instructions or advice, told Ms. Marquez she was being uncooperative, reminded Plaintiff that she was an at-will employee, and told her that her options were becoming limited. *Id.* ¶ 330. The next day, at a

---

[4] Pleading facts "on information and belief" is acceptable "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Butts v. N.Y. City Dep't of Educ.*, No. 16-cv-5504, 2018 WL 4725263, at *9 n.8 (E.D.N.Y. Sept. 28, 2018) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

meeting with Plaintiff's union representative, Ms. DeSole discussed Plaintiff's complaints against Hon. Hoffman and informed Ms. Marquez that she would be fired within the week unless she provided information to support her claims against Hon. Hoffman. *Id.* ¶¶ 331, 333-34. She repeatedly encouraged Plaintiff to resign and discouraged Plaintiff from pursuing a complaint against Hon. Hoffman. *Id.* ¶¶ 335-36. On November 15, 2017, Ms. DeSole told Ms. Marquez that Hon. Hoffman had not been informed of Plaintiff's complaints and that it would not be useful to speak with him then because, "[i]f [she] called Judge Hoffman right now, he would just say he didn't do it." *Id.* ¶ 353. When Plaintiff asked Ms. DeSole whether Hons. Hoffman, Silver or Scarpulla would be interviewed in connection with her complaints, Ms. DeSole was silent. *Id.* ¶ 355. Additionally, she told Plaintiff that Hon. Marks would personally review her internal discrimination and harassment complaints, *id.* ¶ 408, and that she was in communication with John McConnell, Counsel to the New York State court system, *id.* ¶¶ 383, 388. Ms. DeSole previewed some of his legal arguments in connection with Plaintiff's complaints. *Id.* ¶ 388.

On November 22, 2017, Plaintiff submitted an 11-page written complaint to Ms. DeSole, summarizing Plaintiff's situation with Hons. Hoffman, Silver and Scarpulla. *Id.* ¶ 338; *see also* Hanna Decl. Ex. B. On information and belief, on approximately November 24, 2017, Hon. Lawrence Marks, Chief Administrative Judge of the New York State court system, made and/or approved the decision to demote and transfer Plaintiff to the Brooklyn Law Department. *Id.* ¶¶ 401, 409. That same day, Plaintiff was instructed to report to work at the Brooklyn Law Department for a temporary assignment. *Id.* ¶ 340. The next day, Plaintiff, through her attorney, objected to the temporary assignment as retaliatory and requested additional information. *Id.* ¶ 341. Ms. DeSole told her she was forwarding Plaintiff's inquiries to Counsel but did not provide any other

information. *Id.* Plaintiff worked in the Brooklyn Law Department for approximately three weeks. *Id.* ¶ 343.

On November 29, 2017, Lisa Evans, Assistant Deputy Counsel to the New York State court system contacted her and took control of the complaint process, instructing Ms. Marquez not to speak to anyone else. *Id.* ¶¶ 362, 364. On December 5, 2017, Ms. Evans sent Plaintiff a three-line letter in response to a three-page email summarizing Plaintiff's questions, objections and employment situation, where she instructed Plaintiff not to speak to anyone about any topic. *Id.* ¶ 366. She did not answer any of Plaintiff's substantive questions. ¶¶ 367, 369-70.

On December 1, 2017, Hon. Marks promulgated a revision to the court system's official sexual harassment policy, which "deleted approximately half" of the policy "in response to Plaintiff's complaints." *Id.* ¶¶ 416-17, 469-501. This revision was done "in secret, unilaterally, without process, without input from employees, and without the benefit of adequate internal or external expertise." *Id.* ¶ 418. On information and belief, the policy "was revised directly in response to Plaintiff's complaints about Hoffman and the manner in which Plaintiff reported or pursued those complaints." *Id.* ¶ 499.

On December 13, 2017, Ms. Marquez escalated her complaints to Hon. Marks, copying Ms. DeSole. *Id.* ¶¶ 300, 346, 374, 406. Approximately two hours later, Ms. Evans emailed Plaintiff to inform her that her complaints were "actively being investigated" by the Office of the Inspector General and that once the investigation was completed, they would inform her of the outcome. *Id.* ¶¶ 300, 374. That same day, Plaintiff, through her attorney, contacted Mr. McConnell and objected to the manner in which her complaints were being handled. *Id.* ¶ 386. On December 14, 2017, Ms. Marquez emailed Hon. Marks, Mr. McConnell, Ms. Evans, and Ms. DeSole to express concerns about the independence and ability of the Office of the Inspector General to conduct a thorough

investigation and requesting an independent investigator or at a minimum that the court system follow established practices for conducting a sexual harassment investigation. *Id.* ¶ 301. On information and belief, on approximately December 15, 2017, Hon. Marks, made and/or approved the decision to fire Plaintiff. *Id.* ¶ 410.[5] That same day, Ms. Evans forwarded a letter from Ms. DeSole informing Plaintiff that she was fired with no additional explanation or information. *Id.* ¶¶ 302, 347, 375.

On December 21, 2017, Plaintiff began contacting the entire New York Court of Appeals, starting with Chief Judge Janet DiFiore, whom she informed of her situation through various emails. ¶¶ 426-435. Chief Judge DiFiore did not respond to her emails, except through Mr. McConnell, who emailed Plaintiff on December 22, 2017 and stated that "in light of [her] firing and 'announced intention to litigate'" Chief Judge DiFiore would not respond to Ms. Marquez. *Id.* ¶ 436. Plaintiff also began emailing the Court of Appeals Judges on January 22, 2018, including Chief Judge DiFiore, to inform them of her situation. *Id.* ¶¶ 438, 448, 450-456. The only response she received was from the Chief Clerk and legal counsel to the Court of Appeals on February 13, 2018, who responding on behalf of the Court of Appeals, cited to Rule 500.1 [n] of the Court of Appeals' Rules of Practice and stated that "any further attempts to contact DiFiore and the members of the Court of Appeals 'would be improper' and 'would not be accepted or acknowledged.'" *Id.* ¶¶ 438, 449, 457.

On August 17, August 21, and November 6, 2018, Mr. Chalfen, the court system's Director of Public Information "described Plaintiff's lawsuit in the press as frivolous and nonsensical; stated that Plaintiff's complaints had been fully and comprehensively investigated by the . . . Inspector General; claimed that Plaintiff had refused to cooperate with investigators; and asserted that

---

[5] *See supra* note 4.

complaints about sex-based harassment by court system employees can be riddled with false

allegations." *Id.* ¶ 304; *see infra* n.17.

Plaintiff subsequently filed the instant suit asserting the following causes of action:[6]

- <u>Count 1</u>: Equal Protection Under § 1983 – Retaliation against all Individual Defendants[7]
- <u>Count 2</u>: Equal Protection Under § 1983 – Discrimination & Harassment against all Individual Defendants
- <u>Count 3</u>: Conspiracy Under § 1983 – Discrimination, Harassment & Retaliation against Hons. Scarpulla, Silver, Marks and DiFiore; Mr. McConnell, Ms. DeSole, Ms. Porter, Ms. Evans and Mr. Reo
- <u>Count 4</u>: Due Process Under § 1983 against Hons. Silver, Marks, DiFiore, Fahey, Feinman, Garcia, Rivera, Stein, and Wilson; Mr. McConnell, Ms. DeSole, Ms. Porter and Ms. Evans
- <u>Count 5</u>: First Amendment Under § 1983 – Retaliation against Hons. Silver, Marks and DiFiore; Mr. McConnell, Ms. DeSole, Ms. Porter and Ms. Evans
- <u>Count 6</u>: Equal Protection – Complaint Practices, Procedures & Supervision against Chief Judge DiFiore in her official capacity
- <u>Count 7</u>: Equal Protection – Hiring Practices against Chief Judge DiFiore in her official capacity
- <u>Count 8</u>: Equal Protection – Sexual Harassment Policy against Chief Judge DiFiore in her official capacity
- <u>Count 9</u>: Title VII – Retaliation against the State of New York
- <u>Count 10</u>: Title VII – Discrimination & Harassment against the State of New York
- <u>Count 11</u>: Article VI § 28(c) of the New York Constitution against Hons. Marks, DiFiore, Fahey, Feinman, Garcia, Rivera, Stein and Wilson
- <u>Count 12</u>: NYSHRL and NYCHRL – Retaliation against all Individual Defendants
- <u>Count 13</u>: NYSHRL and NYCHRL – Discrimination & Harassment against all Individual Defendants
- <u>Count 16</u>: Fraud against Hons. Scarpulla, Silver; Ms. DeSole, Ms. Porter, Ms. Evans and Mr. Reo
- <u>Count 17</u>: Fraudulent Inducement against Hon. Sattler
- <u>Count 22</u>: Promissory Estoppel, Quantum Meruit, and Unjust Enrichment against Hon. Scarpulla
- <u>Count 23</u>: Defamation against Mr. Chalfen

---

[6] Counts 18-21 were solely against Hon. Hoffman and are not before the Court as he is no longer a party to this suit. Counts 14 (negligence and negligent supervision) and 15 (intentional infliction of emotional distress) have been abandoned by Plaintiff, Pl. Opp. at 80 n. 6, and are therefore dismissed. *See Boimah v. Cumberland Farms*, 239 F. App'x 632 (2d Cir. 2007).

[7] The Individual Defendants include Hons. Scarpulla, Silver, Marks, DiFiore, Sattler, Fahey, Feinman, Garcia, Rivera, Stein and Wilson; Mr. McConnell, Ms. DeSole, Ms. Porter, Ms. Evans, Mr. Reo and Mr. Chalfen. The Individual Defendants were all sued in their individual capacities unless otherwise noted.

**STANDARD OF REVIEW**

### A.  Fed. R. Civ. P. 12(b)(1)

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed R. Civ. P. 12(b)(1), the district court must take all uncontroverted facts in the complaint as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011), *cert. denied*, 568 U.S. 1229 (2013). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citing *Amidax*, 671 F.3d at 145). "The task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Id.* (quoting *Amidax*, 671 F.3d at 145).

### B.  Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citation and internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681.[8]

### C. *Pro Se* Plaintiffs

Considering these standards, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). In particular, "the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (internal quotation marks omitted). In construing a *pro se* plaintiff's opposition brief, the Court may read additional facts asserted in the opposition brief as supplementing the complaint. *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). However, "the deference usually granted to *pro se* plaintiffs need not be expansively drawn" where the plaintiff is "quite familiar with the legal system and with pleading requirements." *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (quoting *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994)) (internal quotation marks omitted).

[8] The standard of review for 12(b)(1) motions is "substantively identical" to Rule 12(b)(6) motions. The key difference is that the movant bears the burden of proof on a 12(b)(6) motion but the plaintiff invoking the court's jurisdiction bears the burden on a 12(b)(1) motion. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

**DISCUSSION**

**I.    CLAIMS AGAINST THE COURT OF APPEALS**

Plaintiff asserts several claims against Chief Judge DiFiore, Hons. Fahey, Feinman, Garcia, Rivera, Stein, and Wilson, judges serving on the Court of Appeals (hereinafter, "Court of Appeals Judges") including § 1983, NYSHRL and NYCHRL claims for retaliation, discrimination and harassment (Counts 1-2; 12-13), and due process under § 1983 (Count 4). For the reasons discussed below, these claims are dismissed as to the Court of Appeals Judges.

First, the Court considers whether Plaintiff has adequately pleaded personal participation as to the Court of Appeals Judges sufficient to establish liability pursuant to § 1983, NYSHRL and NYCHRL. The Court concludes that she has not.

**A.  Section 1983 Claims**

"An individual may be held liable under . . . § 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). A plaintiff can establish a supervisor's personal involvement by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* Once shown, with respect to supervisory liability in particular, "a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation" and, "in the §1983 context, a plaintiff must establish that a supervisor's behavior constituted

intentional discrimination on the basis of a protected characteristic." *Id.* (quoting *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014)).

While it is true that supervisory status is not a prerequisite to personal involvement, as this Court has previously recognized, defendants who are not plaintiff's supervisors may be held liable under § 1983 only "to the extent their own conduct violated Plaintiff's constitutional rights." *See Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 992 (S.D.N.Y. 2017) (dismissing claims where defendants were not plaintiff's supervisors and the complaint was "almost entirely devoid of any actions by" defendants and "include[d] no allegations regarding their role in Plaintiff's termination.") (citing *Littlejohn*, 795 F.3d at 320).

The Court concludes that Plaintiff has not alleged sufficient facts to establish that the Court of Appeals Judges were her supervisors, nor sufficient facts to establish that the Court of Appeals Judges participated in the alleged unlawful conduct.

## 1. Plaintiff Has Not Adequately Pled that the Court of Appeals Judges Were Plaintiff's Supervisors

A supervisor is someone who can "take tangible employment actions against the [employee], *i.e.*, to effect a significant change in status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (discussing supervisory liability in the context of Title VII). In *Vance*, the Supreme Court specifically rejected the EEOC standard which categorized someone as a supervisor if the person was either "authorized 'to undertake or recommend tangible employment decisions affecting the employee,' . . . *or* (2) [was] an individual authorized 'to direct the employee's daily work activities.'" *Id.* at 451 (Ginsburg, J., dissenting) (quoting EEOC, Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors, 8 BNA FEP Manual 405:7651 (Feb. 2003)). While the Second Circuit has not

explicitly applied the *Vance* supervisor definition to § 1983 actions, at least one district court in this Circuit has applied it to a § 1983 action. *See Mabb v. Town of Saugerties*, No. 18-cv-866, 2020 WL 210313, at *5 (N.D.N.Y. Jan. 14, 2020); *see also Mejia v. City of N.Y.*, No. 17-cv-2696 (E.D.N.Y. May 30, 2020) (discussing supervisory authority in the context of a NYSHRL claim).

The Court concludes that the Court of Appeals Judges were not Plaintiff's supervisors. They are not alleged to have the authority to "effect a significant change in [Plaintiff's employee] status." *See Vance*, 570 U.S. at 431. Plaintiff makes various arguments in support of her claim that the Court of Appeals Judges were supervisors with no reference to case law. The Court is unpersuaded by these arguments.

*First*, Plaintiff asserts that Article VI, § 28 of the New York State Constitution supports the conclusion that "DiFiore has ultimate supervisory authority over any administrative matter in the New York State judiciary." Pl. Opp. at 59. Relatedly, Plaintiff argues that the rest of the Court of Appeals Judges "exercise administrative, supervisory, and oversight functions . . . pursuant to various legal rules and institutional norms" including their "institutional positions as judges on New York's highest court." *Id.* at 60. In other words, Plaintiff would have us conclude that the Court of Appeals Judges are supervisors by "virtue of their institutional standing." *Id.* at 61. However, merely being in the "chain of command" is not sufficient to establish personal involvement in the alleged unlawful conduct. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *cf. McKenna v. Wright*, 386 F.3d 432, 437-38 (2d Cir. 2004) ("[D]efendants . . . [were] alleged to have had sufficient personal involvement" as they were "all alleged to have participated in the [unlawful conduct]" and were not "merely 'link[ed]' in the . . . chain of command,' . . . but adequately alleged to have had [supervisory] responsibility for enforcing or allowing the

continuation of the challenged policies that resulted in the [unlawful action]." (internal citations omitted).

*Second*, Plaintiff asserts that that the Court of Appeals Judges are required to take appropriate action if they receive information "indicating a substantial likelihood that another judge has committed a substantial [disciplinary] violation." Pl. Opp. at 60 (citing 22 NYCRR § 100.3(D)(1)). According to Plaintiff, the court system's sexual harassment policy also imposes supervisory obligations because the original policy "imposed an obligation on all supervisors and managers to implement and enforce the policy and [] help court employees who are subject to harassment." *Id.* at 61. Plaintiff also argues that the Court of Appeals Judges are supervisors *vis-à-vis* their "policymaking responsibilities" as they are "responsible for reviewing and approving the judiciary's statewide administrative policies." *Id.* Aside from her conclusory allegations, Plaintiff provides no support for how these policies or responsibilities create *supervisory* responsibility as to the Court of Appeals Judges.

In any event, Plaintiff does not allege that the Court of Appeals Judges knew of the alleged discrimination, harassment or retaliation while it was occurring and failed to do anything about it. *Cf.* TAC ¶¶ 426-435, 438, 448, 450-56 (Plaintiff began contacting Chief Judge DiFiore on December 22, 2017 and the rest of the Court of Appeals Judges on January 22, 2018, after she had been terminated). *See also Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (dismissing suit pursuant to Fed. R. Civ. P. 12(b)(6) where plaintiff had not alleged the defendant's "personal involvement in or awareness of the [deprivations alleged by plaintiff]"); *cf. Burhans v. Lopez*, 24 F. Supp. 3d 375, 382 (S.D.N.Y. 2014) (denying dismissal where plaintiffs had claimed that defendant "was aware of prior incidents of sexual harassment involving Lopez and concealed them through confidential settlements and hushed reassignments" and "failed to take the

appropriate steps . . . creat[ing] a culture in which [defendant] believed he could [act] . . . with impunity").

**2. Plaintiff Has Not Alleged Sufficient Facts Establishing that the Court of Appeals Judges' Own Conduct Violated Plaintiff's Constitutional Rights**

Because we have concluded that the Court of Appeals Judges were not Plaintiff's supervisors, we must next consider whether Plaintiff has adequately alleged conduct by the Court of Appeals Judges that violated Plaintiff's constitutional rights. We conclude that she has not. Plaintiff alleges that she, through her attorney, emailed the Court of Appeals Judges about her claims of retaliation, discrimination and harassment, and the Court of Appeals Judges did not respond or do anything to remedy her situation. *See* Pl. Opp. at 63-65. However, simply receiving "letters or grievances" does not amount to personal involvement by the Court of Appeals Judges. *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (listing cases). In *Mateo*, the court declined to find that a Defendant had been personally involved where he "received [Plaintiff's] letters, forwarded at least two of them to subordinates for investigation, and sent [Plaintiff] a response to the effect that [Plaintiff] had provided insufficient information to support his allegations." *Mateo*, F. Supp. 2d at 431. The court found that without more, those allegations proved only "the scantest awareness of [Plaintiff's] claims" and did not amount to personal involvement. *Id.* Like in *Mateo*, mere receipt of grievances is not sufficient to establish the personal involvement of the Court of Appeals Judges. While at least one other court in this Circuit has declined to extend the *Mateo* line of cases outside the prison context, *see Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 131 (D. Conn. 2010), the Second Circuit has not opined on the issue, and courts in this District have applied the doctrine outside of the prison context. *See, e.g.*, *Davis v. City of N.Y.*, No. 00-cv-4309, 2000 WL 1877045, at *1, *9 (S.D.N.Y. Dec. 27, 2000) (letters sent to Commanding Officer of the Police Academy did not constitute personal involvement by the

Commanding Officer). The Court has considered Plaintiff's other arguments and finds them unpersuasive. Since Plaintiff has not adequately pleaded personal participation as to the Court of Appeals Judges sufficient to establish liability pursuant to § 1983, these claims are dismissed as to the Court of Appeals Judges.

### B.  NYSHRL and NYCHRL Claims

The NYSHRL and NYCHRL also require personal involvement by the defendant. A supervisor can be held liable under NYSHRL if that supervisor "actually participates in the conduct giving rise to [the] discrimination claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998). It is also an unlawful discriminatory practice under the NYSHRL "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. L. § 296(6). The Second Circuit has construed this language to allow a co-worker who "*actually participates* in the conduct giving rise to a discrimination claim" to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff. *Tomka*, 66 F.3d at 1317 (emphasis added). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical." *Feingold v. New York*, 366 F.3d 138, 158-59 (2d Cir. 2004) (collecting cases) (citations and internal quotation marks omitted). These claims must also fail as to the Court of Appeals Judges for the reasons discussed above.

For the above stated reasons, Defendants' motion to dismiss Plaintiff's discrimination, harassment and retaliation claims under § 1983, NYSHRL, and NYCHRL (Counts 1-2; 12-13), and due process claim under § 1983 (Count 4) is GRANTED as to the Court of Appeals Judges.

## II.      CLAIMS AGAINST THE STATE OF NEW YORK (Counts 9 and 10)

Next, the Court considers whether Plaintiff has pleaded that New York State is her employer such that she can assert Title VII claims against the State. The Court concludes that Plaintiff has not adequately pleaded that New York State is her employer and thus she cannot assert Title VII claims against the State.

### A. Plaintiff Cannot Assert Title VII Claims Against New York State

In order for Plaintiff to assert Title VII claims against the State of New York, she must adequately plead that New York State is her employer. *See Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) ("[T]he existence of an employer-employee relationship is a primary element of Title VII claims." (citations omitted)), *cert. denied*, *sub nom. Bd. of Educ. of City Sch. Dist. of City of N.Y. v. Gulino*, 554 U.S. 917 (2008). "[T]he term 'employer' is 'sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether the party may technically be described as an 'employer' . . . at common law.'" *Cook v. Arrowsmith Shelburne*, 69 F.3d 1235, 1240 (2d Cir. 1982) (citation omitted).

In the context of Title VII, there are two "recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005). These doctrines are known as the "single employer" doctrine and the "joint employer" doctrine. *Id.* Under the single employer doctrine, "separate corporations under common ownership and management . . . can be deemed to constitute a single enterprise." *Id.* at 198 (citation omitted). This Circuit examines four factors in order to assess whether two nominally distinct entities are actually a single employer: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common

management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-41 (2d Cir. 1995) (internal citations and quotation marks omitted). Under the joint employer doctrine, "there is no single integrated enterprise. A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they . . . handle certain aspects of their employer-employee relationship jointly." *Arculeo*, 425 F.3d at 198 (internal citation and quotation marks omitted). While the Second Circuit has not fully laid out a test as to who is considered a joint employer in the Title VII context, courts have used the following factors in determining what constitutes a joint employer: "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Shiflett v. Scores Holding Co., Inc.*, 601 F. App'x 28, 30 (2d Cir. 2015) (summary order) (internal citations and quotation marks omitted) (finding no material issue of fact existed as to whether defendant could be deemed plaintiff's employer for purposes of Title VII as there was only evidence supporting one of the factors of the single employer test).

Defendants argue that Plaintiff has not "alleged any non-conclusory facts that suggest the State of New York was her employer." *See* Defs.' Mot. at 15. They point to Plaintiff's Complaint, the collective bargaining agreement between UCS and Plaintiff's Union, and Plaintiff's EEOC Charge naming UCS as her employer, as evidence that she was employed by UCS rather than by New York State. *Id.* at 15-16. The Court agrees with Defendants. Even accepting Plaintiff's allegations as true, there are no allegations in Plaintiff's Complaint that would allow the Court to draw the inference that she was employed by New York State.

In her opposition, Plaintiff asserts her belief "that she correctly identified her employer" and that her "position is that an employee of the New York State judiciary may properly assert a Title VII claim *either* against New York State or the New York State Unified Court System." Pl. Opp. at 99. In support of this proposition, she cites to the doctrines of "single integrated employer"

and "joint employer" and then states that "[t]he application of each doctrine depends on factual issues that require discovery and may not be resolved on a motion to dismiss." *Id.* at 100 (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)).

There are no allegations in Plaintiff's Complaint that would allow the Court to draw the inference that New York State and the New York Unified Court System are a "single employer" or a "joint employer" based on the relevant factors for each doctrine. Plaintiff's suggestion that the application of these doctrines depends on factual issues that require discovery and is not the proper subject of a motion to dismiss is mistaken. As Plaintiff concedes, courts in this District have determined on motions to dismiss that "plaintiffs did not assert sufficient factual allegations to show that they were employed by the State of New York." Pl. Opp. at 100; *see, e.g.*, *Penz v. Washer*, No. 18-cv-4964, 2019 WL 1922040, at *2 (S.D.N.Y. Apr. 30, 2019) (dismissing Title VII claim on 12(b)(6) grounds where plaintiff claimed that the State employed her but provided no facts to support her claim); *cf. Daikin Am. Inc.*, 756 F.3d at 226 (concluding that the district court erred when they held that plaintiff "failed adequately to allege that the two entities constituted a single integrated enterprise" even where plaintiff had alleged some facts supporting that they were indeed a single integrated enterprise).

Plaintiff's argument that she was "formally" employed by the State of New York finds no support in her pleadings either. Pl. Opp. at 101. Perhaps recognizing this, she offers to amend her pleadings to further allege that "(a) she received her salary directly from the State of New York; (b) the State of New York is listed as her employer on her tax forms; (c) she received benefits from the State of New York; and (d) her collective bargaining agreement makes no distinction between the State of New York and the New York State Unified Court System." *Id.* at 104. The Court declines to allow Plaintiff to amend her Complaint for a fifth time on this basis because she has

already been permitted to amend her pleadings to "allege that a new entity or entities are the plaintiff's employer and to add such entity or entities as defendants." Minute Entry, May 16, 2019. Further, amending her pleadings on this basis would be futile, as these factors would not be sufficient to establish an employment relationship. *See Hartley v. Rubio*, 785 F. Supp. 2d 165, 187 (S.D.N.Y. Mar. 29, 2011) (denying leave to amend complaint because amendment would be futile); *see also Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020) (summary order) ("Although [a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once[,] . . . leave to amend a complaint may be denied when amendment would be futile." (alterations in original) (internal citation and quotation marks omitted)). The Court has considered the remainder of Plaintiff's arguments and finds them unavailing.

For the reasons discussed, Defendants' motion to dismiss Plaintiff's Title VII claims against New York State is GRANTED.

### III.   DISCRIMINATION AND HARASSMENT CLAIMS AGAINST REMAINING INDIVIDUAL DEFENDANTS (Counts 2 and 13)

Next, the Court considers whether Plaintiff has adequately pleaded her §1983, NYSHRL and NYCHRL discrimination and harassment claims as to the remaining Individual Defendants. [9] For the reasons discussed below, the Court concludes that she has for her discrimination claims as to Hon. Marks, Mr. McConnell, Ms. DeSole, Ms. Evans, but not as to the rest of the remaining Individual Defendants. The Court also concludes that she has not adequately pleaded harassment claims against any of the remaining Individual Defendants.

---

[9] The remaining Individual Defendants include Hons. Scarpulla, Silver, Marks, Sattler; Mr. McConnell, Ms. DeSole, Ms. Porter, Ms. Evans, Mr. Reo and Mr. Chalfen.

### A.  Section 1983 and NYSHRL Discrimination Claims

To prevail on an equal protection discrimination claim under § 1983, a plaintiff "must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Butts v. N.Y. City Dep't of Educ.*, No. 16-cv-5504, 2018 WL 4725263, at *10 (E.D.N.Y. Sept. 28, 2018) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)) (internal quotation marks omitted). Because the standard for discrimination under § 1983 and the NYSHRL is the same, the Court will consider them together unless otherwise noted. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 246 (E.D.N.Y. 2015).

### 1.  Plaintiff Suffered an Adverse Employment Action When She Was Terminated

An adverse employment action is defined as a "materially adverse change in the terms and conditions of employment." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted), *abrogated on other grounds by Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30 (2d Cir. 2019).To qualify as "'materially adverse[,]' a change in working conditions must be 'more disruptive than mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank & Tr. Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). The Second Circuit has held that "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities" qualify as a materially adverse change. *Id.* However, "it is not enough that defendants[] gave plaintiff a subjectively less preferred . . . assignment; the assignment must be materially less prestigious, materially less suited to h[er] skills and expertise, or materially less conducive to career advancement." *Kunik v. N.Y. City Dep't of Educ.*, 436 F. Supp. 3d 684, 694 (S.D.N.Y. 2020), *aff'd*, No. 20-cv-741, 2012 WL 137882 (2d Cir. Jan. 15, 2021).

On the face of the Complaint, the adverse employment actions Plaintiff alleges she was subjected to are (1) a demotion (her transfer to the Brooklyn law department), *see, e.g.*, TAC ¶¶ 294, 393, 409, 412; Pl. Opp. at 23 ("demoting her"; "transferring her involuntarily"); *but cf. id.* at 22-23 (Defendants denied Plaintiff a transfer and denied her a position as Silver's principal court attorney),[10] and (2) her termination, *see, e.g.*, TAC ¶¶ 407, 425, 428-29, 443 (noting that she was fired with no explanation or response on the part of the court system after submitting a sex- and race-based harassment, discrimination, and retaliation complaint against a judge).

Taking all the alleged facts alleged as true, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has not adequately pleaded that she suffered an adverse employment action when she was transferred to the Brooklyn law department. This transfer does not constitute an adverse employment action given that nowhere in the Complaint does she state that as a result of her transfer she experienced a decrease in wage or salary, a material loss of benefits or significantly diminished material responsibilities. Plaintiff alleges that she was transferred from her position as a principal court attorney to "a pool position located in a different borough." TAC ¶ 340. However, Plaintiff does not allege any facts to suggest how the position in the Brooklyn law department was a "less distinguished title," *Galabya*, 202 F.3d at 640, or "materially less prestigious, materially less suited to h[er] skills and expertise, or materially less conducive to career advancement," *Kunik*, 436 F. Supp. 3d at 694. Her conclusory allegation that it was a demotion does not make it so. *See, e.g.*, TAC ¶¶ 294, 393, 409, 412 (describing her transfer to the Brooklyn law department as a demotion); *Coleman v. City of N.Y.*, No. 17-cv-7864, 2018 WL 5723133, at *5 (S.D.N.Y. Nov. 1, 2018) (dismissing Title VII discrimination claim where

---

[10] Plaintiff has not adequately pleaded that she suffered an adverse employment action when Defendants denied Plaintiff a transfer and denied her a position as Silver's principal court attorney for the same reasons as her alleged demotion (transfer to the Brooklyn law department).

plaintiff did not allege any change in title, benefits, or pay as a result of her assignment); *cf.* *Littlejohn*, 795 F.3d at 312 (parties did not dispute that involuntary transfer to different office was a demotion where plaintiff alleged she had suffered a pay cut of $2,000).

On the other hand, termination of employment has been found by the Second Circuit to qualify as a materially adverse employment action. *Galabya*, 202 F.3d at 640. Thus, Plaintiff has adequately pleaded that she suffered an adverse employment action when her employment was terminated.

### 2. Plaintiff Has Established That Her Sex was a Motivating Factor in the Decision to Terminate her Employment

The second element of § 1983 and NYSHRL claims may be established "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Butts*, 2018 WL 4725263, at *10 (citing *Vega*, 801 F.3d at 87). To survive a motion to dismiss, a plaintiff need only allege "facts supporting a minimal plausible inference of discriminatory intent." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). A "clearly irregular investigative adjudicative process" can also serve as evidence of discriminatory intent when combined with other factors. *Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 (2d Cir. 2019); *see also Doe v. Columbia*, 831 F.3d at 56-58 (2d Cir. 2016).

It is undisputed that as a Filipino woman Plaintiff is a member of protected classes under §1983 and NYSHRL. *See* TAC ¶ 36. However, Plaintiff has failed to adequately allege that her

race was a motivating factor in the decision to terminate her employment. No individual defendant is alleged to mention Plaintiff's race except Hon. Hoffman, who is no longer a party to this suit. *See generally* TAC. Repeatedly stating in conclusory fashion that she was subject to race-based discrimination is not sufficient to state a claim under §1983 and NYSHRL.

However, the Court concludes that taking all facts alleged as true and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has adequately alleged that her sex was a motivating factor in the decision to terminate her employment. Alleged failure to follow the sexual harassment policy in conducting an investigation into Hon. Hoffman for sexual harassment raises a minimal inference of discrimination on the basis of sex. *Menaker*, 935 F.3d at 34-37 (finding allegations that school had failed to comport with procedures in university's harassment policy supported an inference of discrimination); *see also Doe v. Columbia*, 831 F.3d 46, 57 (2d Cir. 2016) (finding a minimal inference of sex bias where plaintiff pleaded that defendant had "declined even to explore the testimony of . . . witnesses" in conducting a sexual harassment investigation and that defendant faced substantial criticism for "not taking seriously complaints of female students alleging sexual assault by male students").

Plaintiff alleges that on information and belief, Ms. Porter "took no investigative action that could verify or corroborate any of Plaintiff's numerous, documented statements." TAC ¶ 313. No one was interviewed in relation to Plaintiff's complaints. *Id.* ¶¶ 353-55; *cf.* Hon. DiFiore & Hon. Marks, Office of Court Administration, *What Will Happen Once I Make The Complaint*?, SEXUAL HARASSMENT POL'Y & PROC. 10 (hereinafter, "SEXUAL HARASSMENT POL'Y & PROC.") ("During the investigation, you, the person you said harassed you, and others who may have information about the harassment will be interviewed.").[11] Instead, Ms. DeSole told Plaintiff that

---

[11] This policy is attached to Plaintiff's Third Amended Complaint as Exhibit A. ECF No. 86. For the purposes of Plaintiff's discrimination claim, the relevant sexual harassment policy was the one in place prior to Hon. Marks

"it was not useful to speak to Hoffman . . . 'If I called Judge Hoffman right now, he would just say he didn't do it.'" TAC ¶ 353. Hon. Scarpulla and Hon. Silver were not interviewed either. TAC ¶ 355. Plaintiff was fired and received no "copy of the written determination" of the investigation. *See, e.g.*, *id.* ¶¶ 318, 375; *cf.* SEXUAL HARASSMENT POL'Y & PROC. 11 ("You should receive a copy of the written determination within 60 days . . . ."). Furthermore, Plaintiff alleges that "[d]espite continuous and longstanding notice, the court system has . . . actively obstructed, undermined, and dismantled specific initiatives to address workplace harassment." *See, e.g.*, TAC ¶ 515; *see also id.* ¶ 520 ("[T]he court system's internal complaint process does not operate to neutrally evaluate and resolve employee complaints. Instead, when an employee reports . . . harassment . . . the offices and administrators responsible for handling such complaints . . . work to suppress the complaint."). The Court is not persuaded by Defendants' implication that Plaintiff may not use the sexual harassment policy as evidence of discrimination because she did not avail herself of the available procedure. Just because she did not attend an in-person interview with the Office of the Inspector General, does not allow the Court to reasonably infer that she did not avail herself of the procedure given that she submitted an 11-page complaint laying out the allegations against Hon. Hoffman. *See, e.g.*, TAC ¶ 338; *see also* Hanna Decl. Ex. B.

Drawing all reasonable inferences in favor of Plaintiff, these allegations, taken as true, are sufficient to assert a cause of action for discrimination pursuant to § 1983 as to Hon. Marks, Mr. McConnell, Ms. DeSole and Ms. Evans who are all adequately alleged to be involved in the decision to terminate Plaintiff pursuant to the personal participation principles laid out above. *See supra* pp. 16-21. However, pursuant to the same principles, the facts alleged do not support the

---

promulgating a revised version on December 1, 2017 as this version was the one in place when Plaintiff began making complaints regarding Hon. Hoffman and expressing concerns regarding the complaint and reporting process more generally.

inference that Hons. Scarpulla, Silver and Sattler, Ms. Porter, Mr. Reo and Mr. Chalfen personally participated in Plaintiff's termination and thus, the discrimination claim pursuant to § 1983 as to these remaining Individual Defendants is dismissed. *Id.*

### B.  NYCHRL Discrimination Claim

NYCHRL claims must be analyzed "separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal citations and quotation marks omitted). In order to survive a motion to dismiss a complaint must allege facts showing "differential treatment—that she is treated less well—because of a discriminatory intent." *Id.* (internal quotation marks omitted).

Here, Plaintiff has adequately alleged that she was "treated less well" (e.g., she was fired) because she made sexual harassment claims against Hon. Hoffman. Thus, she has pleaded sufficient facts to support a discrimination claim pursuant to the NYCHRL as to Hon. Marks, Mr. McConnell, Ms. DeSole and Ms. Evans.

### C.  Section 1983, NYSHRL, NYCHRL Harassment Claims

Lumped into Plaintiff's § 1983, NYSHRL and NYCHRL discrimination claims are sex- and race-based harassment claims. From the face of Plaintiff's Complaint, it is unclear on what legal basis Plaintiff asserts race-based harassment claims. Employee race-based harassment claims are typically actionable as hostile work environment claims. *See, e.g.*, *Armstrong v. Metro. Transp. Auth.*, No. 07-cv-3561, 2015 WL 992737, at *4, 6 (S.D.N.Y. Mar. 3, 2015) (race-based harassment actionable as hostile work environment claims under NYSHRL; discussing hostile work environment claims in the context of NYCHRL); *James v. Van Blarcum*, 782 F. App'x 83, 84-86

(2d Cir. 2019) (summary order) (race-based harassment actionable as hostile work environment claim under § 1983). Plaintiff seems to recognize this in her opposition, as she cites case law for hostile work environment claims. Pl. Opp. at 21-22. As Defendants note, a cause of action based on hostile work environment is not alleged in her pleading and the phrase only appears in her pleading in reference to the revisions to the UCS sexual harassment policy. *See* Def. Reply at 15 (citing TAC ¶ 477).

The Court declines to consider hostile work environment claims under § 1983, NYSHRL and NYCHRL. *See Gittens-Bridges v. City of N.Y.*, No. 19-cv-272, 2020 WL 3100213, at *21 (S.D.N.Y. June 11, 2020) (declining to consider hostile work environment claim where plaintiff raised it for the first time in her opposition).

To the extent her sex-based harassment claims are being asserted as hostile work environment claims under § 1983, NYSHRL and NYCHRL, the Court also declines to consider them. However, sex-based harassment is actionable outside of the hostile work environment context. Sexual harassment that "transcends coarse, hostile and boorish behavior is actionable under § 1983 as a violation of the Equal Protection Clause." *Burhans v. Lopez*, 24 F. Supp. 3d 375, 380 (S.D.N.Y. 2014) (internal citation and quotation marks omitted). The claim may be based on "direct quid pro quo discrimination" where "an employer alters an employee's job conditions or withholds an economic benefit because the employee refuses to submit to sexual demands." *Id.* (internal citation and quotation marks omitted). Furthermore, "inaction may be actionable, and a failure to promptly and properly respond to complaints may expose a supervisor or employer to liability under anti-discrimination laws." *Id.* at 382 (internal citations and quotation marks omitted). While § 1983 liability can be imposed "for failing properly to investigate and address allegations of sexual harassment," that is only true where "through this failure, the conduct

becomes an accepted custom or practice of the employer." *Id.* (internal citations and quotation marks omitted).

Accepting all the facts in the Complaint as true, and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff has not adequately alleged a sex-based harassment claim under § 1983. Plaintiff repeatedly asserts in her Complaint and in her opposition papers that the Individual Defendants "fail[ed] to remedy sex- and race-based [] harassment against Plaintiff after being informed through report or appeal; creat[ed] or allow[ed] the continuance of a policy or custom under which sex- and race-based [] harassment occurred; exhibit[ed] gross negligence in failing to supervise subordinates who committed sex- and race-based [] harassment against Plaintiff; and/or exhibit[ed] deliberate indifference in failing to act on information indicating that sex- and race-based [] harassment was occurring." *See, e.g.*, TAC ¶ 595. However, even accepting as true her allegations that none of the remaining Individual Defendants responded to her complaints, she does not plead facts to support how the Individual Defendants' alleged failure to properly investigate or address the allegations allowed the conduct to become "an accepted custom or practice." *Burhans*, 24 F. Supp. at 380. The Court is not required to accept as true "threadbare recitals of a cause of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

For these reasons, Defendants' motion to dismiss Plaintiff's discrimination claims under § 1983, NYSHRL and NYCHRL as to Hon. Marks, Mr. McConnell, Ms. DeSole and Ms. Evans is DENIED; Defendants' motion to dismiss Plaintiff's discrimination claims under § 1983, NYSHRL and NYCHRL as to the rest of the remaining Individual Defendants is GRANTED; and Defendant's motion to dismiss harassment claims under § 1983, NYSHRL and NYCHRL is GRANTED as to all the remaining Individual Defendants.

IV.   **QUALIFIED IMMUNITY ON RETALIATION, DUE PROCESS AND FIRST AMENDMENT RETALIATION CLAIMS UNDER § 1983 AS TO MS. DESOLE, MR. MCCONNELL, MS. EVANS, HONS. MARKS AND SILVER**

Before moving on to the substance of the remainder of Plaintiff's § 1983 claims, including for Retaliation, First Amendment Retaliation and Due Process, the Court considers Defendants' argument that Hons. Marks and Silver, Ms. Desole, Mr. McConnell, and Ms. Evans (together, "Retaliating Defendants") are entitled to a qualified immunity defense on these claims. For the reasons laid out below, we conclude that these Defendants cannot use this defense to shield themselves from liability on these claims.

Qualified immunity is "designed to protect [ ] the [defendant public] official . . . from . . . suit . . . thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial." *Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010) (internal citation and quotation marks omitted). This affirmative defense ensures that "public officials be able to perform their duties unflinchingly and without constant dread of retaliation" and "prevent[s] threats of liability that would be potentially disabling to officials." *Id.* at 530 (internal citation and quotation marks omitted). A public official is entitled to qualified immunity under § 1983 if "either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable [for them] to believe that their acts did not violate these clearly established rights." *Id.* (quoting *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010)). The determination of whether an official's conduct was "objectively reasonable" requires examination of the information that Defendants had at that time, "without consideration of subjective intent." *Id.* at 530-31.

Although this defense can be asserted at the motion to dismiss stage, "the defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright*, 386 F.3d 432, 434 (2d

34

Cir. 2004). The defense must be "based on facts appearing on the face of the complaint" and is subject to the more "stringent standard" applicable to motions for summary judgment. *Id.* at 436. The Court must draw "all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* A motion to dismiss on this basis "may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Id.* (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)) (internal quotation marks omitted).

The Retaliating Defendants may not have the Complaint dismissed at the pleading stage on qualified immunity grounds. Defendants' assertion that "Plaintiff does not allege that her termination clearly violated federal law or that it was objectively unreasonable for the [Retaliating Defendants] to believe that Plaintiff's termination was lawful" is plainly wrong. Defs.' Mot. at 28. Plaintiff has adequately alleged that Defendants fired her or refused to hire her in retaliation for engaging in protected activity and speech. Accepting all Plaintiff's factual allegations as true and drawing all reasonable inferences from the facts alleged, the Court concludes that it was not objectively reasonable for Defendants to "believe that their acts did not violate these clearly established rights." *Amore*, 624 F.3d at 529. Defendants fired Plaintiff after she made sexual harassment claims against Hon. Hoffman. Although they assert that they conducted an investigation into Plaintiff's claims, they did not conduct this investigation in accordance with the sexual harassment policy and procedure in place. Specifically, they did not interview Hon. Hoffman, Scarpulla or Silver in connection with the investigation and did not provide her with a written determination of the investigation, much less an explanation for why she was fired. Further, as discussed below, the Retaliating Defendants "are alleged to have had sufficient personal

involvement to justify rejection of their immunity defense on a motion to dismiss." *See McKenna*, 386 F.3d at 437.

Therefore, the Court concludes that the qualified immunity defense is not available to shield Retaliating Defendants from the retaliation, First Amendment retaliation and due process claims asserted under § 1983. The Court addresses each of these claims in turn.

## V.   RETALIATION CLAIMS AGAINST REMAINING INDIVIDUAL DEFENDANTS (Counts 1 and 12)

We next address whether Plaintiff has adequately pleaded retaliation claims under § 1983, NYSHRL and NYCHRL. We conclude that she has not as to Hons. Scarpulla or Sattler, nor as to Ms. Porter, Mr. Reo or Mr. Chalfen. However, we conclude that she has adequately pleaded these claims as to Hon. Marks and Silver, Ms. DeSole, Mr. McConnell and Ms. Evans.

### A.  § 1983 and NYSHRL Retaliation Claims

To state a claim for retaliation pursuant to § 1983 and NYSHRL, a plaintiff must allege that "(1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015). The standard for retaliation under § 1983 and NYSHRL is the same and thus the Court considers these claims together unless otherwise noted. *See Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 n.6 (S.D.N.Y. 2017).

#### 1.  Defendants Took Adverse Employment Actions Against Plaintiff

As discussed *supra*, Defendants took an adverse employment action against Plaintiff when they terminated her employment. However, the definition of an adverse employment action in the retaliation context is broader than in the discrimination context: "[A]n adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of

discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

The Court concludes that in addition to termination of employment, Plaintiff suffered an adverse employment action in the retaliation context when Judge Silver "refused" to hire her or consider her job application and when he denied her transfer request (presumably to his chambers, given that she was eventually transferred to the Brooklyn law department), *see, e.g.*, TAC ¶ 250. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (defining adverse employment action broadly to include "discharge, refusal to hire, [and] refusal to promote"). Defendants' failure to follow their sexual harassment policy while conducting an investigation into Plaintiff's sexual harassment allegations against Hon. Hoffman also consists of an adverse employment action in the retaliation context. This failure could dissuade a reasonable worker from making or supporting a charge of discrimination. *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 147 (2d Cir. 2014) ("[A]n employer's investigation may constitute a cognizable retaliatory action if carried out so as to result in . . . employment consequences of a negative nature, or if conducted in such an egregious manner as to dissuade a reasonable worker from making or supporting a charge of discrimination." (internal citations and quotation marks omitted)).

However, the remaining alleged adverse employment actions have not been adequately pleaded or are otherwise contradicted by Plaintiff's pleadings. As previously discussed, Plaintiff has not adequately pleaded that she was demoted when she was transferred to the Brooklyn law department. Plaintiff's assertion that her confidentiality was breached is without merit. *See* Pl. Opp. at 12. As Plaintiff alleges in her Complaint, Hon. Scarpulla stated that she was a Title VII reporter, *see, e.g. id.* ¶ 205, and thus she would have had a duty to forward any complaints to the individuals responsible for investigating such complaints. Hon. Scarpulla is not alleged to have

forwarded the complaint to a broader audience "to impugn the employee's character." *Cf. Aslin v. Univ. of Rochester*, No. 17-cv-6847, 2019 WL 4112130, at \*4-7 (W.D.N.Y. Aug. 28, 2019) (finding that disclosure of confidential information "involv[ing] the fact that [defendants] participated in [the] protected conduct" constituted an adverse employment action where the information was disseminated in a report). Further, to find that Hon. Scarpulla breached Plaintiff's confidentiality by forwarding her complaints would risk subjecting employers to liability for merely complying with their duties. *See Cox*, 760 F.3d at 146 ("[W]e cannot blind ourselves to the fact that an employer's failure to conduct an investigation when faced . . . with an internal complaint . . . might be viewed as evidence of . . . indifference to . . . discrimination, if not acquiescence in it . . . [T]he law must give breathing room for such investigations to be carried out."). Lastly, Plaintiff has provided no case law support as to how Defendants "sever[ing] critical professional relationships with Plaintiff" or failure to receive information about a couple of jobs is enough to establish an adverse employment action, even considered in the aggregate.

The Court has considered the remaining alleged adverse employment actions and concludes that they are without merit as to Defendants.[12]

### 2. Because Plaintiff Opposed An Unlawful Employment Practice

We now consider whether Plaintiff has established that she suffered from the above adverse employment actions *because* she engaged in protected activity. For the reasons discussed below, we conclude that Plaintiff has adequately alleged that Defendants terminated her and refused to hire her because she opposed unlawful employment practices. However, we conclude that Plaintiff

---

[12] A retaliation claim under § 1983 and NYSHRL asserted on the basis of Mr. Chalfen's comments in the press fails for the same reasons as a First Amendment retaliation claim under § 1983 fails. As discussed *infra*, Plaintiff has no standing to challenge the revised sexual harassment policy, and thus a retaliation claim under § 1983 and NYSHRL asserted on the basis of a revision of this policy fails for the same reason.

has not adequately alleged that Defendants' failure to follow the sexual harassment policies was because she engaged in protected activities.

A plaintiff asserting a retaliation claim must allege facts leading to the plausible inference that "retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). The requisite causation can be pleaded "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 411-412 (S.D.N.Y. 2014) (quoting *Galimore v. City Univ. of N.Y. Bronx Comm. Coll.*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009)) (internal quotation marks omitted); *see also Littlejohn*, 795 F.3d at 319.

Here, Plaintiff has engaged in protected activity. There is no dispute that complaining about sexual harassment is a protected activity. *See Radice v. Eastport S. Manor Cent. Sch. Dist.*, 437 F. Supp. 3d 198, 213 (E.D.N.Y. 2020); *see also McMenemy v. City of Rochester*, 241 F.3d 279, 284 (2d Cir. 2001) (finding that investigation of sexual harassment claims constituted protected activity). Expressing concerns regarding the complaint and reporting process itself is also a protected activity. *See McMenemy*, 241 F.3d at 283 (noting the prohibition of "discrimination . . . against an employee who has opposed *any* practice made an unlawful employment practice . . . under [the relevant statute]") (emphasis in original) (internal citation and quotation marks omitted); *see also Littlejohn*, 795 F.3d at 316. Further, "the employment practices opposed by the plaintiff need not have actually amounted to a violation . . . [R]ather, the plaintiff must have had a

good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *McMenemy*, 241 F.3d at 283 (citations and internal quotation marks omitted).

The Court concludes that Plaintiff has adequately pleaded that Defendants terminated her and refused to hire her because of her complaints against Hon. Hoffman and her concerns regarding the complaint and reporting process itself. The timing alone supports Plaintiff's assertions that Defendants refused to hire her and terminated her because she reported Hon. Hoffman for perceived sexual harassment and expressed concerns over the complaint and reporting process. *See Littlejohn*, 795 F.3d at 319. Plaintiff's written complaints began on October 20, 2017 with the Scarpulla Letter, which contained allegations of sexual harassment by Hon. Hoffman (which was eventually forwarded to Hon. Silver, Ms. Porter and Ms. DeSole), and continued up through the day before she was fired, when she emailed Hon. Marks, Mr. McConnell, Ms. Evans and Ms. DeSole "express[ing] concerns about the independence and ability of the [OIG] to conduct a thorough investigation." *See, e.g.*, TAC ¶ 301. Additionally, while the Complaint does not specifically allege when Hon. Silver received the Scarpulla Letter, Plaintiff's pleadings support an inference that he knew about the letter while making the decision whether to hire her or not. *See, e.g.*, Hanna Decl. Ex. C at 2 (November 3, 2017 email from Mr. Reo to Ms. Marquez stating that "[u]pon reading th[e] [Scarpulla] letter for the first time, and in conjunction with your emails to me, Judge Silver has determined that this matter should be referred to the Inspector General . . . for investigation"). Defendants' argument that Hon. Silver had discretion over the decision whether to hire her does not negate the reasonable inference of retaliation in refusing to hire her.

Defendants argue that there are allegations in Plaintiff's Complaint that undermine but-for causation, including that she "unilaterally absent[ed] herself from work," "was critical of Justice Hoffman as a jurist, and told him to refrain from sending her work-related emails on the weekend,"

"refuse[d] to submit to an in person interview," and that she "objected to her [work] assignment," and thus she cannot use temporal activity to support her claim. Defs.' Mot. at 24-25. The Court finds this argument unpersuasive. Plaintiff's Complaint alleges that on October 23, 2017, after being harassed by Hon. Hoffman, she informed him that she would be taking leave. TAC ¶ 160. She did not return to work until November 24, 2017 when her transfer was finalized. *Id.* ¶ 294. It is thus technically true that she missed work for approximately a month, but these allegations do not support an inference that she "*unilaterally* absent[ed] herself from work." Plaintiff also alleges that she objected to her transfer as "retaliatory," *id.* ¶ 294, and that she did not pursue complaints through the OIG in part due to concerns about the office, *see, e.g.*, *id.* ¶¶ 288-290.

Defendants would have the Court believe that Plaintiff's actions constitute legitimate reasons for termination. *See* Defs.' Mot. at 24-25. However, the Court agrees with Plaintiff that these activities constitute protected opposition and cannot serve as legitimate reasons for termination sufficient to prohibit Plaintiff from using temporal activity at this stage to establish causation. *See* Pl. Opp. at 17-18. Employees have a right to engage in protected activity designed "to resist or antagonize . . .; to contend against; . . . to resist; [or] withstand [an unlawful employment practice]." *See Littlejohn*, 795 F.3d at 317 (internal citation and quotation marks omitted). As alleged, it can reasonably be inferred that Plaintiff's actions were in response to the alleged sexual harassment by Hon. Hoffman, the alleged retaliation in her transfer to the Brooklyn law department, and her concerns about the complaint process and the OIG office, and thus constitute protected activity. Furthermore, Plaintiff has also alleged direct evidence of retaliatory animus as to her termination by at least one of the Defendants. Plaintiff alleges that at a meeting with Plaintiff's union representative, "DeSole told Plaintiff that she would be fired within one week . . . unless she provided information to support her claims against Hoffman" and "repeatedly

encouraged Plaintiff to resign." TAC ¶¶ 334-35. Plaintiff also alleges that "DeSole repeatedly discouraged Plaintiff from pursuing a complaint against Hoffman . . . [and] told Plaintiff that even if her claims against Hoffman were substantiated it was unlikely that she would be reassigned to a principal court attorney position." *Id.* ¶¶ 335-36.

However, Plaintiff does not adequately plead that Defendants' failed to follow the sexual harassment policy because she engaged in protected activity. In fact, the protected activity that Plaintiff engaged in was expressing concern regarding the complaint and reporting process generally, suggesting that Defendants were already not following the sexual harassment policy by the time she began engaging in protected activity. Thus, this alleged adverse employment action cannot serve as the basis of a retaliation claim pursuant to § 1983 and NYSHRL.

Plaintiff has thus adequately alleged her retaliation claims under § 1983 and NYSHRL on the basis of her termination and refusal to hire.

## B. NYCHRL

Section 8-107(7) of the NYCHRL prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (quoting N.Y.C. Admin. Code § 8-107(7)) (internal quotation marks omitted). For the reasons discussed above, Plaintiff has adequately alleged a retaliation claim pursuant to the NYCHRL.

## C. Personal Participation by the Remaining Individual Defendants as to the § 1983 Retaliation, NYSHRL and NYCHRL Claims

Next, the Court considers whether Plaintiff has adequately pleaded that the remaining Individual Defendants personally participated in the alleged adverse employment actions. The Court concludes that Plaintiff has adequately pleaded personal participation as to Hons. Silver and

42

Marks, Mr. McConnell, Ms. Evans and Ms. DeSole, but not as to Hons. Scarpulla or Sattler, nor as to Mr. Reo, Mr. Chalfen or Ms. Porter. Applying the same personal participation principles discussed *supra*, Plaintiff's § 1983, NYSHRL and NYCHRL retaliation claims against Hons. Scarpulla and Sattler**,** Ms. Porter, Mr. Reo and Mr. Chalfen must fail. Plaintiff has not adequately alleged that these individual defendants were her supervisors nor that they were involved in the decision to terminate her or refusal to hire her. *See Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 992 (S.D.N.Y. 2017) (dismissing claims where defendants were not plaintiff's supervisors and the complaint was "almost entirely devoid of any actions by defendants" and "included no allegations regarding their role in Plaintiff's termination").

As to Hons. Silver and Marks, Mr. McConnell, Ms. Evans and Ms. DeSole, accepting all the facts alleged in the Complaint as true, and drawing all reasonable inferences in favor of Plaintiff, the Court can reasonably infer that these individuals were involved in the alleged retaliation. *See, e.g.*, TAC ¶¶ 330, 334-36, 347 (allegations as to Ms. DeSole); *id.* ¶ 336 (allegations as to Mr. McConnell); *id.* ¶ 375 (allegations as to Ms. Evans); *id.* ¶ 410 (allegations as to Hon. Marks); *id.* ¶ 250 (allegations as to Hon. Silver).

### D.  Sovereign Immunity Defense as to NYCHRL Claim

Finally, the Court considers whether Plaintiff's NYCHRL claim is barred by sovereign immunity. For the reasons discussed below, we conclude that this claim is not barred. Under the Eleventh Amendment, a state "is immune from suits in federal court brought by its own citizens." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 243 (E.D.N.Y. 2015). This immunity extends to entities considered arms of the state and to "state officials at those agencies working on behalf of the state (i.e., *in their official capacities*)." *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394 (E.D.N.Y. 2010) (emphasis added). There are three exceptions to the rule of sovereign immunity, two of

which are not at issue here. *Soloviev*, 104 F. Supp. 3d at 243. The third does not apply here, as New York State has not consented to suit under NYCHRL. *Id.* Most importantly, however, this rule does not bar suits against individuals in their individual capacities. *See, e.g.*, *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993).

The Court concludes that Defendants are not entitled to sovereign immunity as they are being sued in their individual capacities. The New York Unified Court System ("UCS") is considered an "arm of the [s]tate" for sovereign immunity purposes, *Golomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009), and it thus follows that state officials working for UCS sued in their *official capacity* are entitled to sovereign immunity. However, courts routinely allow NYCHRL claims to proceed against state officials named in their individual capacity. *See, e.g.*, *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004); *Burhans v. Lopez*, 24 F. Supp. 3d 375, 385 (S.D.N.Y. 2014). Defendants' arguments are without merit, as the cases cited in support are easily distinguishable on the facts. *See Monreal v. N.Y. State Dep't of Health*, 38 A.D.3d 1118, 1119 (3d Dep't 2007) (finding court had no subject matter jurisdiction over suit against individual official where only alleged conduct was issuing a directive that plaintiff undergo a psychiatric evaluation); *Thomas v. Tarpley*, 268 A.D.2d 258, 258 (1st Dep't 2000) (finding court had no subject matter jurisdiction over suit where plaintiff's allegations were "*clearly premised* upon actions or determinations" made by defendants in their official roles) (emphasis added); *In re Andrews v. State of New York*, 138 A.D.3d 1297, 1301 n.4 ("[P]etition [was] devoid of allegations that such respondents actually acted in their individual—as opposed to their official—capacities . . . ."). Here, Plaintiff's allegations regarding Hons. Marks and Silver, Mr. McConnell, Ms. DeSole and Ms. Evans' actions, support a claim for retaliation under the NYCHRL, and cannot be said to have been taken by these Defendants in their official capacities. *See Morin v. Tormey*, 620 F. Supp. 2d

353, 365 (finding sovereign immunity did not apply and allowing § 1983 First Amendment retaliation claim to go forward against judges in their individual capacity).

For the reasons discussed above, Defendants' motion to dismiss Plaintiff's retaliation claims pursuant to § 1983, NYSHRL and NYCHRL as to Hons. Silver and Marks, Mr. McConnell, Ms. Evans and Ms. DeSole is DENIED and Defendants' motion to dismiss these claims against Hons. Scarpulla and Sattler, Mr. Reo, Ms. Porter and Mr. Chalfen is GRANTED.

## VI.   SECTION 1983 FIRST AMENDMENT RETALIATION CLAIM AS TO HONS. SILVER, MARKS AND DIFORE, MR. MCCONNELL, MS. DESOLE, MS. PORTER AND MS. EVANS (Count 5)

The Court next considers whether Plaintiff has adequately pleaded her § 1983 First Amendment retaliation claim against Hons. Silver, Marks and DiFiore, Mr. McConnell, Ms. DeSole, Ms. Porter and Ms. Evans. The Court concludes that Plaintiff has adequately pleaded her § 1983 First Amendment retaliation against Hons. Silver and Marks, Mr. McConnell, Ms. DeSole, Ms. Evans, but not as to Chief Judge DiFiore or Ms. Porter.

### A.  Personal Participation

Plaintiff has not adequately alleged personal participation as to Chief Judge DiFiore nor Ms. Porter, for the same reasons discussed previously. For this reason alone, Plaintiff's § 1983 First Amendment retaliation claim must fail as to Chief Judge DiFiore and Ms. Porter.

### B.  Plaintiff Has Adequately Alleged a § 1983 First Amendment Retaliation Claim Against Hons. Silver and Marks, Mr. McConnell, Ms. DeSole and Ms. Evans

In order to survive a motion to dismiss on a First Amendment retaliation claim under §1983 in the public employment context, plaintiff must allege that: "(1) [her] speech addressed a matter of public concern, (2) [s]he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination." *Cobb v. Pozzi*, 363 F.3d 89, 182 (2d Cir.

2004); *see also Lynch v. Ackley*, 811 F.3d 569, 577-78 (2d Cir. 2016) (explaining the First Amendment retaliation doctrine applies to public employees). In addition, "the courts must balance the employee's right to comment on matters of public concern with the government's interest as an employer to effectively and efficiently provide public services." *Bernheim v. Litt*, 79 F.3d 318, 324 (2d Cir. 1996) (citations omitted).

The Court concludes that Plaintiff has adequately pleaded all the elements of a § 1983 First Amendment retaliation claim. Plaintiff alleges that as a result of engaging in speech addressing a matter of public concern, *i.e.*, expressing concern over the complaint and reporting process at UCS, Defendants refused to hire her and terminated her employment. Further, as discussed above, Plaintiff has established the requisite causal connection to survive a motion to dismiss.

### 1. Plaintiff's Speech Addressed a Matter of Public Concern

The Court concludes that Plaintiff has adequately alleged that her speech addressed a matter of public concern and was not solely related to her own situation. *Cf. Feingold v. New York*, 366 F.3d, 138, 160 (2d Cir. 2004) (speech solely related to plaintiff's own situation cannot serve as the basis of a First Amendment retaliation claim). Defendants arguments to the contrary do not persuade the Court otherwise. Accepting the facts alleged as true and drawing all reasonable inferences in favor of Plaintiff, Plaintiff did not solely complain about her own situation. While Plaintiff's alleged complaints were based on her own experience, they also suggested a system-wide problem, including with the integrity of the Inspector General's office. *See Feingold*, 366 F.3d at 190; *cf. Woods v. Enlarged City Sch. Dist.*, 473 F. Supp. 2d 498 (S.D.N.Y. 2007) (granting summary judgment on First Amendment retaliation claim where plaintiff's complaint related to her own situation and her "speech was not designed to reveal [a system-wide problem]" (citing *Brown-Scott v. Hartford Bd. of Educ.*, 51 F. App'x 70, 71 (2d Cir. 2002))).

Defendant asserts that even if Plaintiff adequately alleged that she engaged in protected speech, her speech interests are outweighed by the State's interests in promoting the efficiency of its public services. Defs.' Mot. at 26 (citing *Lynch*, 811 F.3d at 578 and *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). Nothing of the sort can be inferred taking allegations in Plaintiff's Complaint as true and drawing all reasonable inferences in favor of Plaintiff. In *Lynch* the court found that Defendant-Appellant was entitled to qualified immunity on a § 1983 First Amendment retaliation claim. *Lynch*, 811 F.3d at 583. In reaching that conclusion, the court stated that "[defendant] was permitted to retaliate against [plaintiff's] speech if [plaintiff's] speech interests were outweighed by the government's interest in promoting the efficiency of the public services it performs through its employees." *Lynch*, 811 F.3d at 583. The court went on to state that Plaintiff's speech "obviously threatened to disrupt [defendants'] ability to administer the [government entity] effectively." *Id.* Whether Plaintiff's speech "threatened to disrupt Defendants' ability to administer" the Unified Court System effectively is a question of fact not appropriately decided on a motion to dismiss.

### 2. Plaintiff Has Adequately Pled She Suffered an Adverse Employment Action and That a Causal Connection Existed Between the Speech and the Adverse Employment Actions

As previously discussed, Plaintiff adequately alleged that she suffered an adverse employment action when Defendants refused to hire her and subsequently terminated her, and that a causal connection existed between the protected speech and the suffered adverse employment actions.

Plaintiff has thus adequately pleaded a § 1983 First Amendment retaliation claim against Hons. Marks and Silver, Mr. McConnell, Ms. Evans and Ms. DeSole, but not as to Chief Judge DiFiore nor Ms. Porter. Therefore, Defendants' motion to dismiss this claim is DENIED as to

Hons. Marks and Silver, Mr. McConnell, Ms. Evans and Ms. DeSole and GRANTED as to Chief

Judge DiFiore and Ms. Porter.

## VII.   SECTION 1983 CONSPIRACY CLAIM AGAINST HONS. SCARPULLA, SILVER, MARKS AND DIFIORE, MR. MCCONNELL, MS. DESOLE, MS. PORTER, MS. EVANS AND MR. REO (Count 3)

The Court next considers whether Plaintiff has adequately pleaded a conspiracy claim

under § 1983. For the reasons discussed below, we conclude that Plaintiff has not.

To prove conspiracy under § 1983, "a plaintiff must show: (1) an agreement between two

or more state actors or between a state actor and a private entity (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citation omitted). "[C]omplaints

containing only conclusory, vague, or general allegations that the defendants have engaged in a

conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and

expansive allegations are insufficient, unless amplified by specific instances of misconduct."

*Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal citation and quotation

marks omitted). The facts alleged must constitute a "meeting of the minds" between defendants to

show a conspiracy. *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (dismissal under Rule

12(b)(6) is proper where "plaintiffs have not alleged, except in the most conclusory fashion, that

any such meeting of the minds occurred"). Where Plaintiff has failed to plead a claim for a

violation of her constitutional rights, her conspiracy claim fails as well. *See Dowd v. DeMarco*,

314 F. Supp. 3d 576, 587 (S.D.N.Y. 2018).

Defendants first argue that this claim should be barred by the intracorporate conspiracy

doctrine because each of the Individual Defendants "is expressly alleged to be an [sic] UCS official

and to have acted within the scope of his/her official duties." Defs.' Mot. at 30. The intracorporate

conspiracy doctrine provides that the "officers, agents, and employees of a single corporate entity are legally incapable of conspiring together." *Chamberlain v. City of White Plains,* 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013) (internal citations and quotation marks omitted ). Under the "personal stake" exception, the doctrine does not apply "when the alleged conspirators are motivated by an improper personal interest separate and apart from that of their principal." *Id.* (collecting cases). As this Court has previously recognized and as Plaintiff points out, while various courts in this district have applied the doctrine to § 1983 claims, the Second Circuit has not extended the doctrine to the § 1983 context. Pl. Opp. at 31; *Ali v. Ramos*, No. 16-cv-01994, 2018 WL 1353210, at *6 (S.D.N.Y. Mar. 14, 2018).

However, this Court does not need to reach the question as to whether the intracorporate conspiracy doctrine or personal stake exception apply because Plaintiff's "conclusory, vague, [and] general allegations that . . . defendants have engaged in a conspiracy to deprive . . . plaintiff of h[er] constitutional rights" are not sufficient to survive a motion to dismiss. *See Ciambrello*, 292 F.3d at 325.

Accordingly, Defendants' motion to dismiss the conspiracy claim as to Hons. Scarpulla, DiFiore, Silver, and Marks, Mr. McConnell, Ms. DeSole, Ms. Porter, Ms. Evans and Mr. Reo is GRANTED.

## VIII.   SECTION 1983 14TH AMENDMENT DUE PROCESS CLAIM AS TO HONS. SILVER AND MARKS, MR. MCCONNELL, MS. DESOLE, MS. PORTER AND MS. EVANS (Count 4)

We next address whether Plaintiff has adequately pleaded a 14th Amendment Due Process claim. For the reasons discussed below, the Court concludes that she has not.

The threshold questions in a § 1983 claim for denial of due process are "(1) whether [plaintiff] possessed a liberty or property interest and, if so, (2) what process [] was due before [the

plaintiff] could be deprived of that interest." *Ciambriello v. Cty of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (citation omitted). Accepting all allegations in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that she has not adequately pleaded that she possessed a liberty or property interest and thus we do not reach the question as to what process was due. We consider each of Plaintiff's asserted constitutionally protected interests in turn.

### A.  Constitutionally Protected Interests

Plaintiff asserts that she had the following constitutionally protected interests:

- (1) Property interest in continued employment as a principal court attorney deriving from the New York Civil Service Law
- (2) Property interest in a transfer or reassignment deriving from Plaintiff's collective bargaining agreement
- (3) Liberty and property interests in a discrimination-, harassment-, and retaliation-free workplace
- (4) Liberty interest in practicing her profession without stigma imposed by state officials to her "good name and reputation"

TAC ¶ 603.

While the Constitution protects property interests, these property interests are "created and their dimensions are defined by existing rules or understandings . . . stem[ming] from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." *Ciambriello*, 292 F.3d at 313 (internal citations and quotation marks omitted). Thus, "[s]tate law . . . guides us in deciding whether plaintiff possessed only an unprotected unilateral expectation of employment, or instead had a constitutionally-protected legitimate claim of entitlement." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996). (internal citations and quotation marks omitted). "A public employee has a property interest in continued employment if the employee is guaranteed

continued employment absent 'just cause' for discharge." *Ciambriello*, 292 F.3d at 313 (citation omitted).

### 1.      Property Interest in Continued Employment as a Principal Court Attorney

Plaintiff alleges that her property interest in continued employment as a principal court attorney derives from New York Civil Service Law § 75(1)(c). TAC ¶¶ 603-04. New York Civil Service Law § 75 ("§ 75") states that particular categories of employees "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." N.Y. CIV. SERV. L. § 75. Subsection (1)(c) applies to employees "holding a position in the non-competitive or labor class *other than* a position designated in the rules of the state or municipal civil service commission as confidential . . . who since his or her last entry into service has completed at least five years of continuous service." *Id.* § 75(c)(1) (emphasis added).

Because we find that Plaintiff is not protected by § 75, we need not reach the question of whether Plaintiff's § 75 rights are abrogated by the existence of Plaintiff's collective bargaining agreement.

Contrary to Plaintiff's contentions, she is not protected by § 75 because she was designated a confidential employee. Plaintiff asserts in conclusory fashion that she is protected by § 75 because she was employed as a law clerk and principal court attorney in the non-competitive class of the New York State civil service for over five years and was not a "confidential" employee. TAC ¶ 604. In the same paragraph, Plaintiff admits that New York State designated her as a confidential employee. *Id.* She claims this is inapposite as the Third Department has found that "law assistants to judges are not 'confidential' within the meaning of the New York Civil Service Law." *Id.* (citing *In re Lippman v. Public Empl. Relations Bd.*, 263 A.D.2d 891, 903 (3d Dep't

1999)). However, legal conclusions in pleadings are not entitled to the same deference as factual allegations at the 12(b)(6) stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In any event, *Lippman* does not stand for the broad proposition that law clerks can never be classified as "confidential" employees. In *Lippman*, the court considered the question as to whether the Public Employment Relations Board ("PERB") had properly denied the application by the Chief Administrative Judge ("CAJ") to classify a specific set of employees within the Court of Appeals and the Appellate Division, First and Second Departments as managerial or confidential. *Lippman*, 263 A.D.2d at 891. The Court did not find a basis to disturb the PERB's determination that those specific employees were not managerial or confidential. *Id.* at 899. Furthermore, *Lippman* concerned the definition of "confidential" pursuant to Article 14 of the Civil Service Law, otherwise known as "Taylor's Law," *id.* at 902-904, leading this Court to question *Lippman*'s applicability to this case. Plaintiff has not asserted a challenge to her designation as a confidential employee in her pleadings. Thus, the Court declines to express an opinion on whether or not it is a proper designation.

Because Plaintiff was not protected by § 75, she does not have a protected property interest in continued employment and we need not reach the question as to what process was due. *Ciambriello*, 292 F.3d at 313.

### 2.  **Property Interest in a Transfer or Reassignment**

Plaintiff alleges that she had a property interest in a transfer or reassignment deriving from Plaintiff's collective bargaining agreement which states: "To the extent that an employee's request for reassignment or transfer can be accommodated, the State shall do so." TAC ¶¶ 603, 605 (quoting § 9.15(b) of Plaintiff's CBA). Generally, there is no property interest obtaining a particular assignment or discretionary promotion. *See, e.g.*, *McMenemy v. City of Rochester*, 241

F.3d 279, 286 (2d Cir. 2001) (no property interest in discretionary promotion); *Walker v. Tormey*, 178 F. Supp. 3d 53, 62 (N.D.N.Y. 2016), *aff'd*, 814 F. App'x 620 (2d Cir. 2020) (no property interest in being able to work in a particular court). However, "a contract may vest a right or interest that requires due process protection." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (finding that Plaintiff "had a property interest in his employment that qualified for the protections of . . . due process" because he had a CBA that "guaranteed he could not be fired without just cause") (citation omitted).

We reject Plaintiff's assertion that she had a property interest in a transfer or reassignment deriving from her CBA. Section 9.15(b) does not create a property interest that rises to the level of a "legitimate claim of entitlement." *Ciambriello*, 292 F.3d at 313. The vast majority of Second Circuit cases where the court found that a property interest derived from a contract involved employment contracts or CBAs containing clauses stating that an employee could not be terminated or demoted without cause. *See, e.g.*, *Ciambriello*, 292 F.3d at 313-14 (separate CBA provisions entitling plaintiff to promotion *and* prohibiting demotion without cause) (listing cases); *Moffitt*, 950 F.2d at 885 (CBA provision prohibiting termination without cause); *cf. Bd. of Regents of State Colls. v. Roth*, 408 U.S. at 578 (no property interest where employment contract did not contain provision providing for contract renewal absent sufficient cause).

The Court finds the Second Circuit's reasoning in *McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir. 2001) instructive. In that case, plaintiff, whose boss had promised him a promotion in a few months but then denied him the promotion, alleged that he had a property interest in the promotion based on a "mutually explicit understanding" that his boss's promise had created. *See McMenemy*, 241 F.3d at 286. The Second Circuit held that "any alleged promise of promotion . . . did not strip the Chief of his discretion to choose another candidate once a position

did become available" and stressed "the importance of the discretionary governmental appointive power embodied in Civil Service Law § 61." While Plaintiff frames § 9.15(b) as a mandatory contractual obligation, *see* Pl. Opp. at 37, it was by no means a certainty, because the possibility existed that Plaintiff could not be accommodated.

Because the Court finds that Plaintiff had no legitimate property interest in a transfer or reassignment deriving from Plaintiff's CBA, we need not reach the question of what process was due. *Ciambriello*, 292 F.3d at 313.

### 3. Liberty and Property Interests in a Discrimination-, Harassment-, and Retaliation-Free Workplace

Plaintiff also asserts she had liberty and property interests in a discrimination-, harassment-, and retaliation-free workplace deriving from the Equal Protection Clause of the 14th Amendment to the United States Constitution, Title VII, NYSHRL, NYCHRL and the New York State court system's official policies and procedures. The Court concludes that this claim fails. Plaintiff does not provide any case law support establishing that interests in a discrimination-, harassment-, and retaliation-free workplace are cognizable liberty and/or property interests that can serve as the basis of a procedural due process claim, and we are aware of none.[13]

---

[13] Some courts have recognized procedural due process claims where the plaintiff was deprived of procedural due process as a result of retaliatory actions. *See, e.g.*, *Parra v. Fischer*, No. 11-cv-6518, 2012 WL 3069952, at *5 (W.D.N.Y. July 27, 2012) (providing false testimony against an inmate motivated by desire to retaliate against inmate's exercise of substantive constitutional rights constitutes due process violation where inmate is denied procedural protections allowing him to clear his name); *Williams v. Foote*, No. 08-cv-2838, 2009 WL 1520029, at *11 (C.D. Cal. May 28, 2009) (finding plaintiff was not afforded due process where a false disciplinary report was filed against him in retaliation for plaintiff exercising a constitutional right and he was deprived of procedural process in connection with the proceedings flowing from the false report, resulting in the deprivation of a cognizable liberty interest). That is not the situation here. Rather Plaintiff claims that the cognizable liberty or property interest is the right to a retaliation-free workplace. The cases cited by Plaintiff in support of her argument are inapposite. *See, e.g.*, *Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 n.9 (2d Cir. 2019) (finding sex discrimination but noting that in doing so they were not incorporating the Due Process Clause of the 14th Amendment into the employment decisions of private universities).

### 4.  Alleged Liberty Interest - Stigma Plus Claim

Plaintiff alleges that she possesses a liberty interest in practicing her profession without stigma imposed by state officials to her "good name and reputation." TAC ¶ 603. This kind of § 1983 liberty interest claim is generally known as a "stigma plus" claim and requires that the plaintiff allege "(1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that . . . she claims is false, and (2) some tangible and material state-imposed burden." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (internal citation and quotation marks omitted). The Second Circuit has recognized that "[w]hile there is no 'rigid requirement [] that both the 'stigma' and the 'plus' must issue from the same government actor or at the same time, 'they must be sufficiently proximate.'" *Mudge v. Zugalla*, 939 F.3d 72, 80 (2d Cir. 2019) (quoting *Velez*, 401 F.3d at 89). This requirement is satisfied where "(1) the stigma and plus would, to a reasonable observer, appear connected . . . and (2) the actor imposing the plus adopted (explicitly or implicitly) those statements in doing so." *Velez*, 401 F.3d at 89.

The Court concludes Plaintiff has not adequately alleged that Mr. Chalfen's statements were sufficiently proximate to her termination,[14] therefore, Plaintiff's stigma plus claim fails. Plaintiff alleges that Mr. Chalfen's statements to the press were made eight to ten months after Plaintiff's termination while "describ[ing] . . . the lawsuit" and addressing the "revised [sexual harassment] policy." TAC ¶ 304. [15] As alleged, Plaintiff's pleadings do not support an inference

---

[14] Plaintiff also asserts that the material state-imposed burden is the "rejection of Plaintiff's internal discrimination, harassment, and retaliation complaints." TAC ¶ 607. However, this cannot serve as a legitimate liberty interest for the reasons previously discussed in relation to the right to a discrimination-, harassment-, and retaliation-free workplace such that a stigma plus claim on that basis must fail.

[15] Even though Plaintiff does not include, nor cite to the full statements made by Mr. Chalfen to the press, these are integral to the Complaint and thus properly considered on a motion to dismiss. *See supra* n.3; *see also Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 414 n.52 (S.D.N.Y. 2009) (collecting cases). The full statements at issue are as follows:

- "It remains [UCS] policy not to comment on pending lawsuits no matter how frivolous, poorly crafted, or nonsensical." Def. Reply at 23 n.33 (citing Carl, Campanile, *Law Clerk Says Court Ignored Sexual*

that a reasonable observer would think Mr. Chalfen's statements and Plaintiff's termination are connected, nor that the "actor impos[ing] the plus adopted" the statements.

Plaintiff's arguments to the contrary are flawed for several reasons. *First*, the standard adopted by the Second Circuit is that of a "reasonable observer." *Velez*, 401 F.3d at 89. Her assertion that this was the only response *she* received from the court system is irrelevant to that analysis. *Second*, the statements made were not expressly connected to her termination as in *Velez* or *Abelli* upon which Plaintiff relies. Despite Plaintiff's assertion that the statements were made "in direct response to inquiries regarding Plaintiff's claim that she was only terminated in retaliation for making harassment complaints," Pl. Opp. at 47, Mr. Chalfen does not mention her termination at all in his statements. *See* TAC ¶ 304.

Plaintiff's reliance on *Velez* and *Abelli* is misplaced. In *Velez*, plaintiff "allege[d] that the board members made, and sought to publicize in local news sources, highly stigmatizing statements that explicitly requested her removal," stigma which the Chancellor adopted by imposing the same plus requested by the board members. *Velez*, 401 F.3d at 90. And in *Abelli*, the court found that the proximity requirement between the stigmatizing statements and plaintiff's termination was "plausibly satisfied" where the allegations "plausibly suggest[ed] that these

---

*Harassment Claims Against Judge – Then Fired Her*, N.Y. POST, Aug. 17, 2018); *cf.* TAC ¶ 304 ("Lucian Chalfen . . . described Plaintiff's lawsuit in the press as frivolous and nonsensical").

- "Lucian Chalfen said her claims were not the impetus for the revised policy, saying her allegation is a 'completely made-up assertion' and that Marquez refused to cooperate with investigators . . . Chalfen said his characterization of the prevalence of sexual harassment in the courts has 'no basis in fact.' . . . 'As we have maintained, any allegation is immediately followed up and thoroughly investigated." Andrew Denney & Dan M. Clark, *In #MeToo Era, New York Courts' New Sexual Misconduct Policy was Done Too Quietly, Critics Charge*, N.Y. Law J., Nov. 6, 2018; *cf.* TAC ¶ 304 ("Lucian Chalfen… stated that Plaintiff's complaints had been fully and comprehensively investigated by the court system's Inspector General; claimed that Plaintiff had refused to cooperate with investigators.")
- "Chalfen said that individual cases such as those of Torres-Albert, Moriates and Marquez can be riddled with false allegations." *Id.*; *cf.* TAC ¶ 304 ("Lucian Chalfen . . . asserted that complaints about sex-based harassment by court system employees can be riddled with false allegations.")

statements were made 'in the course' of Plaintiff's . . . termination [and] were related to [her] termination." *Abelli v. Ansonia Bd. of Educ.*, 987 F. Supp. 2d 170, 175 (2d Cir. 2013).

Plaintiff tries to salvage her claim by asserting that "stigmatizing statements appear to have been made and published at the time of Plaintiff's termination in at least one internal report and potentially other internal communications . . . .These statements then appear to have been adopted by decision makers who authorized adverse employment actions." Pl. Opp. at 47. However, these vague and conclusory assertions are not enough to survive a motion to dismiss.

For the aforementioned reasons, Defendants' motion to dismiss Plaintiff's § 1983 due process claim is granted as to Hons. Silver and Marks, Mr. McConnell, Ms. DeSole, Ms. Porter and Ms. Evans.

## IX.  EQUAL PROTECTION CLAIMS AS TO CHIEF JUDGE DIFIORE (COUNTS 6, 7, 8)

Plaintiff asserts equal protection claims on the basis of complaint practices, procedures and supervision (count 6); hiring practices (count 7); and the sexual harassment policy (count 8). As discussed below, Plaintiff does not have standing to bring these claims.

### A. Standing

The threshold issue is whether Plaintiff has standing to bring her equal protection claims. "[T]o have standing to bring suit, a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) [that is] likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citations omitted). When a plaintiff seeks injunctive relief, plaintiff must show that "[s]he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983)) (internal

quotation marks omitted). "[A]bstract injury is not enough; rather the threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)) (internal quotation marks omitted). Though the Second Circuit has not squarely addressed the issue of whether former employees have standing to seek injunctive relief, courts in this District have held that where a plaintiff seeks reinstatement with a former employer, plaintiff has standing to seek injunctive relief. *See, e.g.*, *Kassman v. KPMG LLP*, 925 F. Supp.2d 453, 466-69 (S.D.N.Y. 2013) (collecting cases); *Robinson v. Blank*, No. 11-cv-2480, 2013 WL 2156040, at *2 (S.D.N.Y. May 20, 2013) (recognizing exception to general rule that plaintiffs cannot rely on "past injury" to satisfy the injury requirement where injunctive relief sought is being reinstated). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)) (internal quotation marks omitted).

### 1. Plaintiff Cannot Challenge the UCS Hiring Practices (Claim 7)

Plaintiff challenges UCS hiring practices as "corrupt" and full of "widespread patronage, cronyism and nepotism . . . further deterring discrimination and harassment complaints and facilitating retaliation against complaining employees." TAC ¶ 541. The Court does not have jurisdiction to hear this claim as Plaintiff has not adequately alleged that she has suffered an injury-in-fact that is traceable to these hiring practices and that is likely to be redressed by a favorable decision by this Court. According to Plaintiff, her injuries-in-fact are that she "was deterred and delayed from opposing and reporting Hoffman's conduct, that she was promised job information and opportunities on the condition that she not report Hoffman's conduct, and that she was

immediately deprived of job information and opportunities when she persisted in opposing Hoffman's conduct." Pl. Opp. at 74.

Plaintiff's Complaint belies her assertion that her injury was being "deterred and delayed from opposing and reporting Hoffman's conduct." *Id.* There is nothing in her Complaint that suggests that the UCS hiring practices caused her to delay opposing or reporting Hoffman's conduct. According to the pleadings, on October 8, 2017, after working for Hoffman approximately three weeks, she emailed him asking him not to send messages to her personal email. *See, e.g.*, TAC ¶ 93. Less than a week after Hoffman became "overtly hostile" as a result of Plaintiff's email and subsequent conversation regarding the email, *see, e.g.*, *id.* ¶ 113, Plaintiff told Scarpulla that Hoffman was "very bothered by the fact that he can only have a professional relationship with" her and that he "made her feel uncomfortable" *see, e.g.*, *id.* ¶¶ 184-85. Four days later, Plaintiff hand-delivered a letter to Scarpulla detailing "how Hoffman had threated to fire Plaintiff, threatened to hurt her, and had demanded her silence as a condition of her continued employment;" "described Plaintiff as fearful of Hoffman's physical presence;" and stated that she was "unable to return to work, was feeling isolated, and was concerned about reprisal to her career." *See, e.g.*, *id.* ¶ 204.

The other two alleged injuries are also not cognizable injuries-in-fact. These two alleged injuries-in-fact essentially boil down to Plaintiff being deprived of "job information and opportunities." This assertion is also belied by Plaintiff's Complaint because Plaintiff alleges that she was told about the principal court attorney position with Silver. *See, e.g., id.* ¶¶ 136-38. Even if Plaintiff's own Complaint did not contradict her assertion, Plaintiff does not assert, nor could she, any personal right under the Constitution to receive job information and opportunities. *See Warth v. Seldin*, 422 U.S. 490, 509 (1975). As discussed previously, Plaintiff does not have a

legitimate entitlement to a transfer or reassignment, much less to receiving information on such opportunities.

Even conducting a standing analysis based on Plaintiff's termination, Plaintiff has not adequately pleaded that this injury-in-fact is traceable to the UCS hiring policy, nor how it is redressable by the injunctive relief she seeks. Plaintiff's termination, "cannot reasonably . . . be said to have resulted, in any concretely demonstrable way," from the UCS hiring policy. *Williams ex rel. United Guardianship Servs. v. Shah*, No. 12-cv-3953, 2014 WL 1311154, at *3 (E.D.N.Y. Mar. 30, 2014) (quoting *Warth*, 422 U.S. at 504) (internal quotation marks omitted). Plaintiff seeks injunctive relief in the form of enjoining Chief Judge DiFiore from condoning and permitting UCS to implement the challenged hiring practices, ordering her to establish state-wide hiring standards and practices eliminating ongoing violations of the 14th Amendment and allowing for periodic monitoring to ensure compliance, and ordering her to enforce said hiring standards and practices. TAC ¶¶ 704-706. None of the requested relief would redress her termination.

### 2. Plaintiff Cannot Challenge the Revised UCS Sexual Harassment Policy (Claim 8)

Plaintiff challenges the revised sexual harassment policy as discriminatory against her and UCS employees "who are subject to and/or oppose unlawful discrimination, harassment, and retaliation in violation" of their 14th Amendment right to equal protection. TAC ¶ 628. The crux of her allegations as to the revised UCS sexual harassment policy is that on approximately December 1, 2017, Marks "promulgated" a revised sexual harassment policy deleting numerous sections or reducing them to "a few vague sentences" without announcing the revisions. *See* TAC ¶¶ 469-492. Additionally, Plaintiff claims that "on information and belief" the policy was revised "unilaterally . . . and in secret, without any formal deliberative process, without notice, without comment, and without the benefit of any internal or external expertise on workplace sexual

harassment" and not subject to "further oversight or approval." *See id.* ¶¶ 493-498. Lastly, Plaintiff claims that "on information and belief" the policy "was revised directly in response to Plaintiff's complaints about Hoffman and the manner in which Plaintiff reported or pursued those complaints." *See id.* ¶¶ 499. As with Plaintiff's challenge to the UCS hiring practices, Plaintiff has no standing to bring this claim.

Plaintiff asserts in conclusory fashion that because the revised policy was in effect when she was terminated, her constitutional and economic injuries are plausibly traceable to Defendants' application of the revised policy. *See* Pl. Opp. at 77. However, Plaintiff's Complaint does not contain allegations that Defendants' relied on this revised policy to terminate her. In fact, on November 22, 2017, over a week before the revised policy was promulgated, DeSole told Plaintiff that "she would be fired within one week . . . unless she provided information to support her claims against Hoffman." TAC ¶ 334. Thus, Plaintiff's termination, "cannot reasonably . . . be said to have resulted, in any concretely demonstrable way" from the revision of the policy and she cannot meet the standing causation requirement.

### 3. Plaintiff Cannot Challenge UCS Complaint Procedures

Plaintiff alleges that UCS has "a policy and custom of ignoring, suppressing, and retaliating against employees who oppose unlawful discrimination, harassment, and retaliation by judges and other highly placed or politically connected personnel" and "a policy and custom of intentionally or with deliberate indifference failing to adopt and enforce adequate policies, and failing to adequately train, supervise, monitor, and/or discipline court system supervisors and personnel, in order to prevent" the same type of unlawful conduct. *Id.* ¶¶ 618-619. Plaintiff does not have standing to challenge these alleged policies and customs.

While Plaintiff's termination can plausibly be traced to these customs and policies, Plaintiff has not alleged that she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Shain*, 356 F.3d at 215. Plaintiff's argument that "her ongoing injury *is* that she is no longer an employee" fails and her citation to *State Emps. Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 96-97 (2d Cir. 2007), is inapposite. Pl. Opp. at 79. In that case, the Second Circuit held that plaintiff's termination (via elimination of a job position) was an ongoing violation of federal law for the purposes of the *Ex parte Young* exception. *Rowland*, 494 F.3d at 97. Critically, the court stated that "the state's alleged failure to act is . . . (1) ongoing and (2) potentially curable by prospective relief compelling the State to re-create positions or rehire plaintiffs into existing positions." *Id.* This is not the type of prospective relief Plaintiff seeks in bringing this claim.

As Plaintiff's lack of standing deprives the Court of subject matter jurisdiction, the Court declines to reach the merits of her equal protection claims. Thus, these claims are DISMISSED without prejudice. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) ("[D]ismissals for lack of subject matter jurisdiction are not on the merits and are not accorded *res judicata* effect.").

## X.   PLAINTIFF'S REMAINING STATE LAW CLAIMS

### A.   Defamation (Count 23)

Plaintiff asserts a defamation claim against Mr. Reo alleging that Mr. Reo made certain statements to the press which were false, that he made them negligently, recklessly, or with actual malice, and that these statements "caused severe injury to Plaintiff's professional reputation." *See, e.g.*, TAC ¶¶ 691-697. The Court concludes that Plaintiff has not adequately pleaded the elements of a defamation claim under New York law, and thus the claim must be dismissed.

A defamatory statement is one "that exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons." *Karedes v. Acklerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005) (quoting *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 177 (2d Cir. 2000)) (internal quotation marks omitted). To establish a claim for defamation under New York law, a plaintiff is required to allege: "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through the fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Boehner v. Heise*, 734 F. Supp. 2d 389, 397-98 (S.D.N.Y. 2010) (quoting *Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009)) (alteration in original). In determining whether Plaintiff has adequately pleaded a cause of action for defamation, "the words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of an average reader." *Dillon v. City of N.Y.*, 261 A.D.2d 34, 38 (1st Dep't 1999). If they are not "reasonably susceptible of a defamatory meaning, they are not actionable." *Id.*

Critically here, statements of mere opinion, as opposed to objective fact, are generally not actionable. *See Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Assoc., Inc.*, 796 F. Supp. 2d 458, 471 (S.D.N.Y. 2011). However, a statement of opinion implying "that it is based upon facts which justify the opinion but are unknown to those reading or hearing it" can be maintained as a mixed opinion-fact claim. *Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015) (internal citation omitted).

Looking at Mr. Chalfen's statements in context, it cannot be said that his statements are "reasonably susceptible of a defamatory meaning" such that they are actionable. As courts in this

District have found, statements related to the strength of one's legal position are nonactionable opinion and thus the statements describing the litigation as "frivolous and nonsensical" cannot serve as the basis of a defamation claim. *See Alzheimer's Found. Of Am.*, 796 F. Supp. 2d 458 (finding that a statement calling an opponent's legal claims "baseless" was mere opinion and not defamatory). Mr. Chalfen's statement that "cases such as . . . [Plaintiff's] *can* be riddled with false allegations," and that her allegation was a "completely made up assertion" are also nonactionable statements of opinion for the same reason. *See supra* n. 15 (emphasis added). A reasonable reader would not consider statements made in the context of discussing an ongoing litigation to be facts, because those same so-called "facts" go to the core of the dispute. Additionally, Plaintiff has not adequately alleged that she suffered a "severe injury to [her] professional reputation," nor how these statements could have plausibly caused her injury. *See, e.g.*, ¶ 697. Therefore, none of the alleged defamatory statements can serve as the basis for a defamation claim. The Court has considered Plaintiff's arguments and finds them without merit.

Therefore, Defendants' motion to dismiss Plaintiff's defamation claim is GRANTED.

### B.  Promissory Estoppel, Unjust Enrichment and Quantum Meruit (Count 22)

Plaintiff asserts promissory estoppel, quantum meruit and unjust enrichment claims against Hon. Scarpulla on the basis that she worked for Hon. Scarpulla for five years, during which time Hon. Scarpulla "advanced her judicial career on the strength of Plaintiff's work product," but Plaintiff did not receive the benefits of a judicial clerkship. *See, e.g.*, TAC ¶¶ 681-683. The Court concludes that this claim is without merit and must be dismissed because Plaintiff had a contract governing her employment with Hon. Scarpulla.

"Promissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract."

*Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011) (citation omitted); *Hughes v. BCI Int'l. Holdings, Inc.*, 452 F. Supp. 2d 290, 306 n. 19 (S.D.N.Y. 2006) ("[I]f plaintiffs were required to plead the existence of an enforceable agreement, promissory estoppel would be indistinguishable from a garden variety breach of contract claim."); *Holmes v. Lorch*, 329 F. Supp. 2d 516, 527 (S.D.N.Y. 2004) ("Promissory estoppel is a rule applicable only in the absence of an enforceable contract."). As such, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (internal citations omitted).

Plaintiff's promissory estoppel claim must fail because Plaintiff had a contract governing the terms of her employment with Hon. Scarpulla. Plaintiff asserts that her contract does not bar her from asserting a promissory estoppel claim because the "judge-clerk relationship is unique and governed by numerous norms and expectations not reflected in contract." Pl. Opp. at 93. It is true that the judge-clerk relationship is unique. However, that does not mean that the work Plaintiff did for Hon. Scarpulla and her expected compensation fell outside the scope of her employment contract.[16] Plaintiff's unjust enrichment and quantum meruit claims fail for the same reason.[17]

---

[16] It is worth noting that the kind of benefits that Plaintiff seeks to be compensated with could not properly be the basis of *any* contract. "Experience, a valuable professional connection, overall career earnings, and . . . significant professional opportunities" are not sufficiently measurable to be enforceable. *See Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333-34 (S.D.N.Y. 1982) ("[I]f the terms of the agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract.").

[17] Like a promissory estoppel claim, "[t]he theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (citing *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (N.Y. 2005) (emphasis in original); *Clark-Fitzpatrick*, 70 N.Y.2d at 388 ("A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment."). However, this is only true where the claim arises out of the same subject matter. *Hughes*, 452 F. Supp. 2d at 315 ("[P]laintiffs' written agreement with [contracting defendant] does not, as a matter of law, bar a claim for unjust enrichment against non-parties to that agreement whose alleged conduct falls outside of the subject matter of the agreement."). As discussed the claim at issue here arises out of the same subject matter as her employment contract—her work for Hon. Scarpulla and related compensation—and must

Therefore, Defendants' motion to dismiss Plaintiff's promissory estoppel, unjust enrichment and quantum meruit claims is GRANTED.

### C. Fraud and Fraudulent Inducement (Counts 16 & 17)

Plaintiff asserts a fraud claim against Hons. Scarpulla and Silver, Ms. DeSole, Ms. Porter, Ms. Evans and Mr. Reo and a fraudulent inducement claim against Hon. Sattler. The Court quickly disposes of these claims and finds they cannot survive a motion to dismiss.

To state a claim for fraudulent inducement under New York law, a plaintiff must allege: "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (quoting *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001)). Claims for fraudulent inducement can also be based on material omissions. *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 670 (S.D.N.Y. 2009). However, an omission can only serve as the basis of a fraudulent inducement claim where a defendant has a duty to disclose, "which can arise where there is a confidential or fiduciary relationship between the parties." *Id.* (internal citations omitted).

"To state a claim for common law fraud in New York, a plaintiff must plead that '(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant[ ] intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss[.]'" *Cummings v. City of N.Y.*, No. 19-cv-7723,

---

therefore fail. Furthermore, it cannot be said that "equity and good conscience require restitution" for work for which Plaintiff has already been compensated. *See Karmilowicz v. Hartford Fin. Servs. Grp. Inc.*, No. 11-cv-539, 2011 WL 2936013, at *11 (S.D.N.Y. July 14, 2011) (dismissing plaintiff's quantum meruit claim based on the contention that defendant "refused to fairly compensate him . . . under 'the expectation of receiving the compensation promised to him'" because Defendant was paid a salary and thus defendant did not benefit unfairly from plaintiff's work"), *aff'd*, 494 F. App'x 153, 158 (2d Cir. 2012).

2020 WL 882335, at *13 (S.D.N.Y. Feb. 24, 2020) (quoting *Stephenson v. PricewaterhouseCoopers, Ltd. Liab. P'ship*, 482 F. App'x 618, 622 (2d Cir. 2012) (citation omitted)).

A plaintiff alleging claims sounding in fraud must also meet the heightened particularity pleading standard of Fed. R. Civ. P. 9(b). Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015).

As to Plaintiff's fraudulent inducement claim, Plaintiff has not adequately alleged that a confidential or fiduciary relationship existed between her and Hon. Sattler and thus her fraudulent inducement claim must fail. To the extent that Plaintiff relies on alleged fraudulent statements made by Hon. Sattler, her fraudulent inducement claim fails nonetheless because she has not met the Rule 9(b) particularity requirement that she explain why the statements Hon. Sattler made were fraudulent. *See* TAC ¶¶ 465-66 ("[I]nformed Plaintiff about the opening for Hoffman's principal court attorney position;" "lobbied aggressively for Plaintiff to accept the position;" "expressed a strong interest in Plaintiff accepting the position, urged that Plaintiff accept the position, and asked repeatedly whether Plaintiff was going to accept the position.").

Plaintiff's fraud claim similarly fails because Plaintiff has not adequately alleged that the statements were material, nor that she believed and justifiably relied on Defendants' alleged fraudulent statements and that they induced her to engage in a particular course of conduct. As an example, accepting all allegations in the Complaint as true, and drawing all reasonable inferences in favor of Plaintiff, after Hon. Scarpulla told her that she was a Title VII officer and would send

her a letter, *see, e.g.*, TAC ¶ 205, she still pursued her complaints via other avenues. The same is true of the remaining alleged fraudulent statements.

For these reasons, the Court concludes that Plaintiff has not adequately pleaded fraud or fraudulent inducement, and Defendants' motion to dismiss these claims is GRANTED.

### D.  Declaratory Relief Sought Under Article VI, § 28(c) of the New York Constitution

Plaintiff seeks declaratory relief pursuant to Article VI, § 28(c) of the New York Constitution, specifically asking the Court to "[d]eclare that the New York State court system's revised sexual harassment policy was promulgated in violation of the procedures set forth in Article VI § 28(c) of the New York Constitution and is invalid." TAC ¶ 699. The Court concludes that Plaintiff does not have standing to bring this claim for substantially the same reasons why she does not have standing to challenge the revised UCS sexual harassment policy.

**CONCLUSION**

For the reasons herein, Defendants' motion to dismiss Plaintiff's retaliation claims pursuant to § 1983, NYSHRL and NYCHRL (Counts 1 and 12) and First Amendment retaliation claim pursuant to § 1983 (Count 5) as to Hon. Silver and Marks, Mr. McConnell, Ms. DeSole and Ms. Evans is DENIED. Defendants' motion to dismiss these claims as to the remaining Individual Defendants is GRANTED. Defendants' motion to dismiss Plaintiff's remaining claims is GRANTED as to all Defendants.

**SO ORDERED.**

**Dated: March 31, 2021**
**New York, New York**

_____
      **ANDREW L. CARTER, JR.**
      **United States District Judge**